SHOOK, HARDY & BACON L.L.P.
Amir Nassihi (SBN 235936)
anassihi@shb.com
Joan R. Camagong (SBN 288217)
jcamagong@shb.com
Mark A. Feller (SBN 319789)
mfeller@shb.com
Philip Crane Raucci (SBN 351941)
praucci@shb.com
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900 | Fax: (415) 391-0281

Michael L. Mallow (SBN 188745)
mmallow@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (424) 285-8330 | Fax: (424) 204 – 9093

Attorneys for Defendant
KIA AMERICA, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY DOUCETTE, MEREDITH TONGUE, RILEY CHAN, GILDA BRASCH, and CHAD HOLLIDAY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KIA AMERICA, INC., KIA CORPORATION, HYUNDAI MOTOR AMERICA, and HYUNDAI MOTOR COMPANY,<br><br>Defendants. | Case No. 8:24-CV-00731-DMG-DFM<br><br>**DEFENDANT KIA AMERICA, INC.'S ANSWER TO FIRST AMENDED COMPLAINT** |

i

Defendant Kia America, Inc. hereby answers Plaintiffs' Class Action Complaint as follows. This answer is made only on behalf of Kia America, Inc. (hereinafter, "Kia") and responds to the allegations made against it, not any other entity named or served in this matter, including but not limited to Kia Corporation.

## I.    INTRODUCTION

1.    An automobile purchase is one of the most expensive and important decisions consumers make. Consumers rely upon automakers' superior knowledge to manufacture and sell cars that are safe and free from defects. Defendants readily acknowledge that "[a]ny fault in your car can affect your safety."[1] Should a manufacturer or distributor learn of any safety defects in its vehicles, it is imperative and a legal requirement for it to immediately warn the public and provide a complete repair.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding consumers' decisions and reliance and therefore denies the same. Kia admits that it has certain legal obligations regarding safety defects. The website quoted in this paragraph speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same. Kia denies the remaining allegations in this paragraph.

2.    Despite these important duties, Defendants knowingly sold and failed to repair at least one hundred thousand Class Vehicles[2] containing a potentially deadly defect lurking in their vehicles' drivetrain system—putting countless lives at risk to this day.

**ANSWER:** Kia denies the allegations in this paragraph.

---

[1] https://www.kia.com/fj/experience/innovation-story/performance.Kappa.html (last accessed March 14, 2024).

[2] The Class Vehicles are comprised of 2017-2022 Kia Niro Hybrid, 2018-2022 Kia Niro Plug-In Hybrid, 2017-2022 Hyundai Ioniq Hybrid, and 2018-2022 Hyundai Ioniq Plug-In Hybrid vehicles.

1

3. The Class Vehicles are hybrid electric vehicles ("HEV"). "Hybrid electric vehicles are powered by an internal combustion engine [('ICE')] and one or more electric motors, which uses energy stored in batteries."[3] The Class Vehicles are designed to and marketed as having the ability to seamlessly switch between their ICE and electric motors while being driven, thereby minimizing fuel consumption and emissions. And while the electric motors in the Class Vehicles are used to start the vehicles, ICE power is required to accelerate the vehicles.

**ANSWER:** Kia admits that 2017-2022 Kia Niro Hybrid and 2018-2022 Niro Plug-in Hybrid vehicles are hybrid electric vehicles. Kia admits that these vehicles use power from an internal combustion engine and an electric motor, and that they can have better fuel consumption and lower emissions compared to traditional vehicles. The website quoted in this paragraph speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same. Kia denies the remaining allegations in this paragraph.

4. In July 2023, KA finally revealed that the Kia Class Vehicles contain a potentially deadly defect in the engine clutch system ("2023 Recall"). The engine clutch system—viz., the Engine Clutch Actuator ("ECA"), controls when the vehicle switches between ICE and electric motor power. The defect allows fluid to enter the ECA, also referred to as the Hydraulic Clutch Actuator ("HCA"), and contaminates its printed circuit board ("PCB"). And when moisture enters the electrified ECA component, a short circuit is formed which creates a high likelihood that a fire will erupt in the vehicle's engine compartment. KA warns that "[a] fire increases the [safety] risk of injury." (Referred to herein as the "Defect.").

**ANSWER:** Kia admits that it issued NHTSA Recall No. 23V-534 on July 31, 2023, regarding Class Vehicles. The Part 573 Safety Recall Report speaks for itself, and

---

[3] https://afdc.energy.gov/vehicles/how-do-hybrid-electric-cars-work (last accessed March 14, 2024).

to the extent the allegations in this paragraph vary therefrom, Kia denies the same. Kia denies the remaining allegations in this paragraph.

5.    Defendants are alleged to have been aware of the Defect before KA ever acknowledged its existence. Defendants are experienced (and tout themselves as such) in the design and manufacture of consumer vehicles and conduct durability tests on all of its components, including ECAs, to verify the parts are free from defects and comply with their specifications. Defendants also have access to numerous sources of reports of Class Vehicle failures caused by the Defect, including pre-sale testing, their own records of customer complaints, dealership repair records, warranty claims, three safety recalls issued in 2018 concerning the ECAs installed in certain Class Vehicles, and Hyundai and Kia's long history of defective components causing electrical short circuits in their vehicles and each Defendant's post sale monitoring of Class Vehicles for safety defects.

**ANSWER:**  Kia denies the allegations in this paragraph.

6.    Critically, the "remedy" offered by KA in the 2023 Recall does not repair the Defect, nor does it even address its cause. As part of the Recall, KA will install a fuse that is designed to blow in the event an ECA experiences a short circuit, cutting off power to the ECA. Thus, KA's solution to the Defect leaves the cause of the Defect wholly intact and by design will cause Class Vehicles to stall when short circuits occur. KA's "remedy" is barely a band-aid for a deadly Defect which requires a comprehensive fix or replacement of defective ECAs to make these vehicles safe and reliable.

**ANSWER:**  Kia denies the allegations in this paragraph.

7.    Finally, while the ECAs installed in the Kia Class Vehicles are the same as those installed in the Hyundai Class Vehicles, Hyundai has yet to issue a safety recall or attempt to fix the Defect found in Hyundai Class Vehicles.

**ANSWER:**  Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

Case 8:24-cv-00731-DMG-DFM Document 98 Filed 06/18/26 Page 5 of 189 Page ID #:2323

8. Defendants' abhorrent disregard for the safety of their consumers came at a total surprise to Plaintiffs and other Class Members who were repeatedly told by Defendants that their vehicles undergo many hours of detailed pre-sale durability testing and that the manufacturers place an emphasis on "quality and durability." Moreover, Plaintiffs and other Class Members were outraged to learn that despite advertisements that Defendants offered "industry lead[ing]" warranty programs and "America's Best Warranty," Defendants would do all they could to conceal the Defect and skirt their obligations to repair or replace the defective ECAs.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' and other putative Class Members' experiences and therefore denies the same. Kia denies the remaining allegations in this paragraph.

9. Had Plaintiffs and other Class Members known of the Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles or would have paid substantially less for them.

**ANSWER:** Kia denies the allegations in this paragraph.

10. As a result of Defendants' unfair, deceptive, and/or fraudulent business practices, owners and/or lessees of the Class Vehicles, including Plaintiffs and Class Members, have suffered an ascertainable loss of money and/or property in the form of, for example, loss of value, loss of use of the vehicles, and repair costs.

**ANSWER:** Kia denies the allegations in this paragraph.

11. Accordingly, Plaintiffs bring this action to redress Defendants' misconduct. Plaintiffs seek equitable relief in the form of an adequate remedy for the Defect, an appropriate curative notice regarding the existence of the Defect, recovery of damages, a repair under state consumer-protection statutes and express and implied

4
DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

warranties, and reimbursement of all expenses associated with the repair or replacement of the Class Vehicle and damage caused by the Defect.

**ANSWER:** Kia admits that Plaintiffs' Class Action Complaint seeks a variety of relief but Kia denies that any relief is warranted. Kia denies the remaining allegations in this paragraph.

## II. JURISDICTION

12. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §§1332(d)(2) and (6) because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. Kia further denies that Plaintiffs' claims are suitable for class treatment but admits it is not challenging this Court's subject matter jurisdiction over this case.

13. Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendants transact substantial business and because HMA and KA are headquartered in this district. HMA and KA advertised in this district and Defendants received substantial revenue and profits from sales and/or leases of the Class Vehicles in this district. Defendants also have research and development offices in this district. Therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. Kia admits that it is not challenging venue in this case. Kia denies the remaining allegations in this paragraph.

14. This Court has personal jurisdiction over Defendants by virtue of their transactions and business conducted in this judicial district, and because HMA and KA

5

are headquartered in California. Defendants have transacted and done business, and violated statutory and common law, in the State of California and in this judicial district.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. Kia admits that it is not challenging personal jurisdiction in this case. Kia denies the remaining allegations in this paragraph.

## A. The Court may exercise personal jurisdiction over HMC and KC.

15.     More specifically, the Court has specific jurisdiction over HMC and KC pursuant to the long-arm statute of California (Cal. Code Civ. Proc. § 410.10) based on their forum-related activities from which this case arises, and the forum-related activities of HMC's and KC's primary domestic subsidiaries, HMA and KA, which HMC and KC, respectively, substantially control.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding HMC and therefore denies the same. Kia denies the remaining allegations in this paragraph.

### 1.     HMC's and KC's forum-related activities

16.     HMC and KC design, manufacture, market, distribute, and sell the Class Vehicles under their registered trademarks "Hyundai" and "Kia." From 2010 to the present, when Class Vehicles were sold and marketed to Class Members—HMC and KC purposefully availed themselves of the United States' legal protections by registering and maintaining registrations with the United States government for trademarks associated with their vehicles and parts, which HMC and KC used to identify and distinguish their vehicles and parts in the United States, this District, and transferor jurisdictions.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. Kia admits that KC designs and manufactures Class Vehicles and sells them to Kia for marketing, distribution, and sale in the United States. Moreover, Class Vehicles are sold to consumers and serviced by a network of independently owned and

6

operated dealerships. To the extent the allegations in this paragraph suggest otherwise, Kia denies those allegations. Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding HMC and therefore denies the same. Kia denies the remaining allegations in this paragraph.

17.    HMC and KC purposely availed themselves of markets in the United States, each selling over half a million vehicles per year in this market through their respective domestic subsidiaries, HMA and KA. *See infra* ¶¶ 72-77. Indeed, HMC and KA have purposefully availed themselves of the protections of various statutes of the United States and California common law by filing lawsuits in this District.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding HMC and therefore denies the same.

18.    HMC and KC both are global automobile manufacturers who purposely availed themselves of the automobile and automobile-related products' markets in California by extensively promoting, warranting, selling, leasing and servicing, directly and indirectly, vehicles (including the Class Vehicles) and related automobile products in California. Those Class Vehicles were defective and otherwise violated federal and California laws (as alleged herein) resulting in significant damages to Class Members in California.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding HMC and therefore denies the same. Kia denies the remaining allegations in this paragraph.

19.    As alleged below, HMC and KC promote on their own websites all Hyundai and Kia vehicles sold by HMA and KA in the United States and direct U.S. consumers to their U.S. subsidiaries' websites.

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding HMC and therefore denies the same. Kia denies the remaining allegations in this paragraph.

20.    HMC and KC manufactured over one hundred thousand Class Vehicles, which were delivered to HMA and KA for sale in the United States. Although HMC and KC manufactured Class Vehicles in Korea, they specifically segregated them from other Class Vehicles that were intended for sale in other countries, placed certification labels on them that assured compliance with U.S. federal safety requirements, and ensured those Class Vehicles shipped to the United States with full knowledge that HMA and KA would then distribute them across the United States.

**ANSWER:** Kia admits that KC sold 2017-2022 Kia Niro and 2018-2022 Kia Niro Plug-in Hybrid vehicles to Kia for distribution and sale in the United States. Kia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

21.    These Class Vehicles were not merely placed into a stream of commerce—they were directly targeted to the United States market, including California. HMA and KA certified that the vehicles complied with United States safety requirements and ensured that they shipped directly to a wholly owned subsidiary responsible for distribution in the United States.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding HMA and therefore denies the same. Kia denies the remaining allegations in this paragraph.

22.    HMC and KC affixed federal safety certification labels to the Class Vehicles manufactured in Korea, and directly approved the same labels for Class Vehicles manufactured in the United States, in each case knowing that they would be sold in the United States. The certification labels represented that the Class Vehicles

8

conformed to U.S. safety standards, thereby enabling the vehicles to be sold in all 50 states.

**ANSWER:** The certification labels speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same. Kia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

23.    HMC and KC played key roles in HMA's and KA's analysis and decision-making relating to the design and/or manufacturing of the Class Vehicles sold in the United States containing the Defect, including the engine clutch system and ECAs. Moreover, KC was intimately involved with the investigations concerning the cause of the Defect, whether to issue a recall over the Defect and what the proposed remedy would be.[4] Likewise, HMC plays an integral role when deciding whether to issue a recall for Class Vehicles.[5]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding HMC and therefore denies the same. Kia denies the remaining allegations in this paragraph.

24.    On information and belief, HMC and KC were intimately involved with HMA's and KA's monitoring of customer complaints and warranty claims relating to the Defect, their attempts to remedy the Defect, and the issuance of the 2023 Recall (defined below).

**ANSWER:** Kia admits that it issued NHTSA Recall No. 23V-534 on July 31, 2023 regarding Class Vehicles. Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding HMC and therefore denies the same. Kia denies the remaining allegations in this paragraph.

___

[4] https://static.nhtsa.gov/odi/rcl/2023/RMISC-23V534-5049.pdf (last accessed March 14, 2024).

[5] https://static.nhtsa.gov/odi/rcl/2018/RMISC-18V260-6639.pdf (last accessed March 14, 2024).

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

## 2. HMC's and KC's control over HMA and KC.

25. HMC and KC exercise control over HMA and KA, respectively, through several formal and informal mechanisms.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding HMC and therefore denies the same. Kia denies the remaining allegations in this paragraph.

26. Upon information and belief, HMC and KC have the power to appoint board members to HMA and KA, respectively. They have exercised this power to appoint board members to these subsidiaries that they believe will manage the subsidiaries with the principal goal of benefiting them.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding HMC and therefore denies the same. Kia denies the remaining allegations in this paragraph.

27. HMC and KC purposely availed themselves of markets in the United States. For example, HMC and KC each regularly submitted applications to the EPA to obtain certification necessary for the sale of their vehicles in the United States.[6]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding HMC and therefore denies the same. The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

---

[6] *E.g.*, https://www.epa.gov/sites/default/files/2019-07/documents/kmc-off-cycle-ghg-credit-high-efficiency-alternator-2019-06-10.pdf (last accessed March 14, 2024); https://www.epa.gov/system/files/documents/2022-09/Kia-ghg-credit-pwm-hvac-blm-apl-2020-12-15.pdf (last accessed March 14, 2024).

10

28. HMC maintains a "Global Command and Control Center" on the second floor of its headquarters in Korea.[7] The Center operates around the clock and boasts dozens of screens relaying live data and video feeds from all of Hyundai and Kia's assembly lines and research centers around the world. The production data is generated on the assembly lines and displayed on boards where team members can see it, and headquarters can see the same data at the same time. From the Global Command and Control Center, HMC controls Kia operations around the world, including those in the United States.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding HMC and therefore denies the same. The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same. Kia denies the remaining allegations in this paragraph.

29. On information and belief, KC representatives also monitor Kia's global operations from HMC's Global Command and Control Center.

**ANSWER:** Kia denies the allegations in this paragraph.

30. If HMC's or KC's quality monitors in Korea spot errors or problems, they call the factory immediately. Additionally, employees of HMA and KA report on quality issues to HMC and KC, respectively. For instance, one of the Kia plants monitored at the Global Command and Control Center is located in Alabama. That plant's production chief was quoted as saying, "if there's a hiccup at any of those boards, headquarters wants to know what needs to be done about it – right now."[8]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding HMC and therefore denies the same. Kia admits that it communicates about vehicle quality topics from time to time with KC.

---

[7] https://digitaledition.strategy-business.com/publication/?i=145911&p=70 (last accessed March 14, 2024).

[8] https://digitaledition.strategy-business.com/publication/?i=145911&p=70 (last accessed March 14, 2024).

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same. Kia denies the remaining allegations in this paragraph.

31.     Senior Korean executives at HMC and KC also regularly visit Hyundai and Kia plants and offices in the United States, including HMA's and KA's California headquarters.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding HMC and therefore denies the same. Kia admits that employees of KC visit Kia locations in the United States from time to time. Kia denies the remaining allegations in this paragraph.

32.     Korean speaking "coordinators" reportedly work at HMA and KA and report on their activities to Korean executives at HMC and KC, respectively, every business day.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding HMC and therefore denies the same. Kia denies the remaining allegations in this paragraph.

33.     HMC and HMA and KC and KA, respectively, share common executives. For example, Jose Muñoz is the President and Global Chief Operating Officer of HMC as well as the President of HMA.[9] HMC states that "[b]ased in Kia's U.S. headquarters in Fountain Valley, California, Muñoz also oversees the entire American market, including Hyundai Motor North, Central and South America, as the head of the Hyundai Motor Americas Region." Brian Latouf serves as the President and Global Chief Safety and Quality Officer for HMC, as well as the chief safety officer of HMA.[10]

---

[9] https://www.Kianews.com/en-us/bios/jose-munoz (last accessed March 14, 2024); https://www.Kia.news/eu/articles/press-releases/Kia-motor-appoints-jose-munoz-as-chief-operating-officer.html (last accessed March 14, 2024)

[10] https://www.Kianews.com/en-us/bios/brian-latouf- (last accessed March 14, 2024); https://www.linkedin.com/in/brian-latouf-b6a8b7b4/ (last accessed March 14, 2024).

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding HMC and therefore denies the same. To the extent the allegations in this paragraph are summaries or characterizations of the content available on the footnoted websites, the websites speaks for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies those allegations.

34.    KC and KA also share common employees. For example, SeungKyu (Sean) Yoon currently serves as President and CEO of KA, and he is the President & CEO of the Kia North America Region.[11] Prior to his current role, Mr. Yoon served as the America Group Leader for KC.

**ANSWER:** To the extent the allegations in this paragraph are summaries or characterizations of the content available on the footnoted websites, the websites speaks for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies those allegations.

35.    Moreover, HMC and KC have overlapping management. Eui-Sun Chung serves as President of KC, Executive Vice Chairman of HMC, and Chairman of Hyundai Motor Group.[12]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same. The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

---

[11] https://www.kiamedia.com/us/en/media/pressreleases/13858/seungkyu-sean-yoon-1 (last accessed March 14, 2024); https://www.linkedin.com/in/seungkyu-sean-yoon-3251b1a9/ (last accessed March 14, 2024); https://www.automotiveworld.com/news-releases/kia-america-debuts-in-us-new-name-replaces-kia-motors-america-as-part-of-kia-corporation-global-brand-strategy/ (last accessed March 14, 2024).

[12] https://worldwide.kia.com/int/company/ir/info/board-of-directors (last accessed March 14, 2024).

13

36.    HMC and KC control the public name and brand of HMA and KA, respectively. In consumer transactions, like those with Plaintiffs, HMC's and KC's brands and logos serve as their person and their subsidiaries' official seal and signature to consumers.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding HMC and therefore denies the same. Kia denies the remaining allegations in this paragraph.

## III.    PARTIES

### A. Plaintiffs

37.    Plaintiff Amy Doucette is a resident of Gardner, Massachusetts. Ms. Doucette purchased a new 2020 Kia Niro from Ron Bouchard Kia, located at 488 Old Union Turnpike, Lancaster, MA 01523, in or around April 2020.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

38.    Ron Bouchard Kia is part of Kia's network of authorized dealers across the United States, and is promoted on KA's website, which includes an updated list of the dealership's inventory.[13]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph related to the authorized dealership status of Ron Bouchard Kia at this time and therefore denies the same. The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

39.    Ms. Doucette purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and of the highest quality. When shopping for her Class Vehicle, Ms. Doucette researched and considered the reliability and quality of the make

---

[13] https://www.kia.com/us/en/find-a-dealer/result?zipCode=34982 (last accessed March 14, 2024).

14

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

and manufacturer. Prior to purchasing her Class Vehicle, Ms. Doucette heard, viewed, and/or read Kia marketing materials and advertisements including brochures, commercials, and internet advertisements, which were disseminated from California, that touted the quality, reliability and safety of Kia vehicles.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

40.    At no point before Ms. Doucette purchased her vehicle did Kia disclose that her vehicle suffered from the Defect, which results in the vehicle stalling, unreliable and unsafe performance of the hybrid powertrain, and could cause vehicle fires.

**ANSWER:** Kia denies the allegations in this paragraph.

41.    Ms. Doucette did not receive the benefit of her bargain. Ms. Doucette purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Defect has significantly diminished the value of Ms. Doucette's Class Vehicle.

**ANSWER:** Kia denies the allegations in this paragraph.

42.    Had Defendants disclosed the Defect, Ms. Doucette would not have purchased her Class Vehicle, or would have paid less to do so.

**ANSWER:** Kia denies the allegations in this paragraph.

43.    Ms. Doucette purchased her Class Vehicle and it included the manufacturer's warranty. At all times, Ms. Doucette maintained her vehicle in accordance with Kia's guidance.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

44.    Ms. Doucette would purchase a Kia or Kia vehicle in the future if Defendants' representations about the vehicle, including its quality, safety, and durability, were accurate.

15

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

45. Ms. Doucette presented her Class Vehicle to Ron Bouchard Kia on January 22, 2024 to receive the "remedy" offered in the 2023 Recall. The Kia dealership installed a "fuse kit" but did not repair or replace the vehicle's ECA which remains susceptible to moisture intrusion and short circuits.

**ANSWER:** Kia admits that Plaintiff presented her vehicle to an authorized Kia dealership in or about January 2024 in connection with Recall SC276, and that the dealership performed the recall remedy. Kia denies the remaining allegations in this paragraph, including but not limited to any characterization of the recall remedy or the condition of the vehicle following completion of the recall remedy.

46. Ms. Doucette is unable to afford to replace her Class Vehicle and therefore is forced to continue driving the dangerous and unreliable vehicle.

**ANSWER:** Kia denies that Class Vehicles that receive the recall remedy are dangerous and unreliable. Kia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

47. Plaintiff Meredith Tongue is a resident of Canton, Georgia. Ms. Tongue purchased a 2019 Hyundai Ioniq from Rick Case Hyundai, located 3180 Satellite Blvd., Duluth, GA 30096, on December 2, 2022.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

48. Rick Case Hyundai is part of Hyundai's network of authorized dealers across the United States, and is promoted on HMA's website, which includes links to "Click to Buy" at local dealerships and provides an updated list of the dealership's inventory. [14]

---

[14] https://www.Kiausa.com/us/en/dealer-locator (last accessed March 14, 2024).

16

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

49.    Ms. Tongue purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and of the highest quality. When shopping for her Class Vehicle, Ms. Tongue researched and considered the reliability and quality of the make and manufacturer. Prior to purchasing her Class Vehicle, Ms. Tongue heard, viewed, and/or read Kia marketing materials and advertisements including brochures, commercials, and internet advertisements, which were disseminated from California, that touted the quality, reliability and safety of Hyundai vehicles.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

50.    At no point before Ms. Tongue purchased her vehicle did Hyundai disclose that her vehicle suffered from the Defect, which results in vehicle stalling, unreliable and unsafe performance of the hybrid powertrain, and could cause vehicle fires.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

51.    Ms. Tongue did not receive the benefit of her bargain. Ms. Tongue purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Defect has significantly diminished the value of Ms. Tongue's Class Vehicle.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

52.    Had Defendants disclosed the Defect, Ms. Tongue would not have purchased her Class Vehicle, or would have paid less to do so.

17

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** Kia denies the allegations in this paragraph regarding its purported disclosure. Kia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

53. When Ms. Tongue purchased her Class Vehicle, it included the manufacturer's hybrid system warranty. At all times, Ms. Tongue maintained her vehicle in accordance with Hyundai's guidance.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

54. Ms. Tongue would purchase a Hyundai or Kia vehicle in the future if Defendants' representations about the vehicle, including its quality, safety, and durability, were accurate.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

55. Beginning on or around July 2023, Ms. Tongue's Class Vehicle began to exhibit engine performance issues when trying to accelerate.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

56. Ms. Tongue presented her Class Vehicle to Rick Case Hyundai on August 21 and 23, 2023, when the vehicle had approximately 95,500 miles on the odometer, for multi-point inspections and due to a complaint relating to engine performance when accelerating. The Hyundai dealership did not repair or replace the vehicle's ECA which remains susceptible to moisture intrusion and short circuits.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

57. Ms. Tongue's Class Vehicle had 82,836 miles at the time of purchase.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

18

58.     On April 7, 2026, Ms. Tongue sold her Class Vehicle at a loss. Ms. Tongue sold her Class Vehicle because the vehicle was unreliable and unsafe.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

59.     Plaintiff Gilda Brasch is a resident of La Quinta, California. Ms. Brasch purchased a new 2019 Hyundai Ioniq Plug-In Hybrid from Victorville Hyundai located at 14821 Palmdale Rd, Victorville, CA 92392, on December 27, 2018.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

60.     Victorville Hyundai is part of Hyundai's network of authorized dealers across the United States, and is promoted on HMA's website, which includes links to "Click to Buy" at local dealerships and provides an updated list of the dealership's inventory.[15]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph related to the authorized dealership status of Victorville Hyundai at this time and therefore denies the same. The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

61.     Ms. Brasch purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and of the highest quality. When shopping for her Class Vehicle, Ms. Brasch researched and considered the reliability and quality of the make and manufacturer. Prior to purchasing her Class Vehicle, Ms. Brasch heard, viewed, and/or read Hyundai marketing materials and advertisements including brochures, commercials, and internet advertisements, which were disseminated from California, that touted the quality, reliability and safety of Hyundai vehicles.

---

[15] https://www.hyundaiusa.com/us/en/dealer-locator (last accessed March 25, 2026).

19

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

62. At no point before Ms. Brasch purchased her vehicle did Hyundai disclose that her vehicle suffered from the Defect, which results in the vehicle stalling, unreliable and unsafe performance of the hybrid powertrain, and could cause vehicle fires.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

63. Ms. Brasch did not receive the benefit of her bargain. Ms. Brasch purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Defect has significantly diminished the value of Ms. Brasch's Class Vehicle.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

64. Had Defendants disclosed the Defect, Ms. Brasch would not have purchased her Class Vehicle, or would have paid less to do so.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

65. When Ms. Brasch purchased her Class Vehicle it included the manufacturer's warranty. At all times, Ms. Brasch maintained her vehicle.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

66. Ms. Brasch would purchase a Hyundai or Kia vehicle in the future if Defendants' representations about the vehicle, including its quality, safety, and durability, were accurate.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

20

67.    On January 21, 2026, while she was on vacation in Arizona, Ms. Brasch's Class Vehicle began to exhibit symptoms of the Defect, including illumination of the HEV warning light on the dashboard, and car stuttering. The following day, January 22, 2026, Ms. Brasch brought her vehicle into Hyundai of Cottonwood, an authorized Hyundai dealership, located in Cottonwood, AZ, where the vehicle was diagnosed with Diagnostic Trouble Code ("DTC") P1744, which as discussed below relates to an ECA failure and is indicative of the Defect. The dealership charged Ms. Brasch $201 for a "engine motor resolver adaption" software "update" and claimed the issue was fixed. The next day, the HEV warning light reappeared on Ms. Brasch's dashboard, and the stuttering problems continued as Ms. Brasch drove her vehicle back home in California.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph related to the authorized dealership status of Hyundai of Cottonwood at this time and therefore denies the same. Kia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

68.    Upon returning to California, on or about January 28, 2026, Ms. Brasch presented her Class Vehicle to Hyundai of Palm Springs, an authorized Hyundai dealership located in California, due to the "check engine and HEV lights" and "s[t]uttering and jerking while driving." Hyundai of Palm Springs inspected Ms. Brasch's vehicle, confirming that the same P1744 DTC was present, and that the "engine [clutch] actuator has internal fault." Ms. Brasch then paid $206.63 for Hyundai of Palm Springs to replace the ECA installed in her vehicle. The repair Ms. Brasch received, however, does not remedy the Defect. As alleged herein, the replacement ECA is the same model (part number 41050-2B003) as originally installed and suffers from the same Defect. While her vehicle was at Hyundai of Palm Springs, Ms. Brasch was forced to rent a car at her own expense of $325.71.

21

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph related to the authorized dealership status of Hyundai of Palm Springs at this time and therefore denies the same. Kia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

69.    Ms. Brasch is unable to afford to replace her Class Vehicle and therefore is forced to continue driving the dangerous and unreliable vehicle.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

70.    Plaintiff Riley Chan is a resident of Lake Forest, California. Mr. Chan purchased a 2019 Hyundai Ioniq Plug-In Hybrid from Benison Auto Group LLC, located in Riverside California, on November 8, 2022.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

71.    Mr. Chan purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and of the highest quality. When shopping for his Class Vehicle, Mr. Chan researched and considered the reliability and quality of the make and manufacturer. Prior to purchasing his Class Vehicle, Mr. Chan heard, viewed, and/or read Hyundai marketing materials and advertisements including brochures, commercials, and internet advertisements, which were disseminated from California, that touted the quality, reliability and safety of Hyundai vehicles.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

72.    At no point before Mr. Chan purchased his vehicle did Hyundai disclose that his vehicle suffered from the Defect, which results in the vehicle stalling, unreliable and unsafe performance of the hybrid powertrain, and could cause vehicle fires.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

73. Mr. Chan did not receive the benefit of his bargain. Mr. Chan purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Defect has significantly diminished the value of Mr. Chan's Class Vehicle.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

74. Had Defendants disclosed the Defect, Mr. Chan would not have purchased his Class Vehicle, or would have paid less to do so.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

75. At all times, Mr. Chan maintained his vehicle in accordance with Hyundai's guidance.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

76. Mr. Chan would purchase a Hyundai or Kia vehicle in the future if Defendants' representations about the vehicle, including its quality, safety, and durability, were accurate.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

77. On April 21, 2025, Mr. Chan was driving approximately two hours away from his home in the California desert when his vehicle began to exhibit engine and transmission performance issues. Over the course of Mr. Chan's drive back home, the vehicle's performance began to deteriorate, unable to accelerate, and ultimately stalled

completely on the highway. Mr. Chan then called a tow truck, which brought his vehicle to Tuttle-Click, Inc. Hyundai in Irvine, California, an authorized Hyundai dealership.[16]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph related to the authorized dealership status of Tuttle-Click, Inc. Hyundai at this time and therefore denies the same. Kia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

78.    Tuttle-Click, Inc. Hyundai technicians "confirmed [Mr. Chan's] concerns" and "performed [a] DTC scan and got code P1744 transmission engine clutch system performance." The technician then spoke with HMA's techline which "advised to replace [the] engine clutch actuator." In the end, Mr. Chan was charged $3,133.81 for the replacement ECA (part number 41050-2B003) and an additional $630 for labor.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

79.    Mr. Chan is unable to afford to replace his Class Vehicle and therefore is forced to continue driving the dangerous vehicle.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

80.    Plaintiff Chad Holliday is a resident of Saint Paul, Minnesota. Mr. Holliday purchased a used 2017 Hyundai Ioniq Hybrid from Inver Grove Hyundai, located at 1290 50th Street East, Inver Grove Heights, MN 55077, on or about September 4, 2021.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

[16] https://www.hyundaiusa.com/us/en/dealer-locator (last accessed March 25, 2026).

24

81. Inver Grove Hyundai is part of Hyundai's network of authorized dealers across the United States, and is promoted on HMA's website, which includes links to "Click to Buy" at local dealerships and provides an updated list of the dealership's inventory.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph related to the authorized dealership status of Inver Grove Hyundai at this time and therefore denies the same. The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

82. Mr. Holliday purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and of the highest quality. When shopping for his Class Vehicle, Mr. Holliday researched and considered the reliability and quality of the make and manufacturer. Prior to purchasing his Class Vehicle, Mr. Holliday heard, viewed, and/or read Hyundai marketing materials and advertisements including brochures, commercials, and internet advertisements, which were disseminated from California, that touted the quality, reliability and safety of Kia vehicles.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

83. At no point before Mr. Holliday purchased his vehicle did Hyundai disclose that his vehicle suffered from the Defect, which results in vehicle stalling, unreliable and unsafe performance of the hybrid powertrain, and could cause vehicle fires.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

84. Mr. Holliday did not receive the benefit of his bargain. Mr. Holliday purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations

25

regarding quality design, and safe and reliable operation. The Defect has significantly diminished the value of Mr. Holliday's Class Vehicle.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

85. Had Defendants disclosed the Defect, Mr. Holliday would not have purchased his Class Vehicle, or would have paid less to do so.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

86. Mr. Holliday's Class Vehicle had 59,820 miles at the time of purchase.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

87. When Mr. Holliday purchased his Class Vehicle, it included the manufacturer's hybrid system warranty. At all times, Mr. Holliday maintained his vehicle in accordance with Hyundai guidance.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

88. Mr. Holliday would purchase a Hyundai or Kia vehicle in the future if Defendants' representations about the vehicle, including its quality, safety, and durability, were accurate.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

89. Beginning in or around September 2021, Mr. Holliday's Class Vehicle began to exhibit engine performance issues when trying to accelerate. Mr. Holliday presented his Class Vehicle to Inver Grove Hyundai on December 1, 2021, when the vehicle had approximately 65,358 miles on the odometer, for routine maintenance and due to a complaint relating to engine performance when accelerating. The Hyundai

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

dealership told Mr. Holliday that there was nothing wrong with his vehicle and the dealership did not repair or replace the vehicle's ECA.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

90.    In or around December 2025, Mr. Holliday's Class Vehicle began to exhibit clutch actuator failure symptoms. The vehicle's check engine light and HEV light illuminated, and the vehicle displayed diagnostic trouble code P1744, indicating an engine clutch system performance issue.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

91.    Mr. Holliday presented his Class Vehicle to Inver Grove Hyundai on December 15, 2025, relating to the check engine light being illuminated and hybrid system performance issues. The Hyundai dealership performed a diagnostic assessment, for which Mr. Holliday was charged $312. The dealership recommended that Mr. Holliday replace the ECA in his vehicle, and provided an estimate of $3,000-$4,000 for the replacement.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

92.    Mr. Holliday is unable to afford to replace his Class Vehicle and therefore is forced to continue driving the dangerous vehicle.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

**B. Defendants**

93.    Defendant KA is a California corporation with its principal place of business in Irvine, California. KA is a subsidiary of KC and is actively engaged in manufacturing, assembling, marketing, and distributing Kia vehicles sold in the United States.

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** Kia admits it is incorporated in California and that its headquarters are in Irvine, California. Kia further admits that it is a subsidiary of KC and that it markets and distributes Kia vehicles in the United States. Kia denies the remaining allegations in this paragraph.

94.   In documents filed with NHTSA related to safety recalls for the Class Vehicles, KA is listed as the manufacturer of the recalled vehicles.[17] Additionally, in KA's recall notices to owners, it instructs Class Vehicle owners to have the repair completed at the "nearest authorized Kia dealership" which can be located by "visit[ing]" KA's website ("www.kia.com"), which is listed on the notice.[18]

**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

95.   KA's C-Suite, executives, and employees responsible for the manufacture, development, distribution, marketing, sales, customer service, and warranty servicing of Kia vehicles are located at the company's Irvine headquarters. As detailed *infra*, the decisions regarding the marketing and sale of the Class Vehicles, the development and issuance of safety recalls, warranty coverage, and decisions regarding the disclosure or non-disclosure of the Defect were in whole or substantial part made by KA at its California headquarters.

**ANSWER:** Kia admits that it makes some decisions regarding the marketing and sale of 2017-2022 Kia Niro Hybrid and 2018-2022 Kia Niro Plug-In Hybrid vehicles, decisions regarding when to initiate a safety recall, and some warranty coverage decisions at its Irvine office. Kia denies the remaining allegations in this paragraph.

96.   Defendant KC is a South Korean corporation with its headquarters located in Seoul, South Korea. KC is the parent corporation of KA.

---

[17] *E.g.*, https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V534-5538.PDF (last accessed March 14, 2024).

[18] https://static.nhtsa.gov/odi/rcl/2023/RCONL-23V534-2175.pdf (last accessed March 14, 2024).

28

**ANSWER:** Kia admits the allegations in this paragraph.

97. On its own website, KC promotes Kia branded vehicles sold by KA in the United States.[19]

**ANSWER:** The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

98. On information and belief, KA and KC control various details regarding their dealers' operations through various written agreements, such as: (i) granting each dealer a license to use their respective trademarks and intellectual property; (ii) furnishing each dealer with marketing materials to assist in the sale of their vehicles; (iii) providing training to dealership personnel to assist in their sales activities; and (iv) prohibiting their dealers from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Class Vehicles.

**ANSWER:** Kia admits that Class Vehicles are sold to consumers and serviced by a network of independently owned and operated dealerships. Kia denies the remaining allegations in this paragraph.

99. Defendant HMA is a California corporation with its principal place of business in Fountain Valley, California. HMA also maintains a 4,300-acre testing facility in Irwindale, California, and an engineering facility in Detroit, Michigan. HMA is a subsidiary of HMC and is actively engaged in manufacturing, assembling, marketing, and distributing Kia vehicles sold in California and the rest of the United States.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

100. HMA's C-Suite, executives, and employees responsible for the manufacture, development, distribution, marketing, sales, customer service, and

---

[19] *E.g.*, https://worldwide.kia.com/int/niro (last accessed March 14, 2024).

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

warranty servicing of Hyundai vehicles are located at the company's Fountain Valley headquarters. As detailed *infra*, the decisions regarding the marketing and sale of the Class Vehicles, the development and issuance of safety recalls, warranty coverage, and decisions regarding the disclosure or non-disclosure of the Defect were in whole or substantial part made by HMA at its California headquarters.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

101.   In documents filed with NHTSA related to safety recalls for the Class Vehicles, HMA is listed as the manufacturer of the recalled vehicles.[20] Additionally, in HMA's recall notices to owners, it instructs Class Vehicle owners to visit a "Hyundai dealer" to have the repair completed.[21]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

102.   Defendant HMC is a South Korean corporation with its headquarters located in Seoul, South Korea. HMC is the parent corporation of HMA and owns a 33.88% stake in KC.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

103.   HMC promotes on its own website all Hyundai vehicles sold by HMA in the United States.[22]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

---

[20] *E.g.*, https://static.nhtsa.gov/odi/rcl/2018/RCLRPT-18V260-8471.pdf (last accessed March 14, 2024).

[21] https://static.nhtsa.gov/odi/rcl/2018/RCONL-18V260-6412.pdf (last accessed March 14, 2024).

[22] https://www.hyundai.com/worldwide/en/vehicles (last accessed March 14, 2024).

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

104.   HMC states that it "help[s] [its] overseas subsidiaries, sales corporations, and newly established enterprises in particular to establish the direction of their customer service strategies."[23] HMC further claims to have "established an ICT-based convergence education system in order to bolster the competency of its employees in customer contact channels such as vehicle sales and product CS, and has also conducted knowledge-enhancing training on vehicles (electric vehicles, luxury vehicles) and customer consultation (CRM, CS) skills improvement training in an effort to nurture experts in vehicle sales, customer interaction, and customer service."

**ANSWER:**  Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

105.   On information and belief, HMC and HMA control various details regarding their dealers' operations through various written agreements, such as: (i) granting each dealer a license to use their respective trademarks and intellectual property; (ii) furnishing each dealer with marketing materials to assist in the sale of their vehicles: (iii) providing training to dealership personnel to assist in their sales activities; and (iv) prohibiting their dealers from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Class Vehicles.

**ANSWER:**  Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

**ANSWER:**

106.   For example, HMC developed a "dealership facility program-known as the 'Global Dealership Space Identity,'" which was implemented by HMA across the

---

[23] https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/sustainability/about-sustainability/hmc-2022-sustainability-report-social-en.pdf (last accessed March 14, 2024).

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

United States.[24] With the assistance of a third party, HMA created "a Global Design Space Identity (GDSI) Facility Standards Manual that outlined all of the new requirements for interior and exterior elements that US dealerships would need." HMA also "developed the GDSI Facility Design Services Program—a multi-faceted ... program including individual surveys of every dealership, site-specific recommendations, and the installation of all new brand elements." As part of the GDSI Facility Design Services Program, HMA provides "every dealer with a complete design intent document" and each dealership works with the third-party retained by HMA "from start to finish— ending each project with an on-site GDSI Facility Compliance Review to make sure every installation was successful[.]"

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

## IV.    SUBSTANTIVE ALLEGATIONS[25]

### A. Hyundai and Kia become one of the most popular automakers in the United States by promoting the safety and reliability of their vehicles.

107.   HMC was established in South Korea in 1967 and started selling vehicles in the United States in 1986 through its subsidiary HMA. Since that time, HMC has become one of the largest automakers in the United States and around the world.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

108.   KC was founded in 1944 manufacturing bicycles and motorcycles and is Korea's oldest manufacturer of motor vehicles. KA was formed in 1992 when KC first imported its vehicles into the United States.

---

[24] https://www.agi.net/our-work/a-subsidiary-of-hyundai-motor-company-of-korea-distributes-cars-and-sport-utility-vehicles-throughout-the-united-states (last accessed March 14, 2024).

[25] Emphasis added throughout unless stated otherwise.

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** Kia admits it was incorporated in 1992. Kia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

109.   In 1999, HMC announced that it had acquired a controlling interest in KC, and that KC would obtain an ownership interest in approximately twenty-two (22) HMC subsidiaries. In subsequent years, HMC divested a portion of its interest and currently controls approximately 34% of KC.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

110.   Through its network of more than 800 dealerships nationwide, HMA sells and services its vehicles. Likewise, KA sells and services a complete line of vehicles in the U.S. through its own network of over 700 dealers.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding KA and therefore denies the same. Kia admits that Class Vehicles are sold to consumers and serviced by a network of independently owned and operated dealerships. Kia denies the remaining allegations in this paragraph.

111.   HMA and KA marketed and sold thousands of Class Vehicles nationwide, including through their nationwide network of authorized Hyundai and Kia dealers and service providers. HMA and KA sell their vehicles through their authorized dealerships. After these dealerships sell cars to consumers, including Plaintiffs and Class Members, they acquire additional inventory from Defendants to replace the vehicle sold, increasing Defendants' revenues. Defendants also sell replacement parts to their dealerships for use to service, maintain, and repair vehicles, including the Class Vehicles. Thus, Plaintiffs' and Class Members' purchase of Class Vehicles and their replacement parts accrue to the benefit of Defendants by increasing their revenues.

**ANSWER:** Kia admits that KC designs and manufactures Class Vehicles and sells them to Kia for marketing, distribution, and sale in the United States, but that Class Vehicles are sold to consumers and serviced by a network of independently owned and operated dealerships. Kia further admits it sells replacement parts to its dealerships. Kia lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

112. Collectively, Hyundai and Kia are the world's third-largest automaker.[26] Defendants reported global sales of 7.3 million vehicles in 2023.[27]

**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

113. Additionally, a report by McKinsey & Company found that over twice as many second-owner used vehicles are sold in the United States each year compared to new vehicles.[28]

**ANSWER:** The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

114. Defendants have been able to transform themselves into such large players in the U.S. auto-market based on its assurances to consumers of care and quality. For example, HMC touts itself as being "committed to becoming a lifetime partner in automobiles and beyond[.]"[29]

---

[26] https://www.cnbc.com/2024/02/29/how-hyundai-motor-group-became-the-worlds-third-largest-automaker.html (last accessed March 18, 2024).
[27] https://m.pulsenews.co.kr/view.php?year=2024&no=67672#:~:text=Hyundai%20Motor%20and%20Kia%20sold,automaker%20for%20a%20second%20year (last accessed March 18, 2024).
[28] https://www.mckinsey.com/industries/automotive-and-assembly/our-insights/used-cars-new-platforms-accelerating-sales-in-a-digitally-disrupted-market# (last accessed March 18, 2024).
[29] https://www.hyundainews.com/en-us/releases/2654 (last accessed March 18, 2024).

34

**ANSWER:** Kia lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph regarding "Defendants" collectively and therefore denies the same. The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same. Kia denies the remaining allegations in this paragraph.

115.   On HMC's webpage devoted to promoting its vehicles sold around the world, including those sold by HMA, HMC touts the safety of its vehicles.[30] HMC states that "[a]t the core of IONIQ Hybrid's design focus is class-leading safety and stability engineered to take any road with comfort and ease."[31]

**ANSWER:** Kia lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

116.   In HMA's public statements, it poses a question: "What if [a car company] cracked the entire industry wide open, peered more deeply into it, spread out all its parts, and questioned their every detail? ... At Hyundai, we ask ourselves the important questions every day. And, every day, we seek the best answers. It's what makes us grow as a car company. It's what makes us Hyundai."[32]

**ANSWER:** Kia lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

117.   Likewise, KA advertises that "Kia engineers are passionate about producing vehicles that are ***exceptionally well designed and reliable***. Their dedication

---

[30] *E.g.*, https://www.hyundai.com/worldwide/en/eco/ioniq-hybrid/safety (last accessed (last accessed March 18, 2024).

[31] https://www.hyundai.com/worldwide/en/eco/ioniq-hybrid/safety (last accessed (last accessed March 18, 2024).

[32] https://www.hyundainews.com/en-us/releases/1191 (last accessed (last accessed March 18, 2024).

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

to quality and attention to detail give Kia the confidence to back every model with an industry-leading warranty program."[33]

**ANSWER:** The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

118. When marketing the Class Vehicles, KA states in its 2019 Niro brochure that "SAFETY never takes a day off" and "[a]t Kia, the priority is always on improving all aspects of safety."[34]

**ANSWER:** Kia lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

119. HMA's and KA's marketing brochures for Class Vehicles specifically tout the quality, performance, reliability, and benefits of their hybrid systems.

**ANSWER:** The allegations involving unspecified marketing brochures are too vague and general to enable Kia to admit or deny them, and on that basis Kia denies the same. Kia lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph regarding HMA and therefore denies the same.

120. HMA states in its 2019 Hyundai Ioniq Hybrid brochure, "If you're thinking about driving a car designed to reduce emissions and save fuel, your timing is excellent... Each [Ioniq] delivers outstanding fuel economy. Ioniq Hybrid Blue is rated by the EPA as the most fuel-efficient non-plug-in car in America."[35] HMA adds that "The Ioniq's low-emission powertrains and eco-friendly exterior paints help address the Earth's climate."

---

[33] https://manualzz.com/doc/7136122/kia-2015-sorento-brochure---dealer-e (last accessed March 18, 2024).

[34] https://www.auto-brochures.com/makes/Kia/Niro/Kia_US%20Niro_Hybrid_2019.pdf (last accessed March 14, 2024).

[35] https://www.auto-brochures.com/makes/hyundai/Ioniq/hyundai_US%20Ioniq_2019.pdf (last accessed March 24, 2024).

**ANSWER:** Kia lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

121. Not only does HMA tout the hybrid system's purported fuel-efficient features, it specifically promotes its powertrain performance, stating: "Behind the wheel of an Ioniq Hybrid or Plug-in Hybrid, the shifts of a 6-speed Dual Clutch Transmission are crisp, without the strange rubber-band sensation you feel with some other hybrids' continuously variable transmissions. Press the brake pedal, and the response is reassuringly direct (unlike the squishy pedal feel of many other hybrids). There are no odd noises from the electric motor, either. Instead, you feel the electric motor's seamless torque propelling you forward, with the grip of a multi-link rear suspension holding the road. And that just feels right."[36]

**ANSWER:** Kia lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

122. Moreover, HMA specifically markets the ability to rely on solely on the ICE for greater performance: "Drive Mode Select's Sport mode keeps Ioniq Hybrid and Plug-in Hybrid's gas-powered engine on at all times, using the electric motor to power added traction. It firms up steering, quickens the shift points and changes the color of the gauges to enhance the sense of sportiness."[37] HMA also provided the following graphic showing that the ICE is required for acceleration and uphill driving regardless of driving mode selected:

**ANSWER:** Kia lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

---

[36] https://www.auto-brochures.com/makes/hyundai/Ioniq/hyundai_US%20Ioniq_2019.pdf (last accessed March 14, 2024).

[37] https://www.auto-brochures.com/makes/Hyundai/Ioniq/Hyundai_US%20Ioniq_2019.pdf

123.   In a press release discussing the 2019 Ioniq, HMA stated "POWERTRAIN CHOICE[:] Developed for high energy efficiency *without compromising* driving



performance, every Ioniq powertrain represents a unique and *uncompromising solution* toward a cleaner means of mobility."[38]

**ANSWER:**  Kia lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

124.   In a press release published by HMA announcing the release of 2017 Ioniq Class Vehicles, Mike O'Brien, vice president of Corporate, Product and Digital Planning for HMA stated that the:

> "IONIQ will attract an entirely new group of eco- and efficiency-oriented buyers in the U.S. market... With outstanding *powertrain flexibility*, design, connectivity, and advanced technologies, IONIQ meets the needs of a large and growing group of buyers needing a highly efficient, low-emissions vehicle *without compromise* to their daily lifestyles."[39] In a different press release discussing the 2017 Ioniq, HMA reiterated that "Hyundai's approach for the Ioniq line delivers an uncompromising design and driving experience *coupled with the latest in safety* and convenience technologies, making it an appealing choice for a wide range of buyers."[40]

**ANSWER:**  Kia lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

---

[38] https://www.hyundainews.com/en-us/releases/2542 (last accessed March 14, 2024).

[39] https://www.hyundainews.com/en-us/releases/2308 (last accessed March 14, 2024).

[40] https://www.hyundainews.com/en-us/releases/2322 (last accessed March 14, 2024).

38

125.    Likewise, the Niro's hybrid engine plays a prominent role in the marketing of the vehicle. KA's brochure for 2017 Niro tells consumers they can get "the best of both worlds," that "[t]he new Kia Niro is a game-changing hybrid crossover that proves you really can have it all."[41] KA touts the environmentally friendly aspects of the hybrid engine as well, calling the vehicle "[a] sustainable, fuel-efficient hybrid, with the style, technology and versatility of a crossover. It's the ultimate choice for those who care about the environment – and care just as much about driving pleasure."

**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

126.    In its brochure for the 2019 Kia Niro Hybrid (HEV) and PHEV, KA specifically promotes the use of the vehicles' ICE and electric motors: "Niro HEV's advanced parallel hybrid powertrain ***seamlessly blends gas and electric power for a great ride with outstanding hybrid efficiency*** — such as a combined EPA-estimated average of 50 mpg on the FE trim. It's just as impressive on the inside, too — giving you state-of-the-art connectivity, tons of crossover versatility, and a range of intuitive technology and available premium features."[42] As for the 2019 Niro PHEV, KA claims that the vehicle includes "hybrid technology at the next level" and that the vehicle "gives you the same crossover perks as HEV, plus lets you plug in, charge up, and go fully electric at the push of a button — an EPA-estimated 26 miles on a full charge."[43]

**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

127.    KA further promotes the hybrid features of the 2019 Kia Niro HEV and PHEV, stating "POWER & EFFICIENCY come courtesy of Niro's 1.6L Gasoline

---

[41] https://www.auto-brochures.com/makes/Kia/Niro/Kia_int%20Niro_2017.pdf
[42] https://www.auto-brochures.com/makes/Kia/Niro/Kia_US%20Niro_Hybrid_2019.pdf (last accessed March 14, 2024).
[43] *Id.*

Direct Injection (GDI) engine and powerful electric motor, which together deliver 139 horsepower and outstanding efficiency."[44]

**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

128. Moreover, KA specifically discusses the vehicle's dual powertrains (ICE and electric): "Niro HEV is designed to allow both the gasoline engine and electric motor to *work together simultaneously* for optimum efficiency."[45] KA further touts the reliability of the PHEV system: "Head out for the day, charge up when you get home, and rest assured that should you exceed your all-electric range, PHEV will kick into hybrid mode automatically. So you won't have to plug in and recharge until it's convenient for you."

**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

129. KA's 2019 Niro brochure states: "HEV and PHEV are powered by Kia's full parallel hybrid system. This advanced engineering allows both the gas engine and electric motor to *simultaneously* provide power directly to the wheels, for optimum

[44] *Id.*
[45] *Id.*

40

efficiency. PHEV takes this technology a step further, letting you go all electric, on demand."[46]

 

**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

130.    Similarly, KA's 2020 brochure for the 2019 Kia Niro Hybrid (HEV) and PHEV promotes hybrid powertrains by stating that "Niro gives you two ways to get crossover versatility with hybrid efficiency. Niro Hybrid (HEV) blends gas and electric power, while Niro Plug-In Hybrid (PHEV) does the same,... No matter which you choose, you'll also get impressive technology."[47] Moreover, KA recognized that consumers are reluctant to rely on electric power alone and ICE performance is critical, telling consumers "[y]ou'll be happy to learn that you can take those road trips just like you always have. The desert, the coast, new cities, old favorites... the Niro hybrids give you impressive range to roam."

---

[46] *Id.*

[47] https://www.auto-brochures.com/makes/Kia/Niro/Kia_US%20Niro_Hybrid_2020.pdf (last accessed March 14, 2024).

41

**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

131.   KA tells consumers on its website that they can "[s]pend less on maintenance with an EV[,]" and asks "Did you know that electric vehicles generally require less factory recommended maintenance than traditional gas engine vehicles? See how an EV and a gas engine vehicle differ when it comes to a typical maintenance schedule."[48]

**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

**B. Hyundai and Kia vehicles have the same designs, components, and suppliers.**

132.   Today, over half the cars HMC sells in the United States are designed and manufactured domestically at HMA's facilities, including at its "design, research, and testing grounds in California" near its corporate headquarters.[49] In total, HMC and HMA employ approximately 5,000 people at these facilities, and an additional 20,000 employees at U.S. dealerships. Similarly, more than 40 percent of Kia vehicles sold in the United States are manufactured in the country.[50] KC has invested $2.8 billion in a manufacturing facility located in Georgia.[51] By 2025, Kia will have produced 5 million vehicles in the United States.[52]

---

[48] https://www.kia.com/us/en/ev (last accessed March 14, 2024).
[49] https://www.hyundainews.com/assets/documents/original/19525-AboutHyundaiMotorAmerica.pdf (last accessed March 14, 2024).
[50] https://www.georgia.org/press-release/kia-invest-over-200-million-ev9-production-expansion (last accessed March 14, 2024).
[51] https://www.kiageorgia.com/about-kia-georgia/the-plant/ (last accessed March 14, 2024).
[52] https://www.wtvm.com/2024/02/20/kia-approaching-5-million-mark-vehicle-production-west-point/ (last accessed March 14, 2024).

42

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding HMC and HMA and therefore denies the same. The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

133.   Hyundai and Kia branded vehicles share many of the same components, including the ECAs installed in the Class Vehicles (*see infra* ¶¶ 119-22), and the same group of engineers work on Hyundai and Kia vehicles at Hyundai-KA Technical Center, Inc. ("HATCI").[53]

**ANSWER:** The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

134.   Hyundai and Kia vehicles are commonly rebranded or "rebadged" versions of the other brand's vehicles. For example, the Hyundai Entourage "is identical to the [Kia] Sedona, except for cosmetics and the packaging of a few features."[54] The engines are the same in these vehicles, the climate controls are placed in the same locations, even the number of cupholders (14) are identical.

**ANSWER:** The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same. Kia denies the remaining allegations in this paragraph.

135.   Introduced by Defendants with their 2017 model year, the Hyundai Ioniq and Kia Niro Class Vehicles are based on the same design platform.

---

[53] https://www.forbes.com/sites/jimhenry/2013/05/31/balancing-act-Hyundai-and-kia-share-products-under-the-skin-but-must-avoid-blurring-identities/?sh=210585421c7a (last accessed March 14, 2024); https://www.hyundainews.com/en-us/releases/398 (last accessed July 14, 2021); https://www.prnewswire.com/news-releases/new-report-highlights-hyundais-multi-billion-dollar-contribution-to-the-united-states-economy-301926034.html (last accessed March 14, 2024).

[54] https://www.nytimes.com/2006/11/12/automobiles/autoreviews/12AUTO.html (last accessed March 14, 2024).

43

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

136. A recent *Consumer Reports* article highlighted the fact that "[a]lthough Hyundai and Kia are separate brands, the Hyundai Motor Company is the largest shareholder in Kia Motors, with 33.88 percent ownership" and the "brands share many of the same parts from the same suppliers, including some of the parts at risk of catching fire."[55]

**ANSWER:** The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

137. Because Hyundai and Kia vehicles are often rebadged vehicles, they frequently use identical and interchangeable parts. That is why when Kia announces a recall of its vehicles, an identical Kia recall is typically announced shortly thereafter, or vice versa. For example, in 2013, Hyundai and Kia recalled 1.7 million vehicles across thirteen models which shared the same defective brake light switches.[56] The *Los Angeles Times* noted that the "massive recall of 1.7 million vehicles ... was a sign of what can go wrong when parts are shared by" Hyundai and Kia.

**ANSWER:** Kia admits it issued a voluntary recall in 2013 regarding the stop lamp switch in certain vehicles. Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

**C. Engine Clutch Actuators are necessary for the safe and reliable operation of the hybrid Class Vehicles**

---

[55] https://www.consumerreports.org/cars/car-recalls-defects/why-so-many-hyundai-kia-vehicles-get-recalled-for-fire-risk-a1169940635/ (last accessed March 14, 2024).

[56] https://www.latimes.com/business/la-xpm-2013-apr-03-la-fi-hy-hyundai-kia-motors-recall-20130403-story.html (last accessed March 14, 2024).

138.    Since they were first brought to market, hybrid vehicles were marketed as a technological advancement that provides environmental benefits, including air quality, to drivers and the public at large. Hybrid vehicles "typically produce lower tailpipe emissions than conventional vehicles do, and zero tailpipe emissions when running only on electricity."[57] Hybrid vehicles, when performing as designed, offer meaningful cost savings to drivers as the cost of electricity is significantly less than the cost of gasoline.[58] As shown above, these benefits play prominent roles in the marketing for the Class Vehicles.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding the overall marketing or cost savings of hybrid vehicles and therefore denies the same. The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

139.    The Class Vehicles are hybrid vehicles that contain Defendants' 1.6-liter four-cylinder engine and an electric motor. Defendants manufacture and sell two forms of hybrid Class Vehicles, traditional hybrid electric vehicles ("HEV") and plug-in hybrid electric vehicles ("PHEV").

**ANSWER:** Kia admits that 2017-2022 Hyundai Ioniq Hybrid vehicles are hybrid electric vehicles and 2018-2022 Kia Niro Plug-In Hybrid are plug-in hybrid electric vehicles, and they contain a 1.6-liter four-cylinder engine and an electric motor. Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same.

---

[57] https://afdc.energy.gov/vehicles/electric_emissions.html (last accessed March 14, 2024).

[58] https://www.forbes.com/sites/brookecrothers/2021/05/22/rising-gas-prices-driving-you-to-an-electric-car-cost-to-charge-a-tesla-model-3-vs-gas/?sh=3e12b2c37192 (last accessed March 14, 2024).

45

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

140.   The drivetrain systems for HEV and PHEV Class Vehicles are identical except that HEV vehicles do not have a plug to charge its battery.[59] While an HEV regenerates energy using the ICE or with the help of regenerating braking,[60] a PHEV has the additional option of charging its battery from an electric outlet.[61]

**ANSWER:**  Kia admits that 2017-2022 Kia Niro Hybrid and 2018-2022 Kia Niro Plug-In Hybrid generate energy through the ICE or regenerative braking, and that 2018-2022 Kia Niro Plug-In Hybrid also can charge its battery from an electric outlet. The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

141.   Hybrid vehicles have two sources of propulsion (i.e. horsepower and torque): an ICE and an electric motor—as opposed to a single powertrain found in traditional gas-fueled ICE vehicles. When driven, hybrid vehicles can utilize the ICE, the electric motor, or both. Incorporation of the electric motor, or its complete replacement of an ICE for power, can minimize fuel consumption, conserve energy, and in certain cases, recuperate energy in some driving situations (e.g. starting, cruising, braking, stopping, etc.).

**ANSWER:** Kia admits that hybrid vehicles are equipped with an internal combustion engine and an electric motor, either of which may be utilized to power the

---

[59] https://www.kia.com/eu/about-kia/experience-kia/technology/electrification/how-do-hybrid-electric-cars-work/ (last accessed March 14, 2024).

[60] Regenerative brakes use electric motors rather than a traditional friction braking system to slow down and stop a car... With regenerative brakes, the braking system captures that kinetic energy and transfers it into the car's batteries." https://www.energy.gov/energysaver/how-regenerative-brakes-work#:~:text=Regenerative%20brakes%20work%20by%20reversing,over%20time%20when%20used%20regularly (last accessed March 14, 2024).

[61] 2020 Niro HEV and PHEV Owner's Manual p. H3, available at https://owners.kia.com/content/owners/en/manuals.html (last accessed March 14, 2024).

46

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

vehicle. Relative to an internal combustion engine, an electric motor can use less fuel. Kia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

142. A hybrid vehicle is designed to be "able to switch between both powertrains or make them work together to always deliver the solution that powers the car forward with maximum efficiency. This changes all the time, at different points in the driving process."[62] "Depending on the driving conditions, the HEV computer selectively operates between the engine and the electric motor or even both at the same time."[63]

**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

143. "The [electric] drive motor supplements the [ICE] power when the driver press[es] the accelerator pedal or when the vehicle is running in the fuel efficiency mode. In addition, the drive motor plays the role of an alternator (generator) when decelerating or braking to charge the high-voltage battery."[64]

**ANSWER:** The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

---

[62] https://www.kia.com/eu/about-kia/experience-kia/technology/electrification/how-do-hybrid-electric-cars-work/ (last accessed March 14, 2024).

[63] 2020 Niro HEV and PHEV Owner's Manual p. H2.

[64] https://www.hioniqae.com/hyundai_ioniq_description_and_operation-839.html (last accessed March 14, 2024).

47

144.    Kia explains in its Owner's Manuals for the Kia Class Vehicles that when a HEV starts up or is cruising at a low speed, it utilizes the electric motor.[65] But acceleration of the Class Vehicle *requires* usage of the ICE.



**ANSWER:** The cited Owner's Manuals speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same. Kia denies the remaining allegations in this paragraph.

145.    HMA's 2020 Ioniq Owner's manual contains the same description of the hybrid system and graphic:[66]



**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

---

[65] 2020 Niro HEV and PHEV Owner's Manual p. H2, available at https://www.kiatechinfo.com/ext_If/kma_owner_portal/content_pop.aspx.
[66] https://cdn.dealereprocess.org/cdn/servicemanuals/hyundai/2020-ioniqhybrid.pdf, H2. (last accessed March 14, 2024).

146.   The PHEV Class Vehicles contain an "Electric Vehicle Mode," also called "CD (Charge Depleting) Mode," which could allow drivers to accelerate using the electric motor. However, this mode can only be used "over a certain distance until the hybrid battery becomes low" and certain driving conditions or use of interior features, such as a heater, may require use of the ICE, even when the vehicle is in Electric Vehicle Mode.[67]



**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

147.   Like a traditional gas-powered vehicle, the hybrid Class Vehicles transfer mechanical power from the ICE and/or electric motor to the transmission to drive the wheels.[68] The Class Vehicles are equipped with an automatic six-speed dual-clutch transmission ("DCT").

**ANSWER:** Kia admits the allegations in this paragraph regarding 2017-2022 Kia Niro Hybrid and 2018-2022 Kia Niro Plug-In Hybrid vehicles. Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Hyundai vehicles and therefore denies the same.

148.   Transmissions are comprised of a series of gears that allow the driver to control how much power is delivered from a power source (ICE or electrical motor) to the vehicle's wheels. Transmissions are also necessary to properly maintain an ICE.

---

[67] 2020 Niro HEV and PHEV Owner's Manual p. H3.

[68] https://afdc.energy.gov/vehicles/how-do-hybrid-electric-cars-work; https://www.hioniqae.com/Kia_ioniq_description_and_operation-839.html (last accessed March 14, 2024).

49

Without a transmission, an ICE would spin too quickly, resulting in structural instability, engine shaking, and overheating.

**ANSWER:** Kia admits that the transmission is a necessary vehicle component. Kia denies the remaining allegations in this paragraph.

149.   In addition to the transmission clutch system that is common to all vehicles, the Class Vehicles contain an engine clutch system.[69] Generally, a clutch is a mechanical disk that engages and disengages a power source from a rotating shaft. For Class Vehicles, the engine clutch system controls when a Class Vehicle's DCT is powered by the ICE, electric motor, or both. According to KA and HMA, the engine clutch system "[t]ransmits or blocks the driving power of the engine when switching between the EV and HEV modes."[70]

**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same. Kia denies the remaining allegations in this paragraph.

---

[69] https://www.hioniqae.com/hyundai_ioniq_description_and_operation-760.html (last accessed March 18, 2024).; https://www.kniro.net/description_and_operation-1161.html (last accessed March 18, 2024).

[70] https://www.hioniqae.com/hyundai_ioniq_description_and_operation-760.html; https://www.kniro.net/description_and_operation-1161.html (last accessed March 18, 2024).

50

150.    Below is a diagram showing the power flow from the ICE or electric motor in a Class Vehicle, showing that the engine clutch sits between the ICE:[71]



**ANSWER:**  KIa is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

151.    The engine clutch system found in the Class Vehicles contains several parts, including the clutch disc, the ECA, a fluid reservoir and a hydraulic pipe:[72]



**ANSWER:**  Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

152.    The central component of the engine clutch system—and thus, the entire hybrid vehicle—is the ECA. As its name states, the ECA actuates or causes the engine

[71] https://www.hioniqae.com/hyundai_ioniq_description_and_operation-839.html (last accessed March 18, 2024).

[72] https://www.hioniqae.com/hyundai_ioniq_description_and_operation-760.html (last accessed March 18, 2024); https://www.kniro.net/description_and_operation-1161.html (last accessed March 18, 2024).

51

clutch to connect or disengage the ICE from the transmission. The ECA is controlled hydraulically using brake fluid, which is why it is also referred to as the Hydraulic Clutch Actuator.

**ANSWER:** Kia admits that the engine clutch actuator plays a role with respect to the engagement of the engine with the transmission in 2017-2022 Kia Niro Hybrid and 2018-2022 Kia Niro Plug-In Hybrid vehicles, and that it requires certain fluid to operate. Kia denies the remaining allegations in this paragraph.

153. The ECA contains a PCB that is used to receive and translate the electric operating signal that dictates whether the ICE should be engaged.[73] And the PCB is powered by the vehicle's 12V battery.

**ANSWER:** Kia admits that the HCA in 2017-2022 Kia Niro vehicles contains a PCB that is powered by the vehicle's 12V battery, and that generally speaking, the PCB connects electric signals. The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same. Kia denies the remaining allegations in this paragraph.

154. The ECAs in each of the Class Vehicles contain the same design and are interchangeable. Specifically, the Class Vehicles' ECAs are manufactured by Schaeffler Automotive Buehl GmbH & Co. KG ("Schaeffler"), formerly known as LuK GmbH & Co. KG ("Luk").

**ANSWER:** Kia admits that the HCAs in 2017-2022 Kia Niro Hybrid and 2018-2022 Kia Niro Plug-In Hybrid vehicles are manufactured by Schaeffler. Kia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

---

[73] "A printed circuit board (PCB) is an electronic assembly that uses copper conductors to create electrical connections between components. PCBs also provide mechanical support for electronic components so that a device can be mounted in an enclosure." https://resources.altium.com/p/what-is-a-pcb (last accessed March 18, 2024).

155. The ECAs are manufactured by Schaeffler based on HMC and KC's specifications. When Schaeffler filed a Defect Information Report relating to the ECAs installed in 2017 Niro and 2017 Ioniq Class Vehicles (*see infra* §IV.E.3), it noted that it "strictly supplies according to the customers' requests."[74]

**ANSWER:** Kia admits that the HCAs in 2017-2022 Kia Niro Hybrid and 2018-2022 Kia Niro Plug-In Hybrid vehicles are manufactured by Schaeffler. The Safety Recall Report speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same. Kia is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

156. The ECAs in the Class Vehicles are marked by Defendants with parts numbers: 41050-2B001 (2017 Kia Niro and 2017-2019 Hyundai Ioniq); 41050-2B002 (2017-2018 Kia Niro and 2017-2019 Hyundai Ioniq); and 41050-2B003 (2019-2022 Kia Niro and 2017-2022 Hyundai Ioniq). Schaeffler utilizes part number L-0G4D3-0G13 for the Class Vehicle ECAs.[75]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia admits that the Part 573 Safety Recall Report submitted on July 31, 2023, includes component part number 41050-2B001 for 2017MY, component part number 410502B002 for 2017-2018MY, and component part number 41050-2B003 for 2019-2022MY. The Part 573 Safety Recall Report from Schaeffler Automotive Buehl GmbH & Co. KG speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

[74] https://static.nhtsa.gov/odi/rcl/2018/RCLRPT-18E033-5664.PDF (last accessed March 18, 2024).

[75] https://static.nhtsa.gov/odi/rcl/2018/RCLRPT-18E033-5664.PDF (last accessed March 18, 2024).

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

157.   The ECAs installed in the Class Vehicles are interchangeable between Hyundai and Kia Class Vehicles. Indeed, as shown below, the packaging for the ECAs and the components themselves bear the logo of both Hyundai and Kia.[76] [77] [78]





**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

**D. The ECAs installed in the Class Vehicles contain a defect that results in engine stalls and vehicle fires.**

158.   Despite Defendants' consistent marketing and repeated promises of safety and reliability of the hybrid engine system, the Class Vehicles contain a defect that poses a dangerous risk to the safety of drivers, passengers, and bystanders. Specifically, the ECAs installed in the Class Vehicles are defective because fluid may enter the PCB located inside the actuator. Fluid within an electrified PCB is a well-known cause of short circuits. In turn, short circuits within a vehicle lead to a host of safety risks,

[76] https://www.ebay.com/itm/335168437547 (last accessed March 18, 2024).
[77] https://lagabasen.com/visa-produkt?part=Y-41866621 (last accessed March 18, 2024).
[78] https://www.ebay.com/itm/185794500594 (last accessed March 18, 2024).

including a spontaneous vehicle fire, that render the vehicle unfit for ordinary usage and dangerous.

**ANSWER:** Kia admits that 2017-2022 Kia Niro Hybrid and 2018-2022 Kia Niro Plug-In Hybrid vehicles may exhibit a condition in which the PCB in the HCA may become contaminated with fluid, which may lead to an electrical short circuit increasing the risk of an engine compartment fire while driving. Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

159.   In addition to vehicle fires, the Defect causes serious disruptions to the normal functioning of the Class Vehicles and can prevent drivers from starting their vehicle, prevent a driver from safely accelerating or switching between electric and ICE power as needed, or cause the vehicle to stall while in motion.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

160.   While some symptoms of the Defect may be apparent to ordinary drivers (e.g., vehicle fires or stalls), not all are. The Defect may also trigger certain DTCs, which are codes used to diagnose malfunctions in a vehicle. While dashboard lights may alert a driver that there is an issue, a DTC identifies what and where the issue is. DTCs are also called engine vehicle fault codes and can typically only be read with a scanner that plugs directly into the port of a vehicle. According to KA, the Defect may cause: (i) loss of communication network between ECA and the hybrid control unit (DTC: U1010); (ii) short circuit or high voltage detected within vehicle control modules (DTC: U1011); (iii) a functional safety fault in the engine clutch system (DTC: P17EE); (iv) a fault in the (End of Line) coding for the engine clutch system (DTC: P17ED); (v) abnormal performance of the engine clutch system (DTC: P17E8); (vi) fault in the

engine clutch actuator electric hardware (DTC: P17E2); and (vii) a fault with the engine clutch system generating energy for the transmission (DTC: P1744).[79]

**ANSWER:** Kia admits that DTCs can typically only be read with a scanner that plugs into the port of a vehicle. Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding ordinary drivers and therefore denies the same. The cited document speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same. Kia denies the remaining allegations in this paragraph.

161.  One owner of a 2022 Kia Niro filed a complaint with NHTSA regarding his experience with the Defect, stating: "[W]hile driving at an undisclosed speed, the vehicle inadvertently lost motive power. The [driver] was able to pull over to the shoulder of the roadway, where the vehicle failed to restart. The check engine and Hybrid System warning lights illuminated. The vehicle was towed to the dealer, who diagnosed a failure with the hydraulic clutch actuator."[80]

**ANSWER:** To the extent the allegations in this paragraph are summaries or characterizations of the content available on NHTSA's website, the website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies those allegations. Kia denies the remaining allegations in this paragraph.

162.  An owner of a 2019 Kia Niro reported to NHTSA that "[W]hile traveling on the freeway the gas engine shut down, HEV triangle came on and the information center on the car displayed 'turn off car restart' on this trip it happened three times... When this happens, I have only a limited amount of room to get the car off the road. This problem has only happened on freeways and the mountain pass with limited pull

---

[79] https://static.nhtsa.gov/odi/rcl/2023/RCRIT-23V534-0846.pdf (last accessed March 18, 2024).

[80] NHTSA ID Number: 11558404.

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

outs. This exposes me and any passenger's to a rear end collision. I feel the manufacture is playing [sic] roullet with me and my passenger's lives."[81]

**ANSWER:** To the extent the allegations in this paragraph are summaries or characterizations of the content available on NHTSA's website, the website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies those allegations. Kia denies the remaining allegations in this paragraph.

163.   An owner of a 2018 Niro filed a complaint with NHTSA, warning that "while driving at an undisclosed speed, the engine revved up. The contact stated that the accelerator pedal was depressed; however, the vehicle was slow to respond. Eventually, the vehicle shifted into gear and started to move. The contact stated that the check HEV and turn off engine error messages were displayed. The vehicle was taken to the local dealer, where it was diagnosed that a faulty engine clutch [sic] activator needed to be replaced."[82]

**ANSWER:** To the extent the allegations in this paragraph are summaries or characterizations of the content available on NHTSA's website, the website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies those allegations. Kia denies the remaining allegations in this paragraph.

164.   The owner of a 2017 Niro filed a NHTSA complaint because the vehicle "caught on fire...[while] driving down the interstate. No coll[i]sion was involved."[83] The owner went on to describe the cascading safety risks created by the Defect: "I got a warning message to stop the engine due to a problem being detected in the hybrid system. I pulled off of the interstate during rush hour traffic and noticed black smoke coming from underneath my hood. I thought that something had just happened to the engine. I stayed in the car and called a tow truck as I did not want to stand on the

---

[81] NHTSA ID Number: 11559989.
[82] NHTSA ID Number: 11548358.
[83] NHTSA ID Number: 11191530.

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

shoulder of this busy highway. A man then jumps out of his truck and starts running toward me yelling at me to get out of the car that it was on fire. I got out, we ran down the shoulder and we stood watching my car become engulfed in flames. I just bought the car...."[84]

**ANSWER:** To the extent the allegations in this paragraph are summaries or characterizations of the content available on NHTSA's website, the website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies those allegations. Kia denies the remaining allegations in this paragraph.

## E. Defendants knowingly manufactured and sold over one hundred thousand Class Vehicles that contain a deadly defect.

165.   The ECAs installed in the Class Vehicles contain a safety defect that results in vehicle stalls, unresponsive acceleration, the inability to switch between electric and ICE power in a hybrid vehicle, and engine compartment fires.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

166.   Defendants must have had or should of had knowledge of the ECA defect, and the safety risk it poses to Class Vehicle drivers, passengers, and even bystanders, through several sources, including, but not limited to: (1) each Defendant's pre-sale testing; (2) each Defendant's own records of customer complaints; (3) dealership repair records; (4) warranty and post-warranty claims and part sales; (5) three safety recalls issued in 2018 concerning the ECAs installed in certain Class Vehicles; and (6) Hyundai and Kia's long history of defective components causing electrical short circuits in their vehicles and each Defendant's post sale monitoring of Class Vehicles for safety defects.

---

[84] *Id.*

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

### 1.    Defendants' Pre-Sale Testing and Quality Control Measures

167.   HMC, HMA, KA, and KC are experienced in the design and manufacture of consumer vehicles. As experienced manufacturers, Defendants conduct rigorous pre-sale tests to verify the parts are free from defects and align with their specifications.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding HMC and HMA and therefore denies the same. Kia denies the remaining allegations in this paragraph.

168.   HMC states that it conducts "preemptive quality and safety measures from the vehicle development stage" and is able to "prevent[] any significant problems afterward through early detection, early improvement and early after-sales actions."[85] To that end, HMC touts its continued improvement of quality and safety measures and how it conducts extensive post-sale monitoring of its vehicles:[86]

> [W]e continue upgrading overall quality and safety systems not only by promoting preemptive quality and safety measures from the vehicle development stage, but also by preventing any significant problems afterward through early detection, early improvement and early after-sales actions. In particular, we will establish a sustainable safety management system designed to maximize customer satisfaction and strengthen trust by developing quality and safety training programs, operating quality and safety reporting centers, analyzing safety information, and establishing safety test sites.

---

[85] https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/sustainability/about-sustainability/hmc-2022-sustainability-report-social-en.pdf (last accessed March 18, 2024).

[86] *Id.*

59
DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

169. HMC further states that it "constantly monitors customer complaints and voluntarily recalls all the relevant vehicles to protect customers as soon as manufacturing defects assessed as highly likely to cause accidents are identified."[87]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

170. When announcing the opening of Hyundai and Kia's joint-testing facility in California, known as the "Proving Grounds," HMC stated the facility was designed as a "test site for the next-generation Hyundai and Kia vehicles," "reaffirm[ing] the compan[ies'] commitment to designing, testing, and building Kia [and Kia] products in the United States for North American consumers."[88] "[E]very Single Kia [and Hyundai] component" is tested here which is intended to simulate up to "five years' wear and tear."[89] The manager for the facility "describes this extreme test facility as 'a car's worst nightmare.'"[90]

**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same. Kia denies the remaining allegations in this paragraph.

171. KC conducts expansive presale testing on its vehicles to make sure they "endure over a long time without fault."[91] KC states that it conducts "performance and

---

[87] *Id.*

[88] https://www.hyundainews.com/en-us/releases/393 (last accessed March 18, 2024).

[89] https://www.autocar.co.uk/car-news/new-cars/behind-scenes-kias-desert-testing-facility (last accessed March 18, 2024).

[90] *Id.*

[91] https://www.kia.com/fj/experience/innovation-story/performance.Kappa.html (last accessed March 18, 2024).

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

durability tests" on "all Kia vehicles sold in the U.S" at the California Proving Ground.[92] KC further claims that it "put[s] [its] engines through rigorous testing in the highest, hottest and coldest places that a car can possibly be before [it] use[s] them in [Kia] cars."[93]

**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

172.   In addition, John Juriga, the Director of Powertrain at HATCI in 2015, stated that Kia's validation testing is among the toughest in the automotive industry.[94] Among other things, this validation testing is intended to ensure durability, during which "we're stressing the components as much as possible and we run it virtually nonstop for 300 hours." Next, Kia does an "overrun spec" where it runs it over spec for 10–20 hours to make sure it can survive past the red line limits in order to "make sure that these products stay durable in the customers' hands."

**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

173.   On its website, KC states that it conducts seven "durability tests" to "identify causes and find solutions to them to make our cars endure over a long time without fault."[95] Among the durability tests performed are two different "parts durability test[s]" ("item durability test" and "module durability test") and a "corrosion test."[96]

---

[92] https://www.kia.com/fj/experience/innovation-story/performance.Kappa.html (last accessed March 18, 2024).

[93] https://www.kia.com/fj/experience/innovation-story/performance.Kappa.html (last accessed March 18, 2024).

[94] https://www.youtube.com/watch?v=GNPB3RtHN2M (last accessed March 18, 2024).

[95] https://www.kia.com/fj/experience/innovation-story/performance.Kappa.html (last accessed March 18, 2024).

[96] *Id.*

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

174. HMC and HMA similarly conduct extensive safety testing on their vehicles. Like Kia, HMA touts that its cars are tested in order to ensure that the cars are roadworthy. In its brochure for 2019 Ioniq Class Vehicles, HMA stated that in November 2016, "pressure-test[ed]" the Ioniq prototype "by pushing it to the limits."[97] HMA commented that "[i]t's the kind of achievement under extreme stress that helps validate the durability of engineering like the quick-shifting Dual Clutch Transmission on Ioniq Hybrid and Plug-in Hybrid."[98]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding HMC and HMA and therefore denies the same. Kia denies the remaining allegations in this paragraph.

175. HMC stated that its "***cars undergo thousands of hours of examination and it's not just engine performance that is under scrutiny***."[99]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

176. HMC touts its robust Product Quality Management systems, "based on its quality philosophy of 'producing defect-free vehicles that will never break down' backed by cutting-edge safety technologies:"[100]

[97] https://www.auto-brochures.com/makes/hyundai/Ioniq/Kia_US%20Ioniq_2019.pdf (last accessed March 18, 2024).

[98] *Id.*

[99] https://www.hyundai.news/eu/articles/press-releases/hail-rain-or-shine-hyundai-motors-extreme-weather-testing.html (last accessed March 18, 2024).

[100] https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/sustainability/about-sustainability/hmc-2022-sustainability-report-social-en.pdf (last accessed March 18, 2024).

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**Establishing Quality Management System** Hyundai seeks to create "customer safety" values by securing leading quality standards in the global market and strengthening quality management through technical preventive quality activities, among other initiatives. We have established a company-wide integrated quality management system to satisfy customers' diverse quality and safety requirements, .....

**Quality Management Standards and Techniques** Hyundai has introduced and applied quality management techniques to strengthen its market competitiveness on the basis of "defect-free quality". Our quality management techniques, aimed at providing customers with vehicles of the very highest quality in all fields, such as R&D, production, sales, and services, are supported by the best experts in each field (Man); optimal equipment (Machine); the best parts (Material); the best method (Method); thorough verification (Measurement); and commitment to defect free quality (Moral). ..... We also make continuous efforts to upgrade quality management standards and criteria based on the data collected and analyzed in quality risk management processes, such as quality checks, case studies, and improvements.

**Preemptive Management of Quality Risks** From the early design stage of new vehicle development, Hyundai preemptively inspects and manages parts suppliers as well as its own production process quality. Based on product drawings, we conduct a comprehensive review of parts in terms of functions, structures, reliability, and durability, while carefully analyzing our own processes and those of suppliers before issuing the final approval, thereby eliminating quality risks throughout production processes in advance. In addition to our own verification of test vehicles, Hyundai relies on the test drive opinions of customers and professional quality organizations to identify major issues and carry out improvement activities in parallel. ***Moreover, Hyundai holds quality inspection meetings on regular basis, and in particular, on the verge of new car models' mass production, reports the quality risk assessment results and taken measures to the highest level of management.***

Quality Risk Assessment – Identification and Improvement Hyundai has established a control tower devoted to the management of vehicle quality risks in the production process. *Whenever a quality risk is detected from information acquired through statistical process control, periodic inspections, and shipment pass rates, the control tower takes the lead in*

63

*conducting joint investigations and taking the necessary countermeasures*. Also, in order to prevent quality risks from occurring in the vehicle production process, we take thorough preventive measures, such as process management by suppliers, assessment of quality prevention activities, validation of quality inspection equipment, and reliability testing of parts.

**Quality Mindset Campaign** Hyundai is carrying out the "Quality Mindset Campaign" with the purpose of spreading a quality culture throughout its entire car development, production *and sales processes*, while its employees internalize the quality first mindset. *The campaign serves as an opportunity for the company to listen directly to voice of customers (VOCs)* on quality issues through various initiatives including "Customers' Quality Diagnosis and Employees' Input", "Meetings between Customers and Employees", and "On-site Meetings between Customers and Production Quality Officers." Based on the VOC, Hyundai is conducting the New Vehicle Quality Assurance Program, among others, as a way to deliver products of perfect quality to its customers. We will continue to promote various quality improvement activities by promoting close communication with customers and their active participation.

**Strengthening Quality Verification Capabilities** Hyundai provides annual training on the roles and major tasks involved in securing its pre-manufacturing quality, manufacturing quality, and *market quality as a way to strengthen the verification capability of its overall quality value chain*. To maximize the effectiveness of verification through enhanced verification capacity, each course includes not only basic theoretical education but also practical and experience-oriented education if necessary. In addition, we offer expert courses on quality verification in collaboration with external educational institutions to verify new technologies following the transition to electrification and to strengthen the verification of quality issues from the customer's point of view.

**Quality Assurance and Management** Hyundai strives to enhance its quality assurance and management for the safety and protection of customers *after product sales* as well as quality management from vehicle development to production, thereby ensuring safety of customers and happiness of their families. In addition, we take quality improvement measures aimed at boosting customer satisfaction by identifying customers' specific complaints, while continuously reinforcing

64

maintainability by evaluating the consistency of maintenance services and improving diagnosis methods, among others.

**<u>Warranty Period for Free Repairs</u>** Hyundai applies the free repair warranty period in consideration of the average life cycle, durability, and sustainability of each type of vehicle, such as passenger cars, SUVs, and commercial vehicles (trucks and buses). Recently, it has introduced a service that allows customers to select the warranty period according to their own driving patterns and habits. In particular, we maximize the sustainability of eco-friendly vehicles by extending the warranty period for the engine and power transmission parts of hybrids, EVs and hydrogen EVs. We are also contributing to minimizing air pollutant emissions with guarantees for catalyst devices, electric control devices, and other exhaust gas parts of older high-emitting models.

**<u>Voluntary Recall</u>** *Hyundai constantly monitors customer complaints* and voluntarily recalls all the relevant vehicles to protect customers as soon as manufacturing defects assessed as highly likely to cause accidents are identified. When a vehicle recall is determined, we inform customers of the defects, corrective actions, and compensation including free service. We are also expanding sales guarantee provisions to proactively manage financial risks caused by recalls and quality assurance.

**<u>ANSWER:</u>** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

177.   HMA claims that its staff "hand check nuts, bolts, cables, wiring and power components before any Hyundai leaves the plant. Then every vehicle is road tested to eliminate squeaks and rattles that can't be detected on the factory floor."[101] Further, HMA states that it has "250 robots, equipped with optical sensors far more sensitive than the human eye, [that] inspect[] every vehicle for quality welds and proper fit. ***This ensures tight seams and seals***, as well as perfect alignment."[102]

---

[101] https://www.auto-brochures.com/makes/hyundai/Entourage/hyundai_US%20Entourage_2008.pdf (last accessed March 18, 2024).

[102] *Id*.

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

178.  On information and belief, Defendants share the results and finds of its pre-sale testing and quality control checks with each other.

**ANSWER:** Kia denies the allegations in this paragraph.

**2.  Defendants' long history of defective components causing electrical short circuits in their vehicles.**

179.  Fluid contaminating PCBs, resulting in short circuits and vehicle fires, is a well-known safety risk in the automotive industry—and one that each Defendant has extensive knowledge of.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Defendants generally and therefore denies the same. Kia denies the remaining allegations in this paragraph.

180.  In 2016, KA recalled 2008-2009 Kia Sportage vehicles due to a defect which allows water to enter a component containing PCBs called a Hydraulic Electronic Control Unit ("HECU"), creating a risk of engine compartment fires and failure of the anti-lock brake ("ABS") system.[103] Between 2016 and September 2023, KA and HMA issued sixteen recalls, covering over 6.3 million vehicles due to this risk.[104] HMA and KA's "decision making and adherence with reporting requirements" with respect to the HECU fluid contamination defect is now under investigation by NHTSA's Office of Defects Investigation.[105]

**ANSWER:** Kia admits that it issued NHTSA Recall Number 16V815 involving certain 2008-2009 Kia Sportage vehicles. Kia further admits that NHTSA opened an

---

[103] NHTSA Campaign Number: 16V-815.

[104] NHTSA Recall Campaigns 16V815, 18V026, 20V061, 20V088, 20V518, 20V519, 20V520, 20V543, 21V160, 21V161, 21V303, 21V331, 21V137, 22V051, 22V056, 23V651, and 23V652.

[105] NHTSA Investigation Number: AQ23002.

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

audit query regarding this recall and other recalls in footnote 102 and described the population as more than 6.3 million vehicles. Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

181.   Similarly, in August 2022, HMA and KA recalled more than 280,000 vehicles because "[d]ebris and moisture accumulation on the tow hitch harness module printed circuit board (PCB) may cause an electrical short, which can result in a fire."[106] Less than a year later, in March 2023, HMA and KA once again recalled an additional 570,000 vehicles because "[w]ater accumulation on the tow hitch harness module printed circuit board (PCB) may cause an electrical short, which can result in a fire."[107]

**ANSWER:** Kia admits that it issued NHTSA Recall Number 22V626 in August 2022 and NHTSA Recall Number 23V-179 in March 2023. The recalls speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same. Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same.

182.   Given the common issue of fluid contaminating PCBs and short circuits affecting millions of Hyundai and Kia vehicles, Defendants did, or should have, performed diligent presale testing and monitoring for ECA defects within the Class Vehicles.

**ANSWER:** Kia denies the allegations in this paragraph.

**3.      Defendants' 2018 Recalls of the ECAs.**

---

[106] NHTSA Campaign Numbers: 22V-626; 22V-633.
[107] NHTSA Campaign Numbers: 23V-181; 23V-179.

183.   Defendants' knowledge of the Defect of short circuits occurring in the ECAs of the Class Vehicles is also supported by Defendants' 2018 safety recalls of the very same ECAs.

**ANSWER:** Kia denies the allegations in this paragraph.

184.   On April 20, 2018, KA announced the recall for a subset of Class Vehicles, approximately 27,000 2017 Kia Niro vehicles, due to a safety defect in the ECA that creates an electrical short, leading to fires. KA warned that "[t]he Hydraulic Clutch Actuator (HCA) inner oil seal may leak, allowing oil to accumulate in the cap area, possibly resulting in an electrical short."[108]

**ANSWER:** Kia admits it issued NHTSA Recall Number 18V257 on April 20, 2018. The recall speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

185.   As is typical for the two sister brands that market vehicles with the same design and components, on April 24, 2018, HMA announced that it too was recalling over 10,000 2017 Hyundai Ioniq hybrid vehicles because "[t]he Hydraulic Clutch Actuator (HCA) inner oil seal may leak, allowing oil to accumulate in the cap area, possibly resulting in an electrical short."[109]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

186.   On May 17, 2018, LuK submitted a Defect Information Report with NHTSA affecting 37,185 vehicles.[110] LuK warned that "[a]n electrical short can

---

[108] NHTSA Campaign Number: 18V257.
[109] NHTSA Campaign Number: 18V260.
[110] NHTSA Campaign Number: 18E0330.

68

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

increase the risk of a fire" and stated that "LuK is working with the affected vehicle manufacturers" to remedy the defect.[111]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

### 4. Defendants' monitoring of customer complaints and warranty claims.

187. On information and belief, KA's and HMA's customer relations divisions regularly receive and respond directly to customer calls concerning, *inter alia*, product defects and safety issues. Through these sources, Defendants were made aware of the Defect and had knowledge of its potential danger.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

188. On information and belief, HMA's and KA's customer relations departments, which interact with authorized service technicians in order to identify potentially widespread vehicle problems and assist in the diagnosis of vehicle issues, have received numerous reports of the Defect in Class Vehicles. Customer relations also collects and analyzes field data including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty claims data.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

---

[111] https://static.nhtsa.gov/odi/rcl/2018/RCAK-18E033-9734.pdf (last accessed March 18, 2024).

69

189.   Defendants' warranty departments similarly review and analyze warranty data submitted by their dealerships and authorized technicians in order to identify defect trends in their vehicles. Defendants dictate that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Defendants with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in case Defendants later determine to audit the dealership or otherwise verify the warranty repair. For their part, service centers are meticulous about providing this detailed information about in-warranty repairs to Defendants because Defendants will not pay the service centers for the repair if the complaint, cause, and correction are not sufficiently described.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies that it reviews all warranty claims in the regular course of business but admits it possesses warranty claims information. Kia further admits that it requires certain information to reimburse warranty repair requests. Kia denies the remaining allegations in this paragraph.

190.   Upon information and belief, each Defendant knew or should have known about the Defect because of the high number of complaints concerning the hybrid engine system, stalling issues, vehicle fires, and replacement ECAs likely ordered from Defendants. All HMA and KA service centers are required to order replacement parts, including ECAs directly from HMA, HMC, KA, or KC. Other independent vehicle repair shops that service Class Vehicles also order replacement parts directly from Defendants. HMA, HMC, KA, and KC routinely monitor part sales reports and are responsible for shipping parts requested by dealerships and technicians. Thus, HMA, HMC, KA, and KC have detailed, accurate, and real-time data regarding the number and frequency of replacement part orders. The increase in orders of auto-parts necessary

to fix damage caused by the Defect in Class Vehicles was known to HMA, HMC, KA, and KC, and should have alerted them to the scope and severity of the Defect.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

191.   On information and belief, the customer relations and warranty divisions of HMA, HMC, KA, and KC interact with one another and discuss potential issues in Hyundai and Kia vehicles which share components and designs.

**ANSWER:** Kia denies the allegations in this paragraph.

192.   On information and belief, the engineering offices, safety offices, and safety investigators of HMA, HMC, KA, and KC interact with one another and discuss potential issues in Hyundai and Kia vehicles which share components and designs.

**ANSWER:** Kia denies the allegations in this paragraph.

193.   On November 27, 2020, NHTSA announced that it had entered into consent orders with Hyundai America and Kia America, which included combined penalties of $210 million.[112] The consent orders and fines "reflect [NHTSA's] assessment that both Hyundai and Kia conducted untimely recalls of over 1.6 million vehicles ... and inaccurately reported certain information to NHTSA regarding the recalls."[113]

**ANSWER:** The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

194.   As part of the pair of 2020 consent orders, KA agreed that its Chief Safety Officer "will have a formal liaison with HMA, [HMC], and [KC] to review emerging issues with common components on a regular basis and share information about field

---

[112] https://www.nhtsa.gov/press-releases/nhtsa-announces-consent-orders-Hyundai-and-kia-over-theta-ii-recall (last accessed March 18, 2024).
[113] *Id.*

71
DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

inputs or reports regarding common platforms and/or components."[114] Likewise, HMA agreed that its "CSO will have a formal liaison with [KA], [KC], and HMC to review emerging issues with common components on a regular basis and share information about field inputs or reports regarding common platforms and/or components."[115]

**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

195. Defendants also regularly monitor the NHTSA databases as part of their ongoing obligation under the TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000), to identify potential defects in their vehicles. Among other employees, HMA and KA customer service departments are responsible for monitoring customer complaints posted to NHTSA's public database, as well as their respective websites or third-party websites.

**ANSWER:** Kia admits it complies with the TREAD Act. Kia denies the remaining allegations in this paragraph.

196. Hyundai has also stated publicly that it "ha[s] a robust system in place for monitoring and investigating reported vehicle fires that includes investigation and reporting to NHTSA as required."[116]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

197. As recently as February 2024, Hyundai reiterated to *Consumer Reports* that it "actively monitors and evaluates potential safety concerns, including non-

---

[114] https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/rq17-003_hyundai_consent_order_executed_11272020.pdf (last accessed March 18, 2024).

[115] https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/rq17-004_hyundai_consent_order_executed_11272020.pdf (last accessed March 18, 2024).

[116] https://www.autoblog.com/2018/10/12/Kia-kia-fires-center-for-auto-safety/?guccounter=1 (last accessed March 18, 2024).

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

collision fires, with all our vehicles."[117] And "Kia said it continuously evaluates its vehicles, including 'the investigation of allegations of vehicle fire, determination of cause and origin where possible, evaluation of the potential for more fires from the same identified cause, and initiation of a recall if the data shows a previously undiscovered defect trend poses an unreasonable risk of harm to members of the public.'"

**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

198.   As part of a 2014 Consent Order entered into by HMA and HATCI with NHTSA, HMA "commit[ed] and agree[ed] to ... [make] corporate organizational and process improvements" including the creation of a U.S. Technical Committee to review and make decisions regarding potential safety recalls. The head of the U.S. Technical Committee was also granted "direct access to the board of directors and the Chief Executive Officer ('CEO') of [HMA]."[118]

**ANSWER:** The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

199.   Under the 2020 Kia consent order, Kia was required to create a new U.S. safety office headed by a Chief Safety Officer, as well as "develop and implement sophisticated data analytics programs to better detect safety-related concerns." As part of the decree, KA "committed to substantial organizational improvements to enhance their ability to identify and investigate potential safety issues in the United States[.]" Among other things, the Hyundai consent order provides that "Kia will *significantly* increase staffing for vehicle safety issues" who "will perform data analysis, engineering

---

[117] https://www.consumerreports.org/cars/car-recalls-defects/why-so-many-Kia-kia-vehicles-get-recalled-for-fire-risk-a1169940635/ (last accessed March 18, 2024).
[118] https://www.nhtsa.gov/sites/nhtsa.gov/files/2021-11/TQ14-002-Kia-Consent-Order-8-7-2014-tag.pdf (last accessed March 14, 2024).

73

investigates, preparation for meetings with NHTSA, recall planning and execution, and compliance with NHTSA statutes and regulations."[119]

**ANSWER:** The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

**F. Despite their knowledge of the Defect, Defendants have yet to recall all Class Vehicles due to the Defect or offer a complete remedy.**

200. On July 31, 2023, KA announced that it was issuing a safety recall campaign for all Kia Class Vehicles due to the Defect.[120] Specifically, KA announced that it was recalling all 2017-2022 Niro HEV vehicles and 2018-2022 Niro PHEV vehicles due to a defect that causes engine compartment fires.[121]

**ANSWER:** Kia admits that it issued NHTSA Recall No. 23V-534 on July 31, 2023 regarding Class Vehicles. The Part 573 Safety Recall Report speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same. Kia denies the remaining allegations in this paragraph.

201. In its Recall Report, KA described the "Defect," "Safety Risk," and "Cause":[122]

Description of the Defect: The printed circuit board (PCB) in the Hydraulic Clutch Actuator (HCA) may become contaminated with fluid. A fluid contaminated PCB may lead to an electrical short circuit, thereby increasing the risk of an engine compartment fire while driving.

Description of the Safety Risk: A fire increases the risk of injury.

---

[119] https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/rq17-003_kia_consent_order_executed_11272020.pdf (last accessed March 14, 2024).

[120] https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V534-5538.PDF (last accessed March 14, 2024).

[121] https://static.nhtsa.gov/odi/rcl/2023/RCAK-23V534-6507.pdf (last accessed March 14, 2024).

[122] https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V534-5538.PDF (last accessed March 18, 2024).

Description of the Cause: An electrical short circuit due to fluid contamination on the Hydraulic Clutch Actuator printed circuit board.

**ANSWER:**  The Part 573 Safety Recall Report speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

202.   KA disclosed that the defective components were supplied by Schaeffler and contained part numbers: "41050-2B001," "41050-2B002," and "41050-2B003."[123]

**ANSWER:**  The Part 573 Safety Recall Report speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

203.   According to a filing submitted by KA to NHTSA in connection with the Recall, KC was critical to the analysis of the Defect, which led the decision to issue the Recall and what the "remedy" would be. KA disclosed that "Kia HQ" (i.e., KC) worked with the "supplier" (i.e., Schaeffler) to conduct investigations into reports of Class Vehicles suffering from the Defect and "f[ou]nd corrosion in the PCB and localized melting of incident parts[.]"[124] Ultimately, KC's analysis "confirm[ed] 1) evidence of fluid contamination on PCB potentially from external sources but no evidence of internal leaks or brake fluid on the printed circuit board, 2) contaminated PCB can cause an electrical short circuit, and 3) PCB short circuit can lead to a fire as confirmed by duplication testing."[125] The day after KC "complete[d] its analysis," KA issued the 2023 Recall.[126]

**ANSWER:** The Basis of Safety Defect Determination speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

204.   Although KA acknowledges that the ECAs installed in these vehicles contain a potentially lethal defect, the company's "remedy" does not include mandatory

---

[123] *Id.*
[124] https://static.nhtsa.gov/odi/rcl/2023/RMISC-23V534-5049.pdf (last accessed March 18, 2024).
[125] *Id.*
[126] *Id.*

replacement of the ECAs. Rather, "Kia will instruct dealers to inspect the HCA and replace, if necessary. Kia will also install a new HCA fuse with one of a different capacity to mitigate the potential risk of fire caused by an electrical short circuit."[127] This remedy is deficient for several reasons.

**ANSWER:** The Part 573 Safety Recall Report speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same. Kia denies the remaining allegations in this paragraph.

205. In its Technical Service Bulletin to its authorized dealerships, KA reveals that its "inspection" is in name only, as the dealerships will merely look to see if a DTC was triggered.[128] The inspection does not instruct dealerships to actually *inspect* the ECA to check whether the component's PCB is already contaminated. And if KA decides to replace the ECA after the "inspection" reveals a dangerous DTC was triggered, the replacement ECA is the same model and suffers from the same defect which makes it susceptible to fluid entering into its PCB.

**ANSWER:** Kia denies the allegations in this paragraph.

206. Next, KA's purported "remedy" decidedly does not "remedy" the "Cause of the Defect: An electrical short circuit due to fluid contamination on the Hydraulic Clutch Actuator printed circuit board." Instead, KA attempts to alleviate one of the Defect's symptoms (vehicle fires) by offering to replace the fuse between the ECA and the vehicle's 12V battery so that in the event of a short circuit—the risk for which is wholly left intact—the ECA will be cut off from power. But even assuming the new fuse can prevent a fire, it just creates another dangerous problem for drivers, passengers, and bystanders. Once the ECA is cut off from power, a host of safety issues are created as the vehicle is unable to safely rely on the ICE. Among other things, this could result

[127] https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V534-5538.PDF (last accessed March 18, 2024).

[128] https://static.nhtsa.gov/odi/rcl/2023/RCRIT-23V534-0846.pdf (last accessed March 18, 2024).

76

in the inability to start the vehicle, accelerate, or cause the vehicle to stall while in the middle of a highway.

**ANSWER:** Kia denies the allegations in this paragraph.

207.   Indeed, KA warns that even after its purported "fix" is performed on Class Vehicles "[c]ustomers may experience illumination of the HEV warning light. ⚠HEV"[129]

**ANSWER:** Kia denies the allegations in this paragraph.

208.   KA warns in its 2020 Kia Niro HEV/PHEV Owner's Manual that "[i]f the 'HEV Warning' light turns on in the driver instrument cluster.... ***stop the engine immediately***."[130] Elsewhere, Kia warns drivers that "If this occurs, pull over to a safe location and contact Kia... to request to have your vehicle towed to the nearest authorized Kia dealership as soon as possible."[131]

**ANSWER:** The documents speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

209.   Likewise, HMA warns in its 2020 Ioniq HEV Owner's Manual: "When the [HEV] Service warning light ( ⚠HEV ) illuminates on the instrument cluster, ***immediately stop the engine***, and contact an authorized HYUNDAI dealer."[132] HMA explains that "[t]his warning light illuminates:... When there is a problem with the hybrid vehicle control system or hardware."[133]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

---

[129] https://static.nhtsa.gov/odi/rcl/2023/RCMN-23V534-7526.pdf (last accessed March 18, 2024).

[130] 2020 Owner's Manual, at 6:11, *available at* https://owners.kia.com/content/owners/en/manuals.html (last accessed March 19, 2024).

[131] https://static.nhtsa.gov/odi/rcl/2023/RCONL-23V534-2175.pdf (last accessed March 18, 2024).

[132] https://cdn.dealereprocess.org/cdn/servicemanuals/Kia/2020-ioniqhybrid.pdf (last accessed March 18, 2024).

[133] *Id*.

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

210. At least one person recognized the overall failure of KA's purported "remedy." In an online forum dedicated to Kia Niro vehicles, "What would happen to the transmission if the clutch actuator failed in the middle of a shift due to the fuse blowing prematurely because they derated it so much ... I feel this is really an unacceptable 'fix'[.] If this 'recall' ever expands to cover the 2024, I would really have to think hard about whether to accept this change, leave the fuse at its original rating or thinking like an engineer instead of a lawyer, to only slightly derate it to maybe 25 or 30A to balance out the risk of a fire with risk of transmission damage due to the fuse blowing during extremes of normal operation..."[134] Another person replied, stating that "[a]s an experiment, [he or she] removed the Clutch Actuator fuse and, as expected, the car wouldn't start[.]"[135]

**ANSWER:** The websites speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same. Kia denies the remaining allegations in this paragraph.

211. Accordingly, the 2023 Recall offers a "remedy" in name only. It is indisputable that the risk of "the [PCB] in the [ECA]... becom[ing] contaminated with fluid,"[136] is left wholly intact by the "remedy" offered in the Recall. This glaring failure of the Recall was recognized by a Class Member who complained that a blown fuse could "affect the HCA and functionality of the Niro" and that "the root cause of the fuse blowing or fluid ignition is still present."[137]

**ANSWER:** Kia denies the allegations in this paragraph.

---

[134] https://www.kianiroforum.com/threads/safety-recall-hydraulic-clutch-actuator.12030/, post # 22 (last accessed March 18, 2024).

[135] *Id.* post #25.

[136] https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V534-5538.PDF (last accessed March 18, 2024).

[137] https://www.kianiroforum.com/threads/recall-for-danger-of-fire-in-engine.11934/#post-118354, post #32 (last accessed March 18, 2024).

212.    To make the matter worse, KA states in the TSB that if one of the DTCs relating to the Defect (*see supra* ¶ 125) are found, the vehicle is unsafe to be driven and cannot leave the dealership without a replacement ECA. But KA has yet to offer replacement ECAs. Moreover, Plaintiff and other Class Members had no idea that bringing in their Class Vehicles pursuant to the Recall could essentially result in the confiscation of their cars. Only when Plaintiff brought her car into an authorized Kia dealership on January 22, 2024, was she informed that "if [sic] fails inspection they cannot drive vehicle." And Plaintiff is not alone; other Class Members reported that they too only learned of the potential confiscation of their vehicles when they brought their cars to Kia dealerships.[138]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding the experiences of Plaintiff and putative class members and therefore denies the same. Kia denies the remaining allegations in this paragraph.

213.    Finally, Defendants have yet to recall or make any attempt to fix the Defect in the Hyundai Class Vehicle even though they contain the same ECAs as found in the recalled Kia Class Vehicles.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

**G. HMA and KA falsely claim to offer the best warranty program in the nation, yet fail to offer a remedy for the Defect.**

[138] https://www.kianiroforum.com/threads/safety-recall-hydraulic-clutch-actuator.12030/ post #38 ("Be aware, the dealer I went to, will not release the vehicle if they find a HCA issue[.]").

79

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

214.   HMA and KA advertise their warranty program as "industry-lead[ing]"[139] and "America's Best Warranty."[140]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. The website speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

215.   KA's warranty begins with the representation that "[t]he latest engineering techniques have been incorporated into the design and production of your Kia Vehicle."[141] HMA states that in addition to "giving [owners] added peace of mind, [its] warranty support[s] [HMA's] commitment to provide vehicles of high quality, dependability and reliability."[142]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. The New Vehicle Limited Warranty speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

216.   KA offers a 10-year/100,000 mile Hybrid System Warranty, which covers components "originally manufactured or installed by Kia Motor Company, Kia Motors Manufacturing Georgia (KMMG) or Kia Motor America (KMA) that are found to be defective in material or factory workmanship under normal use and maintenance[.]"[143]

---

[139] https://owners.kia.com/us/en/service-page/warranty.html (last accessed March 18, 2024).

[140] https://www.Kiausa.com/us/en/assurance/america-best-warranty (last accessed March 18, 2024).

[141] https://www.kia.com/us/content/dam/kia/us/en/images/warranty/manual/general-warranty-and-consumer-info/2020_warranty.pdf (last accessed March 18, 2024).

[142] https://www.Kiausa.com/us/en/assurance/america-best-warranty (last accessed March 18, 2024).

[143] 2020 Warranty and Consumer Information Manual, at 14, *available at* https://owners.kia.com/content/owners/en/manuals.html (last accessed March 18, 2024).

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

KA specifies that the warranty provides for the "[r]epair or replacement of HYBRID SYSTEM components," which include "Hybrid Battery Pack Assy, Hybrid Starter & Generator, Hybrid Power Control Unit, Traction Motor, *clutch*, On board charger (OBC) and all internal parts." KA further warns that "it will arrange for independent Kia brand service facilities at locations of its choice to provide for the repair of your vehicle if it fails to function properly during normal use."

**ANSWER:** Kia admits that 2017-2022 Kia Niro Hybrid and 2018-2022 Kia Niro Plug-In Hybrid vehicles are sold with a Hybrid System Warranty and the warranty period is 10 years from the date of original retail delivery or date of first use, or 100,000 miles, whichever occurs first. The warranty cited in this paragraph speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

217. HMA too offers a 10-year/100,000 mile Hybrid and Plug-in Hybrid System Warranty, which covers: "[r]epair or replacement of HYBRID SYSTEM components ... originally manufactured or installed by Hyundai Motor Company, Hyundai Motor Group, Hyundai Motor Manufacturing Alabama (HMMA), Hyundai Motors Manufacturing Georgia (KMMG), Hyundai Manufacturing Mexico (KMM) or Hyundai Motor America (HMA) that are found to be defective in material or factory workmanship under normal use and maintenance[.]"[144] HMA states that the components covered by this warranty are those "that are directly attached to or integral to operation of the Hybrid Battery; Hybrid Battery Wire Harness; Battery Management System and Wire Harness; Blower Assembly; Electronic Air Compressor; Active Air Flap Active Hydraulic Booster; EV Fuse; Service Disconnect Plug; Power Relay Assembly; Hybrid Starter & Generator; Auto Transmission & Traction Motor including housing case;

---

[144] https://owners.Kiausa.com/content/dam/Kia/us/myKia/manuals/factory-warranty/2019/Kia%20USA%20ALL%20119MY.pdf (last accessed March 18, 2024).

clutch and all internal parts; Hybrid Power Control Unit; Electronic Oil Pump Assembly; Electronic Water Pump with In and Out Hose Module."[145]

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

218.  But in reality, HMA's and KA's warranty programs bring little comfort to Class Vehicle owners. Despite HMA's and KA's promises, they have consistently evaded their warranty obligations by failing to inform consumers that their vehicles are defective and by refusing to repair or replace the ECAs in their vehicles affected by the Defect.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

219.  As noted above, the 2023 Recall does not satisfy KA's warranty obligations as it does nothing to "repair or replac[e]" the defective ECAs. Plaintiff Doucette brought her Class Vehicle into an authorized Kia dealership on January 22, 2024, pursuant to the Recall; she was denied an adequate "repair or replacement" of the defective ECA.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Plaintiff's experience and therefore denies the same. Kia denies the remaining allegations in this paragraph.

**H. Fraudulent Omission/Concealment Allegations**

220.  Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals employed by Defendants responsible for making false and misleading statements regarding the Class Vehicles. Defendants necessarily are in possession of all of this information. Plaintiffs'

---

[145] *Id.*

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

claims arise out of Defendants' fraudulent omission/concealment of the Defect, despite their representations about the quality, reliability, and safety of the Class Vehicles.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

221. Plaintiffs allege that at all relevant times, including specifically at the time they and Class Members purchased their Class Vehicles, Defendants knew, or were reckless in not knowing, of the Defect; Defendants had a duty to disclose the Defect based upon their exclusive knowledge; and Defendants never disclosed the Defect to Plaintiffs or the public at any time or place in any manner prior to the 2023 Recall.

**ANSWER:** Kia admits that Plaintiffs make these allegations but deny they are true.

222. Plaintiffs make the following specific concealment/omission-based allegations with as much specificity as possible absent access to the information necessarily available only to Defendants:

**ANSWER:** Kia admits that Plaintiffs make these allegations but deny they are true.

223. *Who*: each Defendant (HMA, HMC, KA, and KC) actively concealed and omitted the Defect from Plaintiffs and Class Members while simultaneously touting the quality, safety, and dependability of the Class Vehicles, as alleged herein. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals responsible for such decisions.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

224. *What*: that the Class Vehicles contain the Defect, as alleged herein. Defendants concealed and omitted the Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

225. *When*: Defendants concealed and omitted material information regarding the Defect at all times while making representations about the quality, safety, and dependability of the Class Vehicles on an ongoing basis, and continuing to this day. Defendants still have not disclosed the truth about the full scope of the Defect in the Class Vehicles. And when consumers brought their vehicles to HMA and KA dealerships or called Defendants' respective customer service and warranty departments complaining of the Defect, Defendants denied an adequate repair for the Defect and warranty coverage.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

226. *Where*: Defendants concealed and omitted material information regarding the true nature of the Defect in every communication they had with Plaintiffs and Class Members and made representations about the quality, reliability, and safety of the Class Vehicles. Plaintiffs are aware of no document, communication, or other place or thing, in which Defendant disclosed the truth about the full scope of the Defect in the Class Vehicles prior to the 2023 Recall, which does not provide notice of the Defect to Kia Class Vehicle owners. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Defendants' websites. There are channels through which Defendants could have disclosed the Defect, including, but not limited to: (1) point of sale communications; (2) the owner's

manual; and/or (3) direct communication to Class Members through means such as state vehicle registry lists and e-mail notifications.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

227. *How*: Defendants concealed and omitted the Defect from Plaintiffs and Class Members and made representations about the quality, safety, and dependability of the Class Vehicles. Each Defendant actively concealed and omitted the truth about the existence, scope, and nature of the Defect from Plaintiffs and Class Members at all times, even though they each knew about the Defect and knew that information about the Defect would be important to a reasonable consumer, and Defendants promised in their marketing materials that Class Vehicles have qualities that they do not have.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

228. *Why*: Defendants actively concealed and omitted material information about the Defect in the Class Vehicles for the purpose of inducing Plaintiffs and Class Members to purchase and/or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles, and made representations about the quality, safety, and durability of the Class Vehicles. Had Defendants disclosed the truth, for example, in their advertisements or other materials or communications, Plaintiffs and Class Members (all reasonable consumers) would have been aware of it, and would not have bought or leased the Class Vehicles or would not have paid as much for them.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

## V.    TOLLING OF STATUTES OF LIMITATIONS

229.    Any applicable statute(s) of limitations have been tolled by HMA's, HMC's, KA's, and KC's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and the members of the Class could not have reasonably discovered the true nature of the Defect because Defendants concealed it. Plaintiffs' claims were thus tolled pursuant to the discovery rule, for fraudulent concealment, and for estoppel.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

### A. Discovery Rule

230.    The causes of action alleged herein did not accrue until Plaintiffs and Class Members discovered that their Class Vehicles contained the Defect.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

231.    As alleged above, Class Members had no way of knowing about the Defect in their Class Vehicles. HMA, HMC, KA, and KC concealed their knowledge of the Defect while KA and HMA continued to market and sell the Class Vehicles as safe, secure, high-quality, and reliable vehicles. To this day, Defendants failed to disclose the full extent of the Defect and the risks faced by Class Vehicle drivers.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

232.    Within any applicable statutes of limitation, Class Members could not have discovered through the exercise of reasonable diligence that HMA, HMC, KA, and KC

86
DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

were concealing the conduct complained of herein and misrepresenting the true qualities of the Class Vehicles.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

233. Class Members did not know facts that would have caused a reasonable person to suspect that there was a Defect affecting their vehicle and an ordinary person would be unable to appreciate that the vehicle was defective. Indeed, even after Class Members contacted KA and HMA and/or their authorized dealers for vehicle repairs concerning the Defect, they were routinely told by Defendants and/or through their dealers that the Class Vehicles were not defective and/or they were offered a "remedy" that leaves the defective ECAs in the vehicles and does not alleviate the safety risks, including hybrid engine issues and vehicle stalls, caused by the Defect. As described above, the true cause of the engine compartment fires and short circuiting in the Class Vehicles is a defect caused by the defective design and/or manufacturing of ECAs and new fuses do not address the cause of vehicle fires or remedy the full risk posed by the Defect.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

234. For ordinary consumers, the existence and partial extent of the Defect only came to light after KA issued the 2023 Recall.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding ordinary consumers and therefore denies the same. Kia denies the remaining allegations in this paragraph.

235. For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to the claims in this litigation.

87

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

**B. Fraudulent Concealment**

236.   As the manufacturers, distributors, sellers, and/or warrantors of the Class Vehicles, HMA, HMC, KA, and KC were under a continuous duty to disclose to Class Members the existence of the Defect found in the Class Vehicles.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

237.   Defendants were and remain under a continuing duty to disclose to Plaintiffs and the Members of the Class the true character, quality, and nature of the Class Vehicles, that the Defect found in the Class Vehicles will result in catastrophic engine compartment fires, inability to accelerate, and vehicle stalls, among other safety risks, that they will require costly repairs, pose safety concerns, cause damage to their personal property, and diminish the resale value of the Class Vehicles.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

238.   HMA, HMC, KA, and KC recklessly disregarded the true nature, quality, and character of the Class Vehicles, by failing to disclose the existence of the Defect.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

239.   Due to each Defendant's concealment throughout the time period relevant to this action, all applicable statutes of limitation have been tolled.

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

240. Instead of publicly disclosing the Defect in the Class Vehicles, Defendants kept owners and lessees in the dark about the Defect present in their vehicles. To this day, Defendants have knowingly or recklessly failed to disclose the full extent of the Defect and have failed to offer adequate remedies for the Defect.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

241. Class Members were not at fault for failing to discover the existence of the Defect present in their Class Vehicles.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

242. Until the 2023 Recall was issued, Plaintiffs had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice of such a connection. In particular, Class Members did not possess the aggregate data concerning ECA failures, engine compartment fires, or vehicle stalls in Class Vehicles, or the technical data related to the design and manufacturing of the Class Vehicles.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles or the knowledge of Plaintiffs and putative class members and therefore denies the same. Kia denies the remaining allegations in this paragraph.

243. This ignorance of the existence of the Defect present in the Class Vehicles is common across each Plaintiff and Class Member.

89
DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

### C. Estoppel

244. HMA, HMC, KA, and KC were, and are, under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the Class Vehicles. HMA, HMC, KA, and KC failed to disclose the existence of the Defect and actively concealed the true character, quality, and nature of the Class Vehicles while knowingly making representations about the quality and reliability of the Vehicles. Plaintiffs and Class Members reasonably relied upon each Defendant's knowing and affirmative representations and/or active concealment of these facts. Based on the foregoing, each Defendant is estopped from relying on any statutes of limitation in defense of this action.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding Hyundai vehicles and therefore denies the same. Kia denies the remaining allegations in this paragraph.

## VI.    CALIFORNIA LAW APPLIES TO NATIONWIDE CLAIMS[146]

245. California law applies to Plaintiffs' nationwide claims because Plaintiffs' injuries emanate from Defendants' actions in California. Each pertinent decision relates to the decision to conceal the Defect from Class Members and fails to remedy the Defect, including the marketing, commercial distribution, and warranty coverage for the Class Vehicles in the United States, was made from HMA's and KA's California headquarters by their respective executives and employees located in California.

---

[146] Plaintiffs acknowledge that this Court found that non-California Plaintiffs could not pursue claims under California law in its March 31, 2025 Order (ECF No. 47), and include such allegations here solely to preserve their right to assert issues related to the dismissal in any future appeal.

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

246.   Defendant HMA is headquartered in Fountain Valley, California and is the sole entity in the United States responsible for distributing, selling, leasing, and warranting Hyundai Class Vehicles.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

247.   On HMA's website, the company promotes a quote by Brandon Ramirez, Director, Corporate Social Responsibility and External Relations (who is based in Fountain Valley),[147] which states that "[e]very aspect of a car model, from the initial concept all the way until it launches and even planning the next generation, happens right here in the U.S."[148]

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

248.   HMA's C-Suite, and employees responsible for HMA's distribution of Class Vehicles, decision to conceal the Defect, HMA's public statements to the U.S. market concerning Class Vehicles, as well as whether to repair the Defect and issue a recall, are also based in California.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

---

[147] https://www.linkedin.com/in/brandon-ramirez-b891265 (last accessed March 18, 2024).
[148] https://www.hyundaiusa.com/us/en/why-hyundai/made-in-america?adobe_mc=MCMID%3D306036122547715901117361901999937139533%7CMCORGID%3DC3BCE0154FA24300A4C98A1%2540AdobeOrg%7CTS%3D1626118865 (last accessed March 18, 2024).

249.   José Muñoz serves as the President and Global Chief Operating Officer of HMC and the President and CEO of HMA.[149] "Based in Hyundai's U.S. headquarters in Fountain Valley, California," Mr. Muñoz oversees the entire American market.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

250.   Brian Latouf served as the Global Chief Safety Officer of HMA from December 2019 through July 2022, when he was appointed to the same role for HMC.[150] Based in California, Mr. Latouf is responsible for all safety regulation matters, including the strategic legal direction and oversight of all safety investigations and recalls in the U.S., Canada and Mexico. His current title is President and Global Chief Safety and Quality Officer, Hyundai Motor Group. He reports jointly to HMC's CEO, Jay Chang and KC's CEO, Ho Sung Song.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

251.   Wayne Gates serves as Director of Product Analysis Group at HMA.[151] Based in Fountain Valley, California, Mr. Gates oversees, among other things, safety, compliance, and regulatory issues involving Hyundai vehicles, and liaisons with NHTSA regarding Kia recalls.[152]

---

[149] https://www.hyundainews.com/en-us/bios/jose-munoz (last accessed March 18, 2024).

[150] https://www.hyundainews.com/en-us/bios/brian-latouf- (last accessed March 18, 2024); https://www.linkedin.com/in/brian-latouf-b6a8b7b4/ (last accessed March 18, 2024); https://www.prnewswire.com/news-releases/hyundai-motor-appoints-brian-latouf-to-lead-new-global-safety-office-301589377.html (last accessed March 18, 2024).

[151] https://www.linkedin.com/in/wayne-gates-b8a85b7/ (last accessed March 19, 2024).

[152] *Id.*; https://static.nhtsa.gov/odi/rcl/2018/RCAK-18V260-2054.pdf (last accessed March 19, 2024).

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

252.    Omar Rivera serves as HMA's Executive Director of Quality and Service Engineering.[153] Based in Fountain Valley, California, Mr. Rivera and his team are responsible for model line engineering and engineering analysis, among other responsibilities.[154]

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

253.    Paul Imhoff serves as Director of Marketing Performance at HMA.[155] Based in Fountain Valley, California, Mr. Imhoff is responsible "for the business's day-to-day tactical and strategic operations and also support of sales and marketing analytics in order to drive performance improvements and reports directly to the Chief Marketing Officer."[156] Prior to his current role, Mr. Imhoff served as HMA's Director of Customer Experience, where he "[oversaw] all aspects of the customer experience, from retail processes and after sales improvements to call centers and customer feedback surveys."

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

254.    Danial Kim serves as the Senior Group Manager of North America Safety Office at HMA at the company's offices in California, and previously served as a Senior Manager of Engineering & Design Analysis.[157] Mr. Kim serves as Hyundai's "[l]iaison

---

[153] https://www.hyundainews.com/en-us/bios/omar-rivera (last accessed March 19, 2024).

[154] *Id*. https://www.linkedin.com/in/omar-rivera-a917363/ (last accessed March 19, 2024).

[155] https://www.hyundainews.com/en-us/bios/paul-imhoff (last accessed March 19, 2024).

[156] *Id*. https://www.linkedin.com/in/pimhoff/ (last accessed March 19, 2024).

[157] https://www.linkedin.com/in/daniel-kim-60013228/ (last accessed March 19, 2024).

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

responsible for corporate compliance with NHTSA enforcement of potential safety-related product defects." Mr. Kim also "facilitate[es] product safety recall/campaign decisions in accordance with federal regulation and guidelines, manage[s] [ ] TREAD compliance program including EWR reporting, collaboration with ODI in joint product safety investigations, recall filing and completion reporting, coordinating with overseas R&D, manufacturing, and service in identifying and closing potential safety defects."

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

255.   Cole Stutz serves as the Executive Director of Vehicle Safety at HMA.[158] Based in Fountain Valley, California, Mr. Stutz liaisons with NHTSA regarding safety recalls, among other things.[159]

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

256.   Scott Stewart serves as the Senior Group Manager of Vehicle Safety Investigations at HMA and is based at the company's Fountain Valley, California offices.[160]

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

257.   Barry Ratzlaff serves as the Chief Customer Officer of HMA.[161] In this role, he is responsible for Hyundai's customer experience strategy, retail process, sales

---

[158] https://www.linkedin.com/in/cole-stutz-2b7796103/ (last accessed March 19, 2024).

[159] *Id.*; https://static.nhtsa.gov/odi/rcl/2021/RCAK-21V303-6447.pdf (last accessed March 19, 2024).

[160] https://www.linkedin.com/in/scott-stewart-10048094/ (last accessed March 19, 2024).

[161] https://www.hyundainews.com/en-us/bios/barry-ratzlaff (last accessed March 19, 2024); https://www.linkedin.com/in/barry-ratzlaff-54b40811/ (last accessed March 19, 2024).

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

and service training, product quality and service engineering. Mr. Ratzlaff is a 30-year automotive veteran with roles in manufacturing, quality and product development. Mr. Ratzlaff is based in Fountain Valley, California.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

258. Angela Zepeda serves as the Chief Marketing Officer for HMA.[162] Based in Fountain Valley, California, Ms. Zepeda "is responsible for all of Kia's marketing and advertising activities in the U.S., including the strategic direction, brand development, national and regional advertising, experiential marketing, digital and social media, brand partnerships, and lead generation, among other responsibilities."[163]

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

259. Randy Parker serves as Chief Executive Officer for HMA.[164] Prior to his promotion in July 2022, Mr. Parker served as Senior Vice President of National Sales at HMA where he was "responsible for all aspects of sales and distribution of Hyundai vehicles in the U.S., including sales strategies, fleet and certified pre-owned operations, dealer relations, market representation, and other related activities with the mission to grow Kia sales and market share."[165] As CEO, Mr. Parker, "is responsible for Hyundai's commercial automotive operations in the United States." Mr. Parker is based in Fountain Valley, California.

---

[162] https://www.hyundainews.com/en-us/bios/angela-zepeda (last accessed March 19, 2024).

[163] *Id*.; https://www.linkedin.com/in/angela-zepeda-8bb8293/ (last accessed March 19, 2024).

[164] https://www.prnewswire.com/news-releases/randy-parker-named-chief-executive-officer-of-hyundai-motor-america-301595523.html (last accessed March 19, 2024).

[165] *Id*.; https://www.linkedin.com/in/randy-parker-24806232/ (last accessed March 19, 2024); https://www.hyundainews.com/en-us/releases/2780 (last accessed March 19, 2024).

95

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

260.   Fred DePerez serves as the Senior Vice President of Global Product Line Management for HMC.[166] Based in Fountain Valley, California, Mr. DePerez oversees Product Line Management, Sales Planning, and Retail Operations.[167]

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

261.   David VandeLinde is the Vice President of After-Sales for HMA and based in Fountain Valley, California.[168] In this role, Mr. VandeLinde is responsible for leading dealer service programs and operations, parts and accessory sales, and owner marketing. Prior to his current role, Mr. VandeLinde served as the director of Dealer Service Process where he oversaw Hyundai's retail service process, parts planning, parts and service field ops, and parts and service training. Mr. VandeLinde was also central to HMA "establishing and operationalizing a platform for gathering and publishing dealer best practices, developing and publishing the first ever Hyundai Service Process Manual (the Car Care Process Guide), and revolutionizing Hyundai's approach to field training to be more experiential."

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

---

[166] https://www.hyundainews.com/en-us/bios/fred-deperez (last accessed March 19, 2024).

[167] *Id*.; https://www.linkedin.com/in/freddeperez/ (last accessed March 19, 2024).

[168] https://web.archive.org/web/20221005193136/https://www.hyundainews.com/en-us/bios/david-vandelinde (last accessed March 19, 2024); https://www.linkedin.com/in/dave-vandelinde-6b2b2078/ (last accessed March 19, 2024).

262. Kate Fabian serves as the Director of Marketing Communications for HMA.[169] Based in Fountain Valley, California, Ms. Fabian "is responsible for brand strategy and planning, multicultural marketing, media strategy, national and regional dealer advertising, experiential marketing, branded content and social media."[170]

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required

263. Ricky Lao serves as HMA's Director of Product Planning.[171] Based in Fountain Valley, California, Mr. Lao and his team are "responsible for leading the product planning process from concept phase through product launch, and subsequent lifecycle management, for all current and future cars and SUVs representing the Hyundai North American market."

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

264. Additionally, HMA's "Customer Care Center," which handles customer complaints and warranty inquiries for Hyundai Class Vehicle owners and lessees, is located in Fountain Valley.[172]

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

---

[169] https://www.hyundainews.com/en-us/bios/kate-fabian-- (last accessed March 19, 2024).

[170] *Id*.; https://www.linkedin.com/in/kate-fabian-b1150412/ (last accessed March 19, 2024).

[171] https://www.hyundainews.com/en-us/bios/ricky-lao (last accessed March 19, 2024); https://www.linkedin.com/in/ricky-lao-189303/ (last accessed March 19, 2024).

[172] https://www.hyundaiusa.com/content/dam/Kia/us/com/pdf/assurance/2021_Owners_Handbook_Warranty.pdf (last accessed March 19, 2024).

97

265.  On information and belief, HMA's website, including the "Consumer Assistance Center" webpage,[173] is managed by Hyundai's marketing and customer service departments located in Fountain Valley.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

266.  In addition to HMA's engineering and safety investigation teams responsible for post-sale investigations located at its Fountain Valley headquarters, HMA conducts pre-sale testing in California, including at its "California Proving Ground" and the "Hyundai Design and Technical Center" located in Irvine.[174] The Hyundai Design and Technical Center is HMA's "90,000-square-foot, $30 million state-of-the-art facility" and "is home to Hyundai automobile designers, engineers, model-makers and technicians[.]"

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

267.  Defendant KA is headquartered in Irvine, California and is the sole entity in the United States responsible for distributing, selling, leasing, and warranting Kia vehicles, including the Kia Class Vehicles.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

268.  KA's C-Suite, and employees responsible for KA's distribution of Class Vehicles', decision to conceal the Defect, Kia's public statements to the U.S. market concerning Class Vehicles, as well as whether to repair the Defect and issue a recall, are also based in California.

---

[173] https://owners.hyundaiusa.com/us/en/contact-us.html (last accessed March 19, 2024).

[174] *See* https://www.hyundainews.com/en-us/releases/1250; https://www.hyundainews.com/en-us/releases/1251 (last accessed March 19, 2024).

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

269.   SeungKyu (Sean) Yoon is the President and CEO of KA and is responsible for its strategy and operations in the U.S., including its manufacturing.[175] Mr. Yoon is based at KA's headquarters in Irvine, California.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

270.   Russell Wager serves as KA's Vice President of Marketing and oversees all of the company's marketing communications including the marketing operations, media, digital, sponsorships and public relations areas.[176] Mr. Wager is based at KA's headquarters in Irvine, California.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

271.   J.S. (Jurassic) Park serves as KA's Chief Safety Officer and Vice President of Regulatory Compliance.[177] Based at KA's headquarters in Irvine, California, Mr. Park participates in all safety-recall decision-making for the U.S. market and acts as the company's liaison with NHTSA regarding Kia recalls, among other things.

---

[175] https://www.kiamedia.com/us/en/media/pressreleases/13858/seungkyu-sean-yoon-1 (last accessed March 19, 2024); https://www.linkedin.com/in/seungkyu-sean-yoon-3251b1a9/ (last accessed March 19, 2024); https://www.automotiveworld.com/news-releases/kia-america-debuts-in-us-new-name-replaces-kia-motors-america-as-part-of-kia-corporation-global-brand-strategy/ (last accessed March 19, 2024).

[176] https://www.kiamedia.com/us/en/media/pressreleases/17221/russell-wager (last accessed March 19, 2024); https://www.linkedin.com/in/russell-wager/ (last accessed March 19, 2024).

[177] https://static.nhtsa.gov/odi/rcl/2023/RCAK-23V534-6507.pdflast accessed March 19, 2024); https://static.nhtsa.gov/odi/rcl/2020/RCAK-20V518-6959.pdf (last accessed March 19, 2024).

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

272. KA's Regulatory Compliance managers and employees are also located at its headquarters in Irvine, California.[178] The Regulatory Compliance office works with KC and its affiliates (including HATCI) to, *inter alia*, monitor safety regulatory issues and advise on statements made to consumers, including on Monroney labels.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

273. Additionally, KA's "Customer Assistance Center" and Consumer Affairs Department, which handle customer complaints and warranty inquiries for Kia Class Vehicle owners and lessees, is located in Irvine, California.[179]

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

274. On information and belief, KA's website, including the "Consumer Care Center" webpage,[180] is managed by KA's marketing and customer service departments located in Irvine, California.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

275. In addition to KA's engineering and safety investigation teams responsible for post-sale investigations located at its Irvine headquarters, KA conducts pre-sale durability testing in California, including at its "California Proving Ground" and the

---

[178] *See* https://www.linkedin.com/jobs/view/regulatory-compliance-manager-at-kia-motors-america-2432082551/?refId=db5aad21-355f-41fe-b515-f22f69d9a0e5&trackingId=61TH90nuMf9kICG1U9DG2A%3D%3D (last accessed March 19, 2024).

[179] https://www.kia.com/us/content/dam/kia/us/en/images/warranty/manual/general-warranty-and-consumer-info/2020_warranty.pdf (last accessed March 19, 2024).

[180] https://ksupport.kiausa.com/ConsumerAffairs (last accessed March 19, 2024).

Kia-Kia Design and Technical Center located in Irvine.[181] The "$30 million state-of-the-art" Design and Technical Center "houses more than 100 auto designers, engineers, model makers and technicians."

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

276.   On information and belief, KA and KC conducted an investigation into the Defect and potential remedies in California at KA's California headquarters, which culminated in the 2023 Recall.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

277.   Finally, while KC participated in the investigation of the Defect in Kia Class Vehicles, the ultimate decisions concerning whether to recall the Class Vehicles were made by KA executives at its California headquarters.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court determined that California law does not apply. No response is required.

## VII.   CLASS ALLEGATIONS

278.   Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

**ANSWER:** This paragraph contains allegations regarding the class of individuals on whose behalf this action is asserted and does not require a response from Kia. However, Kia denies that any relief is warranted or that any class can be certified.

279.   Plaintiffs seek to represent a class ("Nationwide Class") under the laws of the State of California defined as:[182]

---

[181] https://www.Kianews.com/en-us/releases/1270 (last accessed March 19, 2024).

[182] Plaintiffs acknowledge that this Court found that non-California Plaintiffs could not pursue claims under California law in its March 31, 2025 Order (ECF No. 47), and

101

All persons or entities that purchased or leased a Class Vehicle in the United States.

**ANSWER:** This paragraph contains allegations regarding Plaintiffs' class definitions and does not require a response from Kia. However, Kia denies that Plaintiffs have properly defined a class or that the proposed classes can be certified.

280.   In addition, and in the alternative to the Nationwide Class, Plaintiffs seek to represent the following State Classes:

Massachusetts Class: (represented by Plaintiff Doucette)
All persons or entities that purchased or leased a Class Vehicle in the State of Massachusetts.
Georgia Class: (represented by Plaintiff Tongue)
All persons or entities that purchased or leased a Class Vehicle in the State of Georgia.
California Class (represented by Plaintiffs Brasch and Chan)
All persons or entities that purchased or leased a Class Vehicle in the State of California.
Minnesota Class (represented by Plaintiff Holliday)
All persons or entities that purchased or leased a Class Vehicle in the State of Minnesota.

**ANSWER:** This paragraph contains allegations regarding Plaintiffs' class definitions and does not require a response from Kia. However, Kia denies that Plaintiffs have properly defined a class or that the proposed classes can be certified.

281.   The Nationwide Class and the State Classes are collectively referred to herein as the Classes.

**ANSWER:** This paragraph contains allegations regarding Plaintiffs' class definitions and does not require a response from Kia. However, Kia denies that Plaintiffs have properly defined a class or that the proposed classes can be certified.

---

include such allegations here solely to preserve their right to assert issues related to the dismissal in any future appeal.

102

282. Excluded from the Classes are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Classes definitions based on discovery and further investigation.

**ANSWER:** This paragraph contains allegations regarding Plaintiffs' class definitions and does not require a response from Kia. However, Kia denies that Plaintiffs have properly defined a class or that the proposed classes can be certified.

283. Numerosity: Upon information and belief, the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that at least one hundred and fifty thousand Class Vehicles have been sold and leased in the United States.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding the number of class vehicles that have been sold and leased in the United States and therefore denies the same. Kia denies the remaining allegations in this paragraph.

284. Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the Classes. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

    a.    Whether Defendants engaged in the conduct alleged herein;

    b.    Whether Plaintiffs' claims emanate from HMA's and KA's conduct in California;

    c.    Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

d.  Whether the Class Vehicles were sold with a safety defect;

e.  Whether Defendants knew of the Defect but failed to disclose the problem and its consequences to their customers;

f.  Whether a reasonable consumer would consider the Defect or its consequences to be material;

g.  Whether HMA and KA breached express and implied warranties with respect to the Defect;

h.  When Defendants discovered the Defect in the Class Vehicles, and what, if anything, they did in response;

i.  Whether Defendants should be required to disclose the existence of the Defect;

j.  Whether Defendants should be required to disclose the existence of the Defect;

k.  Whether Plaintiffs and Class Members overpaid for their Class Vehicles; and

l.  Whether Plaintiffs and Class Members experienced out-of-pocket losses as a result of the Defect, and if so, how much.

**ANSWER:** Kia denies the allegations in this paragraph.

285.  Typicality: Plaintiffs' claims are typical of the claims of the Classes because Plaintiffs purchased Class Vehicles with the same Defect as did each member of the Classes. Furthermore, Plaintiffs and all Members of the Classes sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

**ANSWER:** Kia denies the allegations in this paragraph.

286.  Adequacy: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Classes that they seek to represent, they have

104

retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

**ANSWER:** Kia denies the allegations in this paragraph.

287.   Superiority: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and Members of the Classes. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for Members of the Classes individually to redress effectively the wrongs done to them. Even if the Members of the Classes could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers, warranty claims, registration records, and database of complaints.

**ANSWER:** Kia denies the allegations in this paragraph.

288.   Defendants have acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

**ANSWER:** Kia denies the allegations in this paragraph.

## VIII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, Cal. Civ. Code § 1750, *et seq.* ("CLRA")**

(Individually and on behalf of the Nationwide Class and the California Class)
(As to all Defendants)

289. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

**ANSWER:** Kia repeats and realleges the responses set forth above as if fully stated herein..

290. All Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants[183], and Plaintiffs Chan and Brasch bring this claim on behalf of themselves and the California Class against HMC and HMA.

**ANSWER:** This paragraph contains allegations regarding the class of individuals on whose behalf this claim is asserted and does not require a response from Kia. However, Kia denies that any relief is warranted or that any class can be certified.

291. HMA, HMC, KA, and KC are each a "person" as that term is defined in California Civil Code § 1761(c).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. California Civil Code § 1761(c) speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

292. Plaintiffs and the Class Members are "consumer[s]" as that term is defined in California Civil Code §1761(d).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. California Civil Code § 1761(d) speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

---

[183] Plaintiffs acknowledge that this Court found that non-California Plaintiffs could not pursue claims under California law in its March 31, 2025 Order (ECF No. 47), and include such allegations here solely to preserve their right to assert issues related to the dismissal in any future appeal.

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

293.   In the course of their business, HMA, HMC, KA, and KC, through their agents, employees, and/or subsidiaries, engaged in unfair and deceptive acts in violation of the CLRA, Cal. Civ. Code § 1750, *et seq.*, by the practices described above, and by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Defect, as detailed above. These acts and practices violate, at a minimum, the following sections of the CLRA:

a.   (a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

b.   (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

c.   (a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

d.   (a)(9) Advertising goods and services with the intent not to sell them as advertised; and

e.   (a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

**ANSWER:** Kia denies the allegations in this paragraph.

294.   Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

**ANSWER:** Kia denies the allegations in this paragraph.

295.   HMA, HMC, KA, and KC knew that the Class Vehicles were defectively designed and/or manufactured and were not suitable for their intended use.

107

**ANSWER:** Kia denies the allegations in this paragraph.

296. HMA, HMC, KA, and KC were each under an ongoing duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles because:

a. Defendants had exclusive access to and were in a superior position to know the true state of facts about the safety Defect and associated costs in the Class Vehicles;

b. Given the Defect's hidden and technical nature, Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had a dangerous Defect until it was disclosed by Defendants, or revealed in public media reports. Plaintiffs do not have access to information concerning ECA failures, engine compartment fires, or vehicle stalls in Class Vehicles available to Defendants, or the technical data related to the design and manufacturing of the Class Vehicles that each Defendant possess;

c. Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the safety Defect and the associated repair costs that it causes until it was disclosed by Defendants, or revealed in the public media;

d. Defendants knew that the Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles;

e. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles

108

contained the Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth; and

f.   Defendants actively concealed the safety Defect by knowingly failing to issue a complete recall of Class Vehicles that offers a true remedy for the Defect.

**ANSWER:** Kia denies the allegations in this paragraph.

297.   As detailed above, Defendants were actually or constructively aware of the Defect at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

**ANSWER:** Kia denies the allegations in this paragraph.

298.   In failing to disclose the Defect and the associated safety risks and repair costs that result from it, HMA, HMC, KA, and KC have knowingly and intentionally concealed material facts and breached their duty to disclose.

**ANSWER:** Kia denies the allegations in this paragraph.

299.   KA also engaged in unfair and deceptive conduct by issuing the 2023 Recall that does not actually provide a remedy for the Defect, does not notify Class Members about the continued safety risks created by the Defect, does not instruct consumers to stop driving the dangerous Class Vehicles, and does not notify consumers and offer them free loaner vehicles of comparable make, model, or value as their own Class Vehicles to enable them to cease driving their dangerous Class Vehicles until a remedy is available and can be implemented.

**ANSWER:** Kia denies the allegations in this paragraph.

300.   By misrepresenting the Class Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risks posed by the Defect, Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a)(2)(5), (7), (9), and (16).

109

**ANSWER:** Kia denies the allegations in this paragraph.

301. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

**ANSWER:** Kia denies the allegations in this paragraph.

302. The facts concealed or not disclosed by HMA, HMC, KA, and KC to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Class Vehicles or pay a lesser price. Had Plaintiffs and the Class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

**ANSWER:** Kia denies the allegations in this paragraph.

303. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles' hybrid system was safe and reliable, and that the Class Vehicles were not affected by the Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

**ANSWER:** Kia denies the allegations in this paragraph.

304. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

**ANSWER:** Kia denies the allegations in this paragraph.

305. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

**ANSWER:** Kia denies the allegations in this paragraph.

306. Had they known the truth about the Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

**ANSWER:** Kia denies the allegations in this paragraph.

307. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

**ANSWER:** Kia denies the allegations in this paragraph.

308. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

**ANSWER:** Kia denies the allegations in this paragraph.

309. In accordance with § 1782(a) of the CLRA, Plaintiffs' counsel on behalf of Plaintiffs and the Class Members, served Defendants via Certified Mail on March 4, 2024, with notice of their alleged violations of Cal. Civ. Code § 1770(a) relating to the Class Vehicles purchased by Plaintiffs and Class Members and demanded that they correct or agree to correct the actions described therein within thirty (30) days of such notice.

**ANSWER:** Kia admits Plaintiffs seek the relief set forth in this paragraph and admits that it received a letter from Plaintiffs' counsel purporting to provide Kia with

111

notice of alleged violations of Cal. Civ. Code § 1770(a). Kia denies that Plaintiffs are entitled to any relief and denies that the notice was proper. Kia denies the remaining allegations in this paragraph.

310.   Plaintiffs and the Class members seek equitable relief and will amend this claim to seek damages after the notice period.

**ANSWER:** Kia admits that Plaintiffs seek the relief set forth in this paragraph but denies that any relief is warranted. Kia denies the remaining allegations in this paragraph.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code § 17200 ("UCL")

(Individually and on behalf of the Nationwide Class and the California Class)
(As to all Defendants)

311.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

**ANSWER:** Kia repeats and realleges the responses set forth above as if fully stated herein.

312.   All Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants,[184] and Plaintiffs Chan and Brasch bring this claim on behalf of themselves and the California Class against HMC and HMA.

**ANSWER:** This paragraph contains allegations regarding the class of individuals on whose behalf this claim is asserted and does not require a response from Kia. However, Kia denies that any relief is warranted or that any class can be certified.

313.   HMA, HMC, KA, and KC have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions

---

[184] Plaintiffs acknowledge that this Court found that non-California Plaintiffs could not pursue claims under California law in its March 31, 2025 Order (ECF No. 47), and include such allegations here solely to preserve their right to assert issues related to the dismissal in any future appeal.

described above, and by knowingly and intentionally concealing from Plaintiffs and the Class Members that the Class Vehicles suffer from a defect (and the costs, safety risks, and diminished value of the vehicles as a result of these problems). Defendants should have disclosed this information because they were in a superior position to know the true facts related to the defect, and Plaintiffs and Class Members could not reasonably be expected to learn or discover the true facts related to the defect.

**ANSWER:** Kia denies the allegations in this paragraph.

314. The defective ECAs constitute a safety issue that triggered each Defendant's duty to disclose the safety issue to consumers.

**ANSWER:** Kia denies the allegations in this paragraph.

315. These acts and practices have deceived Plaintiffs and are likely to deceive the public. In failing to disclose the defect and suppressing other material facts from Plaintiffs and the Class Members, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and the Class Members. The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiffs and the Class Members, as it would have been to all reasonable consumers.

**ANSWER:** Kia denies the allegations in this paragraph.

316. A business practice is unlawful under the UCL if it is forbidden by any law. Defendants' acts, conduct, and practices were unlawful, in that they constituted, among others, violations of the CLRA, and/or express and implied warranties.

**ANSWER:** The allegations in the first sentence of this paragraph are legal conclusions to which no response is required. Kia denies the remaining allegations in this paragraph.

317. The injuries suffered by Plaintiffs and the Class Members are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class Members should have reasonably avoided.

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** Kia denies the allegations in this paragraph.

318.  HMA, HMC, KA, and KC knew or should have known that their conduct violated the UCL.

**ANSWER:** Kia denies the allegations in this paragraph.

319.  Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

**ANSWER:** Kia admits Plaintiff seeks the relief set forth in this paragraph but denies that any relief is warranted. Kia denies the remaining allegations in this paragraph.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW
### Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL")

(Individually and on behalf of the Nationwide Class and the California Class)
(As to all Defendants)

320.  Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

**ANSWER:** Kia repeats and realleges the responses set forth above as if fully stated herein.

321.  Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all Defendants,[185] and Plaintiffs Chan and Brasch bring this claim on behalf of themselves and the California Class against HMA and HMC.

---

[185] Plaintiffs acknowledge that this Court found that non-California Plaintiffs could not pursue claims under California law in its March 31, 2025 Order (ECF No. 47), and include such allegations here solely to preserve their right to assert issues related to the dismissal in any future appeal.

114
DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** This paragraph contains allegations regarding the class of individuals on whose behalf this claim is asserted and does not require a response from Kia. However, Kia denies that any relief is warranted or that any class can be certified.

322.   California Business & Professions Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. The statutes speaks for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same..

323.   HMA, HMC, KA, and KC caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants to be untrue and misleading to consumers, including Plaintiffs and the other Class Members.

**ANSWER:** Kia denies the allegations in this paragraph.

324.   HMA, HMC, KA, and KC have violated section 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of the Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

**ANSWER:** Kia denies the allegations in this paragraph.

325.   Plaintiffs and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of HMA's, HMC's, KA's, and KC's

unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiffs and the other Class Members relied on the misrepresentations and/or omissions of HMA, HMC, KA, and KC with respect to the safety and reliability of the Class Vehicles. HMA's, HMC's, KA's, and KC's representations were untrue because the Class Vehicles are distributed with a safety Defect. Had Plaintiffs and the other Class Members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them. Accordingly, Plaintiffs and the other Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

**ANSWER:** Kia denies the allegations in this paragraph.

326. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of HMA's, HMC's, KA's, and KC's businesses. HMA's and KA's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

**ANSWER:** Kia denies the allegations in this paragraph.

327. Plaintiffs, individually and on behalf of the other Class Members, request that this Court enter such orders or judgments as may be necessary to enjoin HMA, HMC, KA, and KC from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the other Class Members any money HMA, HMC, KA, and KC acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**ANSWER:** Kia admits Plaintiffs seek the relief set forth in this paragraph but denies that any relief is warranted. Kia denies the remaining allegations in this paragraph.

**FOURTH CAUSE OF ACTION**

**BREACH OF IMPLIED WARRANTY**
**Cal. Com. Code §§ 2314 and 10212**

116

(Individually and on behalf of the Nationwide Class and the California Class)
(As to HMA and KA)

328. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

**ANSWER:** Kia repeats and realleges the responses set forth above as if fully stated herein..

329. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against HMA and KA,[186] and Plaintiffs Chan and Brasch bring this claim on behalf of themselves and the California Class against HMA.

**ANSWER:** This paragraph contains allegations regarding the class of individuals on whose behalf this claim is asserted and does not require a response from Kia. However, Kia denies that any relief is warranted or that any class can be certified.

330. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212.

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. The statutes speaks for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

331. Defendants are and were at all relevant times "merchants" of motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. The statutes speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

---

[186] Plaintiffs acknowledge that this Court found that non-California Plaintiffs could not pursue claims under California law in its March 31, 2025 Order (ECF No. 47), and include such allegations here solely to preserve their right to assert issues related to the dismissal in any future appeal.

117

332.   Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. The statutes speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

333.   All Class Members who purchased Class Vehicles are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. The statutes speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

334.   All Class Members who leased Class Vehicles are "lessees" within the meaning of Cal. Com. Code § 10103(a)(14).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. The statutes speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

335.   The Class Vehicles were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. The statutes speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

336.   Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for

118

providing transportation, and would not be vulnerable to spontaneous engine compartment fires or stalling when driven.

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required.

337.   However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Class Vehicles contained the Defect, resulting in a substantial safety hazard because the Defect renders Class Vehicles vulnerable to spontaneous engine compartment fires or stalling when driven.

**ANSWER:** Kia denies the allegations in this paragraph.

338.   Plaintiffs and other Class members have had sufficient direct dealings with either Defendants (KA and HMA) or its agents (e.g., dealerships, consumer affairs departments, and technical support) to establish privity of contract between HMA or KA on one hand, and Plaintiffs and each of the other Class members on the other hand.

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required.

339.   In addition, HMA and KA directly communicated with Plaintiffs and Class Members via its television, print, and online advertisements. HMA and KA also issued vehicle warranties directly to Plaintiffs and Class Members. Plaintiffs and other Class Members also relied on HMA's and KA's direct representations regarding the high quality, durability, reliability, dependability, and functionality of Hyundai and Kia vehicles in making their purchasing decision.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

119

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

340.    Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and their dealers, and specifically, of Defendant's express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiffs and each of the other Class members relied on statements made by Defendants themselves in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform and was controlled and disseminated directly by Defendants. Another independent basis exists to excuse privity here because Plaintiffs purchased their Class Vehicles from authorized Hyundai and Kia dealerships, which are Defendants' agents. As alleged above, Defendants substantially control the marketing of the Class Vehicles, if and how dealerships are to perform warranty repairs for defective components, and how dealerships are to perform the purported "remedies" for safety defects subject to recalls.

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required.

341.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed

between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Defect at the time of sale.

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. Kia denies the allegations regarding the alleged defect.

342. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of vehicle stalls and fires.

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. Kia denies the allegations regarding the alleged breach of warranty.

343. Defendants have actual knowledge of the Defect as alleged herein, satisfying any notice requirement. Moreover, due to Defendants' failure to remedy the Defect, any notice requirement is futile.

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. Kia denies the allegations regarding the alleged defect.

344. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of internal investigations, complaints made directly to KA and HMA and their authorized dealers, Class Members taking their vehicles to their dealers, public complaints filed with NHTSA and made online, the 2023 Recall, this lawsuit and the individual notice letter sent by Plaintiffs on March 4, 2024, within a reasonable amount of time after the Defect became public.

**ANSWER:** Kia denies the allegations in this paragraph.

121

345. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Defect if they presented their Class Vehicles to them for repair.

**ANSWER:** Kia denies the allegations in this paragraph.

346. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

**ANSWER:** Kia denies the allegations in this paragraph.

## FIFTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY
### Cal. Com. Code §§ 2313 and 10214

(Individually and on behalf of the Nationwide Class and the California Class)
(As to HMA and KA)

347. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

**ANSWER:** Kia repeats and realleges the responses set forth above as if fully stated herein.

348. Plaintiffs Doucette, Tongue, Brasch, and Holliday bring this claim on behalf of themselves and the Nationwide Class against HMA and KA,[187] and Plaintiff Brasch brings this claim on behalf of herself and the California Class against HMA.

---

[187] Plaintiffs acknowledge that this Court found that non-California Plaintiffs could

**ANSWER:** This paragraph contains allegations regarding the class of individuals on whose behalf this claim is asserted and does not require a response from Kia. However, Kia denies that any relief is warranted or that any class can be certified.

349. Defendants are and were at all relevant times "merchants" of motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. The statutes speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

350. Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. The statutes speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

351. KA provides a 10-year/100,000 mile Hybrid System Warranty with every Class Vehicle. The Hybrid System Warranty expressly warrants that it "cover[s]" "[r]epair or replacement of HYBRID SYSTEM components," that were "originally manufactured or installed by Kia Motor Company, Kia Motors Manufacturing Georgia (KMMG) or Kia Motor America (KMA) that are found to be defective in material or factory workmanship under normal use and maintenance[.]"[188] KA specifies that the warranty provides for the "[r]epair or replacement of HYBRID SYSTEM components," which include "Hybrid Battery Pack Assy, Hybrid Starter & Generator, Hybrid Power Control Unit, Traction Motor, clutch, On board charger(OBC) and all internal parts."[189]

---

not pursue claims under California law in its March 31, 2025 Order (ECF No. 47), and include such allegations here solely to preserve their right to assert issues related to the dismissal in any future appeal.

[188] https://www.Kianews.com/en-us/releases/1270 (last accessed March 19, 2024).
[189] *Id.*

123

**ANSWER:**  Kia admits that 2017-2022 Kia Niro Hybrid and 2018-2022 Kia Niro Plug-In Hybrid vehicles are sold with a Hybrid System Warranty and the warranty period is 10 years from the date of original retail delivery or date of first use, or 100,000 miles, whichever occurs first. The warranty cited in this paragraph speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

352.   HMA too offers a 10-year/1000,000 mile Hybrid and Plug-in Hybrid System Warranty, which covers: "[r]epair or replacement of HYBRID SYSTEM components ... originally manufactured or installed by Hyundai Motor Company, Hyundai Motor Group, Hyundai Motor Manufacturing Alabama (HMMA), Kia Motors Manufacturing Georgia (KMMG), Kia Manufacturing Mexico (KMM) or Hyundai Motor America (HMA) that are found to be defective in material or factory workmanship under normal use and maintenance[.]"[190] HMA states that the components covered by this warranty are those "that are directly attached to or integral to operation of the Hybrid Battery; Hybrid Battery Wire Harness; Battery Management System and Wire Harness; Blower Assembly; Electronic Air Compressor; Active Air Flap Active Hydraulic Booster; EV Fuse; Service Disconnect Plug; Power Relay Assembly; Hybrid Starter & Generator; Auto Transmission & Traction Motor including housing case; clutch and all internal parts; Hybrid Power Control Unit; Electronic Oil Pump Assembly; Electronic Water Pump with In and Out Hose Module."[191]

**ANSWER:**  Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

353.   KA and HMA breached their written warranties by failing to repair or replace the defective ECAs installed in the Class Vehicles when Plaintiffs and the Class

---

[190] https://owners.hyundaiusa.com/content/dam/hyundai/us/myhyundai/manuals/factory-warranty/2019/Hyundai%20USA%20ALL%20119MY.pdf (last accessed March 19, 2024).
[191] *Id.*

124
DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

Members presented their Class Vehicles to authorized Hyundai and Kia dealers. Despite their knowledge that the ECAs found in Plaintiffs' and Class Members' vehicles contained a Defect that makes them prone to vehicle fires and stalling, KA failed to repair or replace the defective ECAs.

**ANSWER:** Kia denies the allegations in this paragraph.

354.   KA and HMA failed to perform their written warranty obligations as part of a uniform pattern and practice that extended to all of their dealerships.

**ANSWER:** Kia denies the allegations in this paragraph.

355.   The warranties formed the basis of the bargain that was reached when Plaintiffs and Class Members purchased or leased their Class Vehicles. Plaintiffs and Class Members experienced the Defect within the warranty period and presented their Class Vehicles for repairs within the warranty period. Despite the existence of the express warranty and Plaintiffs and Class Members presenting their Class Vehicles to Hyundai and Kia dealerships on multiple occasions, KA and HMA failed to inform Plaintiff and Class Members of the Defect and failed to adequately repair the Defect or replace the defective ECAs.

**ANSWER:** Kia denies the allegations in this paragraph.

356.   Plaintiffs and other Class members have had sufficient direct dealings with either Defendants (KA and HMA) or its agents (e.g., dealerships, consumer affairs departments, and technical support) to establish privity of contract between HMA or KA on one hand, and Plaintiffs and each of the other Class members on the other hand.

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required.

357.   In addition, HMA and KA directly communicated with Plaintiffs and Class Members via its television, print, and online advertisements. HMA and KA also issued vehicle warranties directly to Plaintiffs and Class Members. Plaintiffs and other Class Members also relied on HMA's and KA's direct representations regarding the high

125

quality, durability, reliability, dependability, and functionality of Hyundai and Kia vehicles in making their purchasing decision.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

358.   Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of Defendants' express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiffs and each of the other Class members relied on statements made by Defendants themselves in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform and was controlled and disseminated directly by Defendants. Another independent basis exists to excuse privity here because Plaintiffs purchased their Class Vehicles from authorized Hyundai and Kia dealerships, which are Defendants' agents. As alleged above, Defendants substantially control the marketing of the Class Vehicles, if and how dealerships are to perform warranty repairs for defective components, and how dealerships are to perform the purported "remedies" for safety defects subject to recalls.

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required.

359.   As a result of KA's and HMA's breach of their express warranties, Plaintiffs and Class Members have suffered economic damages including, but not limited to, the loss of the benefit of their bargain, loss of vehicle use, diminished value, and substantial loss in value and resale value.

**ANSWER:** Kia denies the allegations in this paragraph.

126

360. Defendants have actual knowledge of the Defect as alleged herein, satisfying any notice requirement. Moreover, due to Defendants' failure to remedy the Defect, any notice requirement is futile.

**ANSWER:** Kia denies the allegations in this paragraph.

361. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of internal investigations, complaints made directly to KA and HMA or their authorized dealers, Class Members taking their vehicles to their dealers, public complaints filed with NHTSA and made online, the 2023 Recall, this lawsuit and the individual notice letter sent by Plaintiffs on March 4, 2024, within a reasonable amount of time after the Defect became public.

**ANSWER:** Kia denies the allegations in this paragraph.

362. Plaintiff and Class Members have complied with all obligations under the warranty or otherwise have been excused from performance of such obligations as a result of HMA's and KA's conduct described herein.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

363. In their capacities as suppliers and/or warrantors, and by the conduct described herein, any attempt by KA or HMA to limit their express warranty in a manner that would exclude or limit coverage for the Defect, including benefit-of-the-bargain, incidental, or consequential damages, would cause the warranty to fail its essential purpose. Plaintiffs and Class Members have presented their Class Vehicles to HMA's and KA's authorized dealers and HMA and KA have failed to repair or replace the defective ECAs installed in their vehicles. As a result, Plaintiffs and Class Members are left with defective vehicles that do not function as intended and, therefore, have been deprived of the benefit of their bargains.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding whether Plaintiff and Class Members have presented their vehicles to authorized dealers and therefore denies the same. Kia denies the remaining allegations in this paragraph.

364.   In their capacities as suppliers and/or warrantors, and by the conduct described herein, any attempt by KA or HMA to limit their express warranty in a manner that would exclude or limit coverage for the Defect would be unconscionable. HMA's and KA's warranties were adhesive and did not permit negotiations. HMA and KA possessed superior knowledge of the Defect, which is a latent defect, prior to offering Class Vehicles for sale. HMA and KA concealed and did not disclose this Defect, and KA did not remedy the Defect prior to sale (or afterward).

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding whether Plaintiff and Class Members have presented their vehicles to authorized dealers and therefore denies the same. Kia denies the remaining allegations in this paragraph.

**SIXTH CAUSE OF ACTION**
**STRICT PRODUCT LIABILITY**

(Individually and on behalf of the Nationwide Class, or in the alternative, the State Classes)
(As to all Defendants)

365.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

**ANSWER:** Kia repeats and realleges the responses set forth above as if fully stated herein.

366.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against HMC, HMA, KA, and KC,[192] under the law of California. In the

---

[192] Plaintiffs acknowledge that this Court found that non-California Plaintiffs could not pursue claims under California law in its March 31, 2025 Order (ECF No. 47), and

128
DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

alternative to a Nationwide Class, this claim is brought on behalf of the State-specific Classes.

**ANSWER:** This paragraph contains allegations regarding the class of individuals on whose behalf this claim is asserted and does not require a response from Kia. However, Kia denies that any relief is warranted or that any class can be certified

367.   By placing an unreasonably dangerous product in the stream of commerce, Defendants are strictly liable.

**ANSWER:** Kia denies the allegations in this paragraph.

368. Defendants are strictly liable for designing, engineering, testing, validating, manufacturing, marketing, and placing in the stream of commerce the Class Vehicles which are unreasonably dangerous and defective due to the ECA Defect.

**ANSWER:** Kia denies the allegations in this paragraph.

369. Defendants designed, engineered, tested, validated, manufactured, marketed, and placed in the stream of commerce the Class Vehicles which are unreasonably dangerous and defective due to the ECA Defect.

**ANSWER:** Kia denies the allegations in this paragraph.

370.   The Class Vehicles and ECAs installed therein are being used in an intended and/or foreseeable manner. Plaintiffs and Class Members have not misused or materially altered the Class Vehicles or the ECAs. The Class Vehicles and ECAs are in the same or substantially similar condition as they were at the time of purchase or lease.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

371.   The Class Vehicles and ECAs are unreasonably dangerous and defective because they were designed, engineered, tested, validated, manufactured, and placed in

include such allegations here solely to preserve their right to assert issues related to the dismissal in any future appeal.

129

the stream of commerce with the Defect that can cause Class Vehicles to suddenly and unexpectedly stall, lose engine power, or catch fire.

**ANSWER:** Kia denies the allegations in this paragraph.

372. The Defect causes an unreasonably dangerous condition when Class Vehicles are used for their intended and foreseeable purpose of providing safe and reliable transportation and places Plaintiffs, Class Members, and others on the road at an unreasonable and substantial risk for injury or death.

**ANSWER:** Kia denies the allegations in this paragraph.

373. Defendants were aware of feasible alternative designs which would minimize or eliminate the Defect and the risk it poses. Such alternative designs were known and available when the Class Vehicles and ECAs were designed, engineered, tested, validated, manufactured, and placed in the stream of commerce.

**ANSWER:** Kia denies the allegations in this paragraph.

374. Defendants failed to design, test, validate, manufacture, and place in the stream of commerce a Class Vehicle and ECA that is free from the Defect and the unreasonable safety risks it poses.

**ANSWER:** Kia denies the allegations in this paragraph.

375. The Defect causes damage to property other than the ECA itself, including damage to other components of the Class Vehicles as a result of a fire and all other property located within the vehicles.

**ANSWER:** Kia denies the allegations in this paragraph.

376. As a direct and proximate result of Defendants' actions as described herein, Plaintiffs and the other Class Members have been damaged in an amount to be determined at trial.

**ANSWER:** Kia denies the allegations in this paragraph.

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

## SEVENTH CAUSE OF ACTION[193]
## UNJUST ENRICHMENT

(Individually and on behalf of the Nationwide Class)
(As to all Defendants)

377. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court dismissed this claim. No response is required.

378. This claim is pleaded in the alternative to the contract-based claims brought on behalf of Plaintiffs and the Nationwide Class against HMA, HMC, KA, and KC. A Nationwide Class is appropriate because the elements of unjust enrichment are uniform in all the states. In the alternative to a Nationwide Class, this claim is brought on behalf of the State-specific Classes.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court dismissed this claim. No response is required.

379. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court dismissed this claim. No response is required.

380. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

---

[193] Plaintiffs acknowledge that this Count for unjust enrichment was dismissed by the Court in its March 31, 2025 Order (ECF No. 47), and include it here solely to preserve their right to assert issues related to the dismissal in any future appeal.

131
DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court dismissed this claim. No response is required.

381. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court dismissed this claim. No response is required.

382. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court dismissed this claim. No response is required.

383. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court dismissed this claim. No response is required.

384. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**ANSWER:** In its March 31, 2025 order (Dkt. 47), the Court dismissed this claim. No response is required.

**EIGHTH CAUSE OF ACTION**

132

**VIOLATION OF THE DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW**
**Mass. Gen. Laws ch. 93a, § 1, *et seq.***

(Individually and on behalf of the Massachusetts Class)
(As to KA and KC)

385. Plaintiff Doucette incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

**ANSWER:** Kia repeats and realleges the responses set forth above as if fully stated herein.

386. Plaintiff Doucette brings this claim on behalf of herself and the Massachusetts Class against KC and KA ("Defendants" for this Cause of Action).

**ANSWER:** This paragraph contains allegations regarding the class of individuals on whose behalf this claim is asserted and does not require a response from Kia. However, Kia denies that any relief is warranted or that any class can be certified..

387. Defendants, Plaintiff, and Class Members are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. Mass. Gen. Laws ch. 93A speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

388. Defendants were and are engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. Mass. Gen. Laws ch. 93A speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

389. The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Mass. Gen. Laws ch. 93A, § 2.

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. Mass. Gen. Laws ch. 93A speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

390. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Defect, as detailed above.

**ANSWER:** Kia denies the allegations in this paragraph.

391. Defendants had an ongoing duty to the Plaintiff and Class Members to refrain from unfair or deceptive practices under the Massachusetts Act in the course of their business. Specifically, Defendants owed the Massachusetts Plaintiff and Class Members a duty to disclose all the material facts concerning the Defect in the Class Vehicles because, as detailed above:

   a. Defendants had exclusive access to and far superior knowledge about facts regarding the Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiff or Class Members;

   b. Given the Defect's hidden and technical nature, Plaintiff and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Defect on their own;

   c. Defendants knew that the Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

   d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials

134

provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

**ANSWER:** Kia denies the allegations in this paragraph.

392.   As detailed above, the information concerning the Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

**ANSWER:** Kia denies the allegations in this paragraph.

393.   By misrepresenting the Class Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risks posed by the Defect, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by Mass. Gen. Laws ch. 93A, § 2.

**ANSWER:** Kia denies the allegations in this paragraph.

394.   KA also engaged in unfair and deceptive conduct by issuing the 2023 Recall that does not actually provide a remedy for the Defect, does not notify Class Members about the continued safety risks created by the Defect, does not instruct consumers to stop driving the dangerous Class Vehicles, and does not notify consumers and offer them free loaner vehicles of comparable make, model, or value as their own Class Vehicles to enable them to cease driving their dangerous Class Vehicles until a remedy is available and can be implemented.

**ANSWER:** Kia denies the allegations in this paragraph.

395.   Defendants intended for Plaintiff and Class Members to rely on them to provide adequately designed and/or manufactured Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

**ANSWER:** Kia denies the allegations in this paragraph.

135

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

396. Defendants' unfair methods of competition and unfair or deceptive acts or practices were designed to mislead and create a false impression in consumers that the Class Vehicles contained safe and reliable hybrid engine systems, and that the Class Vehicles were not affected by the Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiff and Class Members, about the true safety and reliability of Class Vehicles, the quality of Class Vehicles, and the true value of Class Vehicles.

**ANSWER:** Kia denies the allegations in this paragraph.

397. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts were material regarding the Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiff and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiff and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease the Class Vehicles.

**ANSWER:** Kia denies the allegations in this paragraph.

398. Plaintiff's and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Class Vehicles contained the Defect, as alleged above. Plaintiff and Class Members did not, and could not, unravel Defendants' deception on their own.

**ANSWER:** Kia denies the allegations in this paragraph.

399. Had they known the truth about the Defect, Plaintiff and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** Kia denies the allegations in this paragraph.

400. Plaintiff and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

**ANSWER:** Kia denies the allegations in this paragraph.

401. Defendants' violations present a continuing risk to Plaintiff and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

**ANSWER:** Kia denies the allegations in this paragraph.

402. On March 4, 2024, Plaintiff sent notice pursuant to Mass. Gen. Laws ch. 93A, § 9(3). Additionally, all Defendants were provided notice of the issues raised in this Count and this Complaint by way of internal investigations, complaints made directly to Defendants and their authorized dealers, Class Members taking their vehicles to their dealers, public complaints filed with NHTSA and made online, the 2023 Recall, this lawsuit and the individual notice letter sent by Plaintiffs on March 4, 2024, within a reasonable amount of time after the Defect became public. Because Defendants failed to remedy their unlawful conduct, Plaintiff seeks all damages and relief to which Class Members are entitled.

**ANSWER:** Kia admits Plaintiff seeks the relief set forth in this paragraph and admits that it received a letter from Plaintiff's counsel purporting to provide Kia with notice of alleged violations of Mass. Gen. Laws ch. 93A, § 9(3). Kia denies Plaintiff is entitled to any relief and denies that the notice was proper. Kia denies the remaining allegations in this paragraph.

403. KA and KC were provided notice of the issues complained of herein within a reasonable time by numerous complaints online, complaints made directly to

Defendants and their authorized dealers, Class Members taking their vehicles to their dealers, by Plaintiff on March 4, 2024, through the 2023 Recall, and this lawsuit.

**ANSWER:** Kia denies the allegations in this paragraph.

404. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Class Vehicles contained the Defect, however, did nothing to remedy the Defect.

**ANSWER:** Kia denies the allegations in this paragraph.

405. Pursuant to Mass. Gen. Laws ch. 93A, § 9, the Plaintiff and Class Members seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Massachusetts Act.

**ANSWER:** Kia admits Plaintiff seeks the relief set forth in this paragraph but denies that any relief is warranted. Kia denies the remaining allegations in this paragraph.

## NINTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Mass. Gen. Laws ch. 106, §§ 2-314 and 2A-212

(Individually and on behalf of the Massachusetts Class)
(As to KA)

406. Plaintiff Doucette incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

**ANSWER:** Kia repeats and realleges the responses set forth above as if fully stated herein.

407. Plaintiff Doucette brings this claim on behalf of herself and the Massachusetts Class against KA ("Defendant" for this Cause of Action).

138

**ANSWER:** This paragraph contains allegations regarding the class of individuals on whose behalf this claim is asserted and does not require a response from Kia. However, Kia denies that any relief is warranted or that any class can be certified..

408.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mass. Gen. Laws ch. 106, §§ 2-314 and 2A-212.

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. The statutes speaks for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

409.   Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under Mass. Gen. Laws ch. 106, §§ 2-104(1) and 2A-103(3), and a "seller" of motor vehicles under § 2-103(1)(d).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. The statutes speaks for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

410.   Defendant is and was at all relevant times a "lessor" of motor vehicles under Mass. Gen. Laws ch. 106, § 2A-103(1)(p).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. The statutes speaks for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

411.   All Class Members who purchased Class Vehicles in Massachusetts are "buyers" within the meaning of Mass. Gen. Laws ch. 106, § 2-103(1)(a).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. The statutes speaks for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

412.   All Class Members who leased Class Vehicles in Massachusetts are "lessees" within the meaning of Mass. Gen. Laws ch. 106, § 2A-103(1)(n).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. The statutes speaks for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

413. The Class Vehicles are and were at all relevant times "goods" within the meaning of Mass. Gen. Laws ch. 106, §§ 2-105(1) and 2A-103(1)(h).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. The statutes speaks for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

414. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendant provided Plaintiff and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendant, were safe and reliable for providing transportation, and would not be vulnerable to spontaneous engine compartment fires or stalling when driven.

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required.

415. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Defect, resulting in a substantial safety hazard because the Defect renders Class Vehicles vulnerable to spontaneous engine compartment fires or stalling when driven.

**ANSWER:** Kia denies the allegations in this paragraph.

140

416.   Plaintiff and other Class members have had sufficient direct dealings with either Defendant or its agents (e.g., dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other Class members on the other hand.

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required.

417.   In addition, KA directly communicated with Plaintiff and Class Members via its television, print, and online advertisements. KA also issued vehicle warranties directly to Plaintiff and Class Members. Plaintiff and other Class Members also relied on KA's direct representations regarding the high quality, durability, reliability, dependability, and functionality of Kia vehicles in making their purchasing decision.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

418.   Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of Defendant's express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiff and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform and was controlled and disseminated directly by Defendant. Another independent basis exists to excuse privity here because Plaintiff purchased her Class Vehicle from an authorized Kia dealership, which is Defendant's agent. As alleged above, Defendant substantially controls the marketing of the Class Vehicles, if and how dealerships are to perform

warranty repairs for defective components, and how dealerships are to perform the purported "remedies" for safety defects subject to recalls.

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required.

419. Any attempt by Defendant to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendant's warranty limitations are unenforceable because Defendant knowingly sold or leased defective Class Vehicles without informing consumers about the Defect. The time limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiff and Class Members. Among other things, Plaintiff and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and Plaintiff and other Class Members. Additionally, Defendant knew of the Defect at the time of sale.

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. Kia denies the allegations regarding the alleged defect.

420. Furthermore, the circumstances described herein caused Defendant's exclusive or limited remedy to fail its essential purpose such that the Plaintiff and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiff and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of vehicle stalls and fires.

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. Kia denies the allegations regarding the alleged breach of warranty.

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

421. Defendants have actual knowledge of the Defect as alleged herein, satisfying any notice requirement. Moreover, due to Defendants' failure to remedy the Defect, any notice requirement is futile.

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. Kia denies the allegations regarding the alleged defect.

422. Plaintiffs and Class Members have provided KA with reasonable notice and opportunity to cure the breaches of their implied warranties by way of internal investigations, complaints made directly to KA and its authorized dealers, Class Members taking their vehicles to its dealers, public complaints filed with NHTSA and made online, the 2023 Recall, this lawsuit and the individual notice letter sent by Plaintiffs on March 4, 2024, within a reasonable amount of time after the Defect became public.

**ANSWER:** Kia denies the allegations in this paragraph.

423. Alternatively, Plaintiff and the Class Members were excused from providing Defendant with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendant has long known that the Class Vehicles contained the Defect; however, to date, Defendant has not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiff and Class Members had no reason to believe that Defendant would have adequately repaired the Defect if they presented their Class Vehicles to them for repair.

**ANSWER:** Kia denies the allegations in this paragraph.

424. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff's and Class Members' Class Vehicles were and are defective, and the Defect in their Class Vehicles has not been remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial.

**ANSWER:** Kia denies the allegations in this paragraph.

143

# TENTH CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY
### Mass. Gen. Laws ch. 106, §§ 2-313, 2A-103 and 2A-210 *et seq.*

(Individually and on behalf of the Massachusetts Class)
(As to KA)

425.    Plaintiff Doucette incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

**ANSWER:** This claim is not asserted against Kia. No response is required.

426.    Plaintiff Doucette brings this claim on behalf of herself and the Massachusetts Class against KA ("Defendant" for this Cause of Action).

**ANSWER:** This claim is not asserted against Kia. No response is required.

427.    Defendant is and was at all relevant times a "merchant" of motor vehicles under Mass. Gen. Laws ch. 106, § 2-104(a), and a "seller" and "lessor" of motor vehicles under § 2-103(1)(d) and § 2A-103(1)(p).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. The statutes speak for themselves, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

428.    The Massachusetts Class Members are and were at all relevant times "buyers" with respect to the Class Vehicles under Mass. Gen. Laws ch. 106, § 2-103(1)(a).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. The statute speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

429.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Mass. Gen. Laws ch. 106 §§2-105(1) and 2A-103(1)(h).

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required. The statute speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

144

430.    KA provides a 10-year/100,000 mile Hybrid System Warranty with every Class Vehicle. The Hybrid System Warranty expressly warrants that it "cover[s]" "[r]epair or replacement of HYBRID SYSTEM components," that were "originally manufactured or installed by Kia Motor Company, Kia Motors Manufacturing Georgia (KMMG) or Kia Motor America (KMA) that are found to be defective in material or factory workmanship under normal use and maintenance[.]"[194] KA specifies that the warranty provides for the "[r]epair or replacement of HYBRID SYSTEM components," which include "Hybrid Battery Pack Assy, Hybrid Starter & Generator, Hybrid Power Control Unit, Traction Motor, *clutch*, On board charger(OBC) *and all internal parts*."[195]

**ANSWER:** Kia admits that 2017-2022 Kia Niro Hybrid and 2018-2022 Kia Niro Plug-In Hybrid vehicles are sold with a Hybrid System Warranty and the warranty period is 10 years from the date of original retail delivery or date of first use, or 100,000 miles, whichever occurs first. The warranty cited in this paragraph speaks for itself, and to the extent the allegations in this paragraph vary therefrom, Kia denies the same.

431.    KA breached its written warranties by failing to provide an adequate repair when Plaintiff and the Class Members presented their Class Vehicles to authorized Kia dealers. Despite its knowledge that the ECAs found in Plaintiff's and Class Members' vehicles contained a Defect that makes them prone to vehicle fires and stalling, KA failed to repair or replace the defective ECAs.

**ANSWER:** Kia denies the allegations in this paragraph.

432.    KA failed to perform its written warranty obligations as part of a uniform pattern and practice that extended to all of its dealerships.

**ANSWER:** Kia denies the allegations in this paragraph.

---

[194] 2020 Warranty and Consumer Information Manual, at 14, available at https://www.kiatechinfo.com/ext_If/kma_owner_portal/content_pop.aspx (last accessed on March 19, 2024).

[195] *Id.*

145
DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

433.   The warranties formed the basis of the bargain that was reached when Plaintiff and Class Members purchased or leased their Class Vehicles. Plaintiff and Class Members experienced the Defect within the warranty period and presented their Class Vehicles for repairs within the warranty period. Despite the existence of the express warranty and Plaintiff and Class Members presenting their Class Vehicles to Kia dealerships on multiple occasions, KA failed to inform Plaintiff and Class Members of the Defect and failed to adequately repair the Defect.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding whether and when Plaintiff and Class Members experienced any issue with their vehicles and presented them for repair. Kia denies the remaining allegations in this paragraph.

434.   Plaintiff and other Class members have had sufficient direct dealings with either Defendant or its agents (e.g., dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other Class members on the other hand.

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required.

435.   In addition, KA directly communicated with Plaintiff and Class Members via its television, print, and online advertisements. KA also issued vehicle warranties directly to Plaintiff and Class Members. Plaintiff and other Class Members also relied on KA's direct representations regarding the high quality, durability, reliability, dependability, and functionality of Kia vehicles in making their purchasing decision.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

436.   Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of Defendant's express warranties. The

dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiff and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform and was controlled and disseminated directly by Defendant. Another independent basis exists to excuse privity here because Plaintiff purchased her Class Vehicle from an authorized Kia dealership, which is Defendant's agent. As alleged above, Defendant substantially controls the marketing of the Class Vehicles, if and how dealerships are to perform warranty repairs for defective components, and how dealerships are to perform the purported "remedies" for safety defects subject to recalls.

**ANSWER:** The allegations in this paragraph contain legal conclusions for which no answer is required.

437. As a result of KA's breach of its express warranty, Plaintiff and Class Members have suffered economic damages including, but not limited to, the loss of the benefit of their bargain, loss of vehicle use, diminished value, and substantial loss in value and resale value.

**ANSWER:** Kia denies the allegations in this paragraph.

438. Plaintiff and Class Members have provided KA with reasonable notice and opportunity to cure the breaches of their implied warranties by way of internal investigations, complaints made directly to KA and its authorized dealers, Class Members taking their vehicles to its dealers, public complaints filed with NHTSA and made online, the 2023 Recall, this lawsuit and the individual notice letter sent by Plaintiffs on March 4, 2024, within a reasonable amount of time after the Defect became public.

**ANSWER:** Kia denies the allegations in this paragraph.

147

439. Plaintiff and Class Members have complied with all obligations under the warranty or otherwise have been excused from performance of such obligations as a result of KA's conduct described herein.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

440. In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by KA to limit its express warranty in a manner that would exclude or limit coverage for the Defect, including benefit-of-the-bargain, incidental, or consequential damages, would cause the warranty to fail in its essential purpose. Plaintiff and Class Members have presented their Class Vehicles to KA's authorized dealers and KA has failed to repair or replace the defective ECAs installed in their vehicles. As a result, Plaintiff and Class Members are left with defective vehicles that do not function as intended and, therefore, have been deprived of the benefit of their bargains.

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding whether Plaintiff and Class Members have presented their vehicles to authorized dealers and therefore denies the same. Kia denies the remaining allegations in this paragraph.

441. In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by KA to limit its express warranty in a manner that would exclude or limit coverage for the Defect would be unconscionable. KA's warranties were adhesive and did not permit negotiations. KA possessed superior knowledge of the Defect, which is a latent defect, prior to offering Class Vehicles for sale. KA concealed and did not disclose this Defect, and KA did not remedy the Defect prior to sale (or afterward).

**ANSWER:** Kia is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph regarding whether Plaintiff and Class

148

Members have presented their vehicles to authorized dealers and therefore denies the same. Kia denies the remaining allegations in this paragraph.

## ELEVENTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY
### Ga. Code. Ann. §§ 11-2-313 and 11-2A-210

(Individually and on behalf of the Georgia Class)
(As to HMA)

442.   Plaintiff Tongue incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

**ANSWER:** This claim is not asserted against Kia. No response is required.

443.   Plaintiff Tongue brings this claim on behalf of herself and the Massachusetts Class against HMA ("Defendant" for this Cause of Action).

**ANSWER:** This claim is not asserted against Kia. No response is required.

444.   Defendant was at all relevant times a "merchant" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

**ANSWER:** This claim is not asserted against Kia. No response is required.

445.   With respect to leases, Defendant is and was at all relevant times "lessor" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

**ANSWER:** This claim is not asserted against Kia. No response is required.

446.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

**ANSWER:** This claim is not asserted against Kia. No response is required.

447.   HMA offers a 10-year/1000,000 mile Hybrid and Plug-in Hybrid System Warranty, which covers: "[r]epair or replacement of HYBRID SYSTEM components... originally manufactured or installed by Hyundai Motor Company, Hyundai Motor Group, Hyundai Motor Manufacturing Alabama (HMMA), Kia Motors Manufacturing Georgia (KMMG), Kia Manufacturing Mexico (KMM) or Hyundai Motor America

149

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

(HMA) that are found to be defective in material or factory workmanship under normal use and maintenance[.]"[196] HMA states that the components covered by this warranty are those "that are directly attached to or integral to operation of the Hybrid Battery; Hybrid Battery Wire Harness; Battery Management System and Wire Harness; Blower Assembly; Electronic Air Compressor; Active Air Flap Active Hydraulic Booster; EV Fuse; Service Disconnect Plug; Power Relay Assembly; Hybrid Starter & Generator; Auto Transmission & Traction Motor including housing case; clutch and all internal parts; Hybrid Power Control Unit; Electronic Oil Pump Assembly; Electronic Water Pump with In and Out Hose Module."[197]

**ANSWER:** This claim is not asserted against Kia. No response is required.

448.   HMA breached its written warranties by failing to provide an adequate repair when Plaintiff and the Class Members presented their Class Vehicles to authorized Kia dealers. Despite its knowledge that the ECAs found in Plaintiff's and Class Members' vehicles contained a Defect that makes them prone to vehicle fires and stalling, HMA failed to repair or replace the defective ECAs.

**ANSWER:** This claim is not asserted against Kia. No response is required.

449.   HMA failed to perform its written warranty obligations as part of a uniform pattern and practice that extended to all of its dealerships.

**ANSWER:** This claim is not asserted against Kia. No response is required.

450.   The warranties formed the basis of the bargain that was reached when Plaintiff and Class Members purchased or leased their Class Vehicles. Plaintiff and Class Members experienced the Defect within the warranty period and presented their Class Vehicles for repairs within the warranty period. Despite the existence of the

---

[196] https://owners.hyundaiusa.com/content/dam/hyundai/us/myhyundai/manuals/factory-warranty/2019/Hyundai%20USA%20ALL%20119MY.pdf (last accessed March 19, 2024).

[197] *Id.*

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

express warranty and Plaintiff and Class Members presenting their Class Vehicles to Kia dealerships on multiple occasions, HMA failed to inform Plaintiff and Class Members of the Defect and failed to adequately repair the Defect.

**ANSWER:** This claim is not asserted against Kia. No response is required.

451.   Plaintiff and other Class members have had sufficient direct dealings with either Defendant or its agents (e.g., dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other Class members on the other hand.

**ANSWER:** This claim is not asserted against Kia. No response is required.

452.   In addition, HMA directly communicated with Plaintiff and Class Members via its television, print, and online advertisements. HMA also issued vehicle warranties directly to Plaintiff and Class Members. Plaintiff and other Class Members also relied on HMA's direct representations regarding the high quality, durability, reliability, dependability, and functionality of Kia vehicles in making their purchasing decision.

**ANSWER:** This claim is not asserted against Kia. No response is required.

453.   Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of Defendant's express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiff and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform and was controlled and disseminated directly by Defendant. Another independent basis exists to excuse privity here because Plaintiff purchased her Class Vehicle from an authorized Kia

151

dealership, which is Defendant's agent. As alleged above, Defendant substantially controls the marketing of the Class Vehicles, if and how dealerships are to perform warranty repairs for defective components, and how dealerships are to perform the purported "remedies" for safety defects subject to recalls.

**ANSWER:** This claim is not asserted against Kia. No response is required.

454.   As a result of HMA's breach of its express warranty, Plaintiff and Class Members have suffered economic damages including, but not limited to, the loss of the benefit of their bargain, loss of vehicle use, diminished value, and substantial loss in value and resale value.

**ANSWER:** This claim is not asserted against Kia. No response is required.

455.   Plaintiffs and Class Members have provided HMA with reasonable notice and opportunity to cure the breaches of their implied warranties by way of internal investigations, complaints made directly to HMA and its authorized dealers, Class Members taking their vehicles to its dealers, public complaints filed with NHTSA and made online, the 2023 Recall, this lawsuit and the individual notice letter sent by Plaintiffs on March 4, 2024, within a reasonable amount of time after the Defect became public.

**ANSWER:** This claim is not asserted against Kia. No response is required.

456.   Plaintiff and Class Members have complied with all obligations under the warranty or otherwise have been excused from performance of such obligations as a result of HMA's conduct described herein.

**ANSWER:** This claim is not asserted against Kia. No response is required.

457.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by HMA to limit its express warranty in a manner that would exclude or limit coverage for the Defect, including benefit-of-the-bargain, incidental, or consequential damages, would cause the warranty to fail in its essential purpose. Plaintiff and Class Members have presented their Class Vehicles to HMA's authorized

dealers and HMA has failed to repair or replace the defective ECAs installed in their vehicles. As a result, Plaintiff and Class Members are left with defective vehicles that do not function as intended and, therefore, have been deprived of the benefit of their bargains.

**ANSWER:** This claim is not asserted against Kia. No response is required.

458. In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by HMA to limit its express warranty in a manner that would exclude or limit coverage for the Defect would be unconscionable. HMA's warranties were adhesive and did not permit negotiations. HMA possessed superior knowledge of the Defect, which is a latent defect, prior to offering Class Vehicles for sale. HMA concealed and did not disclose this Defect, and HMA did not remedy the Defect prior to sale (or afterward).

**ANSWER:** This claim is not asserted against Kia. No response is required.

## TWELFTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY
### Ga. Code. Ann. §§ 11-2-314 and 11-2A-212

(Individually and on behalf of the Georgia Class)
(As to HMA)

459. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

**ANSWER:** This claim is not asserted against Kia. No response is required.

460. Plaintiff Tongue brings this claim on behalf of herself and the Georgia Class against HMA ("Defendant" for this Cause of Action).

**ANSWER:** This claim is not asserted against Kia. No response is required.

461. Defendant was at all relevant times a "merchant" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

**ANSWER:** This claim is not asserted against Kia. No response is required.

462. With respect to leases, Defendant is and was at all relevant times "lessor" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

**ANSWER:** This claim is not asserted against Kia. No response is required.

463. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

**ANSWER:** This claim is not asserted against Kia. No response is required.

464. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ga. Code Ann. §§ 11- 2-314 and 11-2A-212.

**ANSWER:** This claim is not asserted against Kia. No response is required.

465. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendant provided Plaintiff and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendant, were safe and reliable for providing transportation, and would not be vulnerable to spontaneous engine compartment fires or stalling when driven.

**ANSWER:** This claim is not asserted against Kia. No response is required.

466. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Defect, resulting in a substantial safety hazard because the Defect renders Class Vehicles vulnerable to spontaneous engine compartment fires or stalling when driven.

**ANSWER:** This claim is not asserted against Kia. No response is required.

154

467.   Plaintiff and other Class members have had sufficient direct dealings with either Defendant or its agents (e.g., dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other Class members on the other hand.

**ANSWER:** This claim is not asserted against Kia. No response is required.

468.   In addition, HMA directly communicated with Plaintiff and Class Members via its television, print, and online advertisements. HMA also issued vehicle warranties directly to Plaintiff and Class Members. Plaintiff and other Class Members also relied on HMA's direct representations regarding the high quality, durability, reliability, dependability, and functionality of Kia vehicles in making their purchasing decision.

**ANSWER:** This claim is not asserted against Kia. No response is required.

469.   Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of Defendant's express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiff and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform and was controlled and disseminated directly by Defendant. Another independent basis exists to excuse privity here because Plaintiff purchased her Class Vehicle from an authorized Hyundai dealership, which is Defendant's agent. As alleged above, Defendant substantially controls the marketing of the Class Vehicles, if and how dealerships are to perform warranty repairs for defective components, and how dealerships are to perform the purported "remedies" for safety defects subject to recalls.

155

**ANSWER:** This claim is not asserted against Kia. No response is required.

470.   Any attempt by Defendant to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendant's warranty limitations are unenforceable because Defendant knowingly sold or leased defective Class Vehicles without informing consumers about the Defect. The time limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiff and Class Members. Among other things, Plaintiff and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and Plaintiff and other Class Members. Additionally, Defendant knew of the Defect at the time of sale.

**ANSWER:** This claim is not asserted against Kia. No response is required.

471.   Furthermore, the circumstances described herein caused Defendant's exclusive or limited remedy to fail its essential purpose such that the Plaintiff and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of vehicle stalls and fires.

**ANSWER:** This claim is not asserted against Kia. No response is required.

472.   Defendants have actual knowledge of the Defect as alleged herein, satisfying any notice requirement. Moreover, due to Defendants' failure to remedy the Defect, any notice requirement is futile.

**ANSWER:** This claim is not asserted against Kia. No response is required.

473.   Plaintiffs and Class Members have provided HMA with reasonable notice and opportunity to cure the breaches of their implied warranties by way of internal investigations, complaints made directly to HMA and its authorized dealers, Class

156

Members taking their vehicles to its dealers, public complaints filed with NHTSA and made online, the 2023 Recall, this lawsuit and the individual notice letter sent by Plaintiffs on March 4, 2024, within a reasonable amount of time after the Defect became public.

**ANSWER:** This claim is not asserted against Kia. No response is required.

474. Alternatively, Plaintiff and the Class Members were excused from providing Defendant with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendant has long known that the Class Vehicles contained the Defect; however, to date, Defendant has not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiff and Class Members had no reason to believe that Defendant would have adequately repaired the Defect if they presented their Class Vehicles to them for repair.

**ANSWER:** This claim is not asserted against Kia. No response is required.

475. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff's and Class Members' Class Vehicles were and are defective, and the Defect in their Class Vehicles has not been remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial.

**ANSWER:** This claim is not asserted against Kia. No response is required.

## THIRTEENTH CAUSE OF ACTION

## VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT
## Ga. Code. Ann. § 10-1-370, *et seq.*

(Individually and on behalf of the Georgia Class)
(As to HMA and HMC)

476. Plaintiff Tongue realleges and incorporates by reference all preceding allegations as though fully set forth herein.

**ANSWER:** This claim is not asserted against Kia. No response is required.

157

477. Plaintiff Tongue brings this claim on behalf of herself and the Georgia Class against HMA and HMC ("Defendants" for this Cause of Action).

**ANSWER:** This claim is not asserted against Kia. No response is required.

478. Defendants, Plaintiff, and the Class Members are "persons" within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code. Ann. § 10-1-371(5).

**ANSWER:** This claim is not asserted against Kia. No response is required.

479. The Georgia UDTPA prohibits any "deceptive trade practices," which include misrepresenting the "standard, quality, or grade" of goods or services, and engaging "in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code. Ann. § 10-1-372(a).

**ANSWER:** This claim is not asserted against Kia. No response is required.

480. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Georgia UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Defect, as detailed above.

**ANSWER:** This claim is not asserted against Kia. No response is required.

481. Defendants had an ongoing duty to Plaintiff and Class Members to refrain from unfair or deceptive practices under the Georgia UDTPA in the course of their business. Specifically, Defendants owed the Plaintiff and Class Members a duty to disclose all the material facts concerning the Defect in the Class Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

158

    b.    Given the Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Defect on their own;

    c.    Defendants knew that the Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

**ANSWER:** This claim is not asserted against Kia. No response is required.

482. As detailed above, the information concerning the Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

**ANSWER:** This claim is not asserted against Kia. No response is required.

483. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Defect, Defendants engaged in one or more of the following unfair or deceptive business practices in violation of the Georgia UTPA:

    a.    Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles;

159

b. Representing that the Class Vehicles have approval, characteristics, uses, and benefits which they do not have;

c. Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not;

d. Advertising the Class Vehicles with the intent not to sell or lease them as advertised; and

e. Engaging in conduct which creates a likelihood of confusion or of misleading persons regarding the Class Vehicles.

Ga. Code. Ann. § 10-1-372(2), (5), (7), (9), (12).

**ANSWER:** This claim is not asserted against Kia. No response is required.

484. Defendants intended for Plaintiff and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

**ANSWER:** This claim is not asserted against Kia. No response is required.

485. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles were safe, reliable, and made of the highest quality, and that the Class Vehicles were not affected by the Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

**ANSWER:** This claim is not asserted against Kia. No response is required.

486. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiff and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiff and Class Members were exposed to those

160

misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

**ANSWER:** This claim is not asserted against Kia. No response is required.

487.   Plaintiff's and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Defect, as alleged above. Plaintiff and Class Members did not, and could not, unravel Defendants' deception on their own.

**ANSWER:** This claim is not asserted against Kia. No response is required.

488.   Had they known the truth about the Defect, Plaintiff and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

**ANSWER:** This claim is not asserted against Kia. No response is required.

489.   Plaintiff and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

**ANSWER:** This claim is not asserted against Kia. No response is required.

490.   Defendants' violations present a continuing risk to Plaintiff and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

**ANSWER:** This claim is not asserted against Kia. No response is required.

491.   Pursuant to Ga. Code. Ann. § 10-1-373, Plaintiff and the Georgia State Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices and any other just and proper relief available under the Georgia UDTPA.

**ANSWER:** This claim is not asserted against Kia. No response is required.

161

**FOURTEENTH CAUSE OF ACTION**

**VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT**
**Ga. Code. Ann. § § 10-1-390, *et seq.***

(Individually and on behalf of the Georgia Class)
(As to HMA and HMC)

492.   Plaintiff Tongue realleges and incorporates by reference all preceding allegations as though fully set forth herein.

**ANSWER:** This claim is not asserted against Kia. No response is required.

493.   Plaintiff Tongue brings this claim on behalf of herself and the Georgia Class against HMA and HMC ("Defendants" for this Cause of Action).

**ANSWER:** This claim is not asserted against Kia. No response is required.

494.   The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful. Ga. Code. Ann. § 10-1-393(a).

**ANSWER:** This claim is not asserted against Kia. No response is required.

495.   In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Georgia FBPA.

**ANSWER:** This claim is not asserted against Kia. No response is required.

496.   As detailed above, the information concerning the Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

**ANSWER:** This claim is not asserted against Kia. No response is required.

497.   By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risks posed by the Defect, Defendants engaged in one or more of the following unfair or deceptive business practices in violation of the Georgia UTPA:

162

    a.    Representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

    b.    Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; and

    c.    Advertising the Class Vehicles with the intent not to sell or lease them as advertised.

Ga. Code. Ann. § 10-1-393(b).

**ANSWER:** This claim is not asserted against Kia. No response is required.

498. Defendants intended for Plaintiff and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

**ANSWER:** This claim is not asserted against Kia. No response is required.

499. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles were safe, reliable, and made of the highest quality, and that the Class Vehicles were not affected by the Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiff and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

**ANSWER:** This claim is not asserted against Kia. No response is required.

500. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiff and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiff and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and

relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

**ANSWER:** This claim is not asserted against Kia. No response is required.

501. Plaintiff's and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Defect, as alleged above. Plaintiff and Class Members did not, and could not, unravel Defendants' deception on their own.

**ANSWER:** This claim is not asserted against Kia. No response is required.

502. Had they known the truth about the Defect, Plaintiff and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

**ANSWER:** This claim is not asserted against Kia. No response is required.

503. Plaintiff and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

**ANSWER:** This claim is not asserted against Kia. No response is required.

504. Defendants' violations present a continuing risk to Plaintiff and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

**ANSWER:** This claim is not asserted against Kia. No response is required.

505. On March 4, 2024, Plaintiff sent notice pursuant to Ga. Code. Ann. § 10-1-399(b). Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by way of internal investigations, complaints made directly to Defendants and their authorized dealers, Class Members taking their vehicles to its dealers, public complaints filed with NHTSA and made online, the 2023 Recall, this lawsuit and the individual notice letter sent by Plaintiffs on March 4, 2024, within a

164

reasonable amount of time after the Defect became public. Because Defendants failed to remedy their unlawful conduct, Plaintiff seeks all damages and relief to which Class Members are entitled.

**ANSWER:** This claim is not asserted against Kia. No response is required.

506. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Class Vehicles contained the Defect, however, did nothing to remedy the Defect.

**ANSWER:** This claim is not asserted against Kia. No response is required.

507. Pursuant to Ga. Code. Ann. § 10-1-399, Plaintiff and the Georgia State Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding any other just and proper relief available under the Georgia FBPA.

**ANSWER:** This claim is not asserted against Kia. No response is required.

### FIFTEENTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY
**Minn. Stat. §§ 336.2-314 and 336.2A-212**

(Individually and on behalf of the Minnesota Class)
(As to HMA)

508. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

**ANSWER:** This claim is not asserted against Kia. No response is required.

509. Plaintiff Holliday brings this claim on behalf of himself and the Minnesota Class against HMA ("Defendant" for this Cause of Action).

**ANSWER:** This claim is not asserted against Kia. No response is required.

510. Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under Minn. Stat. §§ 336.2-104(1) and 336.2A-103(3), and a "seller" of motor vehicles under § 336.2-103(1)(d).

**ANSWER:** This claim is not asserted against Kia. No response is required.

511.   With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

**ANSWER:** This claim is not asserted against Kia. No response is required.

512.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

**ANSWER:** This claim is not asserted against Kia. No response is required.

513.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Minn. Stat. §§ 336.2-314 and 336.2A-212.

**ANSWER:** This claim is not asserted against Kia. No response is required.

514.   Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendant provided Plaintiff and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendant, were safe and reliable for providing transportation, and would not be vulnerable to spontaneous engine compartment fires or stalling when driven.

**ANSWER:** This claim is not asserted against Kia. No response is required.

515.   However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Class Vehicles contained the Defect, resulting in a substantial safety hazard because the Defect renders Class Vehicles vulnerable to spontaneous engine compartment fires or stalling when driven.

166

**ANSWER:** This claim is not asserted against Kia. No response is required.

516.   Plaintiff and other Class members have had sufficient direct dealings with either Defendant or its agents (e.g., dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other Class members on the other hand.

**ANSWER:** This claim is not asserted against Kia. No response is required.

517.   In addition, HMA directly communicated with Plaintiff and Class Members via its television, print, and online advertisements. HMA also issued vehicle warranties directly to owners and lessees of Class Vehicles. Plaintiff and other Class Members also relied on HMA's direct representations regarding the high quality, durability, reliability, dependability, and functionality of Kia vehicles in making their purchasing decision.

**ANSWER:** This claim is not asserted against Kia. No response is required.

518.   Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of Defendant's express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiff and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform and was controlled and disseminated directly by Defendant. Another independent basis exists to excuse privity here because Plaintiff purchased her Class Vehicle from an authorized Kia dealership, which is Defendant's agent. As alleged above, Defendant substantially controls the marketing of the Class Vehicles, if and how dealerships are to perform

warranty repairs for defective components, and how dealerships are to perform the purported "remedies" for safety defects subject to recalls.

**ANSWER:** This claim is not asserted against Kia. No response is required.

519. Any attempt by Defendant to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendant's warranty limitations are unenforceable because Defendant knowingly sold or leased defective Class Vehicles without informing consumers about the Defect. The time limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiff and Class Members. Among other things, Plaintiff and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and Plaintiff and other Class Members. Additionally, Defendant knew of the Defect at the time of sale.

**ANSWER:** This claim is not asserted against Kia. No response is required.

520. Furthermore, the circumstances described herein caused Defendant's exclusive or limited remedy to fail its essential purpose such that the Plaintiff and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of vehicle stalls and fires.

**ANSWER:** This claim is not asserted against Kia. No response is required.

521. Defendant has actual knowledge of the Defect as alleged herein, satisfying any notice requirement. Moreover, due to Defendant's failure to remedy the Defect, any notice requirement is futile.

**ANSWER:** This claim is not asserted against Kia. No response is required.

522. Plaintiffs and Class Members have provided HMA with reasonable notice and opportunity to cure the breaches of their implied warranties by way of internal investigations, complaints made directly to HMA and its authorized dealers, Class Members taking their vehicles to its dealers, public complaints filed with NHTSA and made online, the 2023 Recall, this lawsuit and the individual notice letter sent by Plaintiffs on March 4, 2024, within a reasonable amount of time after the Defect became public.

**ANSWER:** This claim is not asserted against Kia. No response is required.

523. Alternatively, Plaintiff and the Class Members were excused from providing Defendant with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendant has long known that the Class Vehicles contained the Defect; however, to date, Defendant has not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiff and Class Members had no reason to believe that Defendant would have adequately repaired the Defect if they presented their Class Vehicles to them for repair.

**ANSWER:** This claim is not asserted against Kia. No response is required.

524. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff's and Class Members' Class Vehicles were and are defective, and the Defect in their Class Vehicles has not been remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial.

**ANSWER:** This claim is not asserted against Kia. No response is required.

**SIXTEENTH CAUSE OF ACTION**
**Violation of the Minnesota Prevention of Consumer Fraud Act**

**Minn. Stat. § 325F.68, *et seq.* and Minn. Stat. § 8.31, subd. 3a**

(Individually and on behalf of the Minnesota Class)
(As to HMA and HMC)

169

525.   Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

**ANSWER:** This claim is not asserted against Kia. No response is required.

526.   Plaintiff Holliday brings this claim on behalf of himself and the Minnesota Class against HMA and HMC ("Defendants" for this Cause of Action).

**ANSWER:** This claim is not asserted against Kia. No response is required.

527.   Defendants, Plaintiffs, and the Class Members are "persons" within the meaning of Minn. Stat. § 325F.68(3).

**ANSWER:** This claim is not asserted against Kia. No response is required.

528.   The Class Vehicles are "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

**ANSWER:** This claim is not asserted against Kia. No response is required.

529.   The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged[.]" Minn. Stat. § 325F.69(1).

**ANSWER:** This claim is not asserted against Kia. No response is required.

530.   In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Defect, as detailed above.

**ANSWER:** This claim is not asserted against Kia. No response is required.

531.   Defendants had an ongoing duty to Plaintiff and Class Members to refrain from unfair or deceptive practices under the Minnesota CFA in the course of their business. Specifically, Defendants owed the Plaintiff and Class Members a duty to

170

disclose all the material facts concerning the Defect in the Class Vehicles because, as detailed above:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b. Given the Defect's hidden and technical nature, Plaintiff and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Defect on their own;

c. Defendants knew that the Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the quality, safety, and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

**ANSWER:** This claim is not asserted against Kia. No response is required.

532. As detailed above, the information concerning the Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

**ANSWER:** This claim is not asserted against Kia. No response is required.

533. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Defect to consumers, Defendants engaged in unfair or deceptive business

171

practices prohibited by Minn. Stat. § 325F.69, including use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise.

**ANSWER:** This claim is not asserted against Kia. No response is required.

534. Defendants intended for Plaintiff and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

**ANSWER:** This claim is not asserted against Kia. No response is required.

535. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles were safe, reliable, and of the highest quality, and that the Class Vehicles were not affected by the Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiff and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

**ANSWER:** This claim is not asserted against Kia. No response is required.

536. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiff and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

**ANSWER:** This claim is not asserted against Kia. No response is required.

172

537. Plaintiff's and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Defect, as alleged above. Plaintiff and Class Members did not, and could not, unravel Defendants' deception on their own.

**ANSWER:** This claim is not asserted against Kia. No response is required.

538. Had they known the truth about the Defect, Plaintiff and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

**ANSWER:** This claim is not asserted against Kia. No response is required.

539. Plaintiff and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

**ANSWER:** This claim is not asserted against Kia. No response is required.

540. Defendants' violations present a continuing risk to Plaintiff and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

**ANSWER:** This claim is not asserted against Kia. No response is required.

541. Pursuant to Minn. Stat. §§ 8.31(3a) and 549.20(1)(a), Plaintiff and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Minnesota CFA.

**ANSWER:** This claim is not asserted against Kia. No response is required.

**SEVENTEENTH CAUSE OF ACTION**
**Violation of the Minnesota Uniform Deceptive Trade Practices Act**

**Minn. Stat. §§ 325d.43-48, *et seq.***

(Individually and on behalf of the Minnesota Class)
(As to HMA and HMC)

173

542.   Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

**ANSWER:** This claim is not asserted against Kia. No response is required.

543.   Plaintiff Holliday brings this claim on behalf of himself and the Minnesota Class against HMA and HMC ("Defendants" for this Cause of Action).

**ANSWER:** This claim is not asserted against Kia. No response is required.

544.   The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices in the course of a business, vocation, or occupation. Minn. Stat. § 325D.44, Subd. 1.

**ANSWER:** This claim is not asserted against Kia. No response is required.

545.   In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Minnesota DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Defect, as detailed above.

**ANSWER:** This claim is not asserted against Kia. No response is required.

546.   Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Minnesota DTPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defect in the Class Vehicles because, as detailed above:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b. Given the Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Defect on their own;

174

c. Defendants knew that the Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Defect. Because it volunteered to provide information about the Class Vehicles that it marketed and offered for sale and lease to consumers, HMA had the duty to disclose the whole truth.

**ANSWER:** This claim is not asserted against Kia. No response is required.

547. As detailed above, the information concerning the Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

**ANSWER:** This claim is not asserted against Kia. No response is required.

548. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Defect to consumers, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Minn. Stat. § 325D.44, Subd. 1:

a.     Causing likelihood of confusion or misunderstanding as the approval or certification of the Class Vehicles;

b.     Representing that the Class Vehicles have characteristics, uses, and benefits which they do not have;

c.     Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not;

d.     Advertising the Class Vehicles with the intent not to sell or lease them as advertised; and

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

  e. Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Minn. Stat. §§ 325D.44, Subd. 1(1) (5), (7), (9), and (13).

**ANSWER:** This claim is not asserted against Kia. No response is required.

549. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

**ANSWER:** This claim is not asserted against Kia. No response is required.

550. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles were safe, reliable, and of the highest quality, and that the Class Vehicles were not affected by the Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

**ANSWER:** This claim is not asserted against Kia. No response is required.

551. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

**ANSWER:** This claim is not asserted against Kia. No response is required.

552. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise

learning that the Class Vehicles contained the Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

**ANSWER:** This claim is not asserted against Kia. No response is required.

553. Had they known the truth about the Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

**ANSWER:** This claim is not asserted against Kia. No response is required.

554. Plaintiff and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

**ANSWER:** This claim is not asserted against Kia. No response is required.

555. Defendants' violations present a continuing risk to Plaintiff and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

**ANSWER:** This claim is not asserted against Kia. No response is required.

556. Pursuant to Minn. Stat. §§ 8.31(3a), 325D.45, and 549.20(1)(a), Plaintiff and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and any other just and proper relief available under the Minnesota DTPA.

**ANSWER:** This claim is not asserted against Kia. No response is required.

**EIGHTEENTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**

**Minn. Stat. §§ 336.2-313 and 336.2A-210**

(Individually and on behalf of the Minnesota Class)
(As to HMA)

557. Plaintiff Holliday incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

177

**ANSWER:** This claim is not asserted against Kia. No response is required.

558.    Plaintiff Holliday brings this claim on behalf of himself and the Minnesota Class against HMA ("Defendant" for this Cause of Action).

**ANSWER:** This claim is not asserted against Kia. No response is required.

559.    Defendant was at all relevant times a "merchant" with respect to motor vehicles under Minn. Stat. §§ 336.2-104 and 336.2A-103(3), and a "seller" of motor vehicles under Minn. Stat. § 336.2A-103.

**ANSWER:** This claim is not asserted against Kia. No response is required.

560.    With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

**ANSWER:** This claim is not asserted against Kia. No response is required.

561.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

**ANSWER:** This claim is not asserted against Kia. No response is required.

562.    HMA offers a 10-year/1000,000 mile Hybrid and Plug-in Hybrid System Warranty, which covers: "[r]epair or replacement of HYBRID SYSTEM components… originally manufactured or installed by Hyundai Motor Company, Hyundai Motor Group, Hyundai Motor Manufacturing Alabama (HMMA), Kia Motors Manufacturing Georgia (KMMG), Kia Manufacturing Mexico (KMM) or Hyundai Motor America (HMA) that are found to be defective in material or factory workmanship under normal use and maintenance[.]"[198] HMA states that the components covered by this warranty are those "that are directly attached to or integral to operation of the Hybrid Battery; Hybrid Battery Wire Harness; Battery Management System and Wire Harness; Blower Assembly; Electronic Air Compressor; Active Air Flap Active Hydraulic Booster; EV

---

[198] https://owners.hyundaiusa.com/content/dam/hyundai/us/myhyundai/manuals/factorywarranty/2019/Hyundai%20USA%20ALL%20119MY.pdf (last accessed March 19, 2024.)

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

Fuse; Service Disconnect Plug; Power Relay Assembly; Hybrid Starter & Generator; Auto Transmission & Traction Motor including housing case; clutch and all internal parts; Hybrid Power Control Unit; Electronic Oil Pump Assembly; Electronic Water Pump with In and Out Hose Module."[199]

**ANSWER:** This claim is not asserted against Kia. No response is required.

563. HMA breached its written warranties by failing to provide an adequate repair when Plaintiff and the Class Members presented their Class Vehicles to authorized Kia dealers. Despite its knowledge that the ECAs found in Plaintiff's and Class Members' vehicles contained a Defect that makes them prone to vehicle fires and stalling, HMA failed to repair or replace the defective ECAs.

**ANSWER:** This claim is not asserted against Kia. No response is required.

564. HMA failed to perform its written warranty obligations as part of a uniform pattern and practice that extended to all of its dealerships.

**ANSWER:** This claim is not asserted against Kia. No response is required.

565. The warranties formed the basis of the bargain that was reached when Plaintiff and Class Members purchased or leased their Class Vehicles. Plaintiff and Class Members experienced the Defect within the warranty period and presented their Class Vehicles for repairs within the warranty period. Despite the existence of the express warranty and Plaintiff and Class Members presenting their Class Vehicles to Kia dealerships on multiple occasions, HMA failed to inform Plaintiff and Class Members of the Defect and failed to adequately repair the Defect.

**ANSWER:** This claim is not asserted against Kia. No response is required.

566. Plaintiff and other Class members have had sufficient direct dealings with either Defendant or its agents (e.g., dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiffs and each of the other Class members on the other hand.

[199] *Id.*

179
DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

**ANSWER:** This claim is not asserted against Kia. No response is required.

567. In addition, HMA directly communicated with Plaintiff and Class Members via its television, print, and online advertisements. HMA also issued vehicle warranties directly to Plaintiff and Class Members. Plaintiff and other Class Members also relied on HMA's direct representations regarding the high quality, durability, reliability, dependability, and functionality of Kia vehicles in making their purchasing decision.

**ANSWER:** This claim is not asserted against Kia. No response is required.

568. Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of Defendant's express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiff and each of the other Class members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform and was controlled and disseminated directly by Defendant. Another independent basis exists to excuse privity here because Plaintiff purchased her Class Vehicle from an authorized Kia dealership, which is Defendant's agent. As alleged above, Defendant substantially controls the marketing of the Class Vehicles, if and how dealerships are to perform warranty repairs for defective components, and how dealerships are to perform the purported "remedies" for safety defects subject to recalls.

**ANSWER:** This claim is not asserted against Kia. No response is required.

569. As a result of HMA's breach of its express warranty, Plaintiff and Class Members have suffered economic damages including, but not limited to, the loss of the

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

benefit of their bargain, loss of vehicle use, diminished value, and substantial loss in value and resale value.

**ANSWER:** This claim is not asserted against Kia. No response is required.

570.   Plaintiffs and Class Members have provided HMA with reasonable notice and opportunity to cure the breaches of their implied warranties by way of internal investigations, complaints made directly to HMA and its authorized dealers, Class Members taking their vehicles to its dealers, public complaints filed with NHTSA and made online, the 2023 Recall, this lawsuit and the individual notice letter sent by Plaintiffs on March 4, 2024, within a reasonable amount of time after the Defect became public.

**ANSWER:** This claim is not asserted against Kia. No response is required.

571.   Plaintiff and Class Members have complied with all obligations under the warranty or otherwise have been excused from performance of such obligations as a result of HMA's conduct described herein.

**ANSWER:** This claim is not asserted against Kia. No response is required.

572.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by HMA to limit its express warranty in a manner that would exclude or limit coverage for the Defect, including benefit-of-the-bargain, incidental, or consequential damages, would cause the warranty to fail in its essential purpose. Plaintiff and Class Members have presented their Class Vehicles to HMA's authorized dealers and HMA has failed to repair or replace the defective ECAs installed in their vehicles. As a result, Plaintiff and Class Members are left with defective vehicles that do not function as intended and, therefore, have been deprived of the benefit of their bargains.

**ANSWER:** This claim is not asserted against Kia. No response is required.

573.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by HMA to limit its express warranty in a manner that would

181

exclude or limit coverage for the Defect would be unconscionable. HMA's warranties were adhesive and did not permit negotiations. HMA possessed superior knowledge of the Defect, which is a latent defect, prior to offering Class Vehicles for sale. HMA concealed and did not disclose this Defect, and HMA did not remedy the Defect prior to sale (or afterward).

**ANSWER:** This claim is not asserted against Kia. No response is required.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class, respectfully request that this Court:

a.  Certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiffs are proper class representatives; and appoint Plaintiffs' counsel as Class Counsel;

b.  Declare that any applicable statutes of limitations are tolled due to Defendants' fraudulent concealment and that Defendants are estopped from relying on any statutes of limitations in defense;

c.  Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair and/or recall the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class Members with appropriate curative notice regarding the existence and cause of the Defect;

d.  Award Plaintiffs and Class Members actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages, costs, and disgorgement in an amount to be determined at trial;

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

e.  Award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

f.  Award pre- and post-judgment interest at the maximum legal rate;

g.  Grant leave to amend this Complaint to conform to the evidence produced in discovery and at trial; and

h.  Grant all such other relief as is just and proper.

**ANSWER:** Kia denies that Plaintiffs or any putative Class Members are entitled to any of the relief requested in Plaintiffs' Request for Relief.

## IX.  DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims so triable.

**ANSWER:** Kia admits Plaintiffs demand a jury trial. Kia also demands a jury trial.

## GENERAL DENIAL

Kia denies each and every allegation of the Class Action Complaint not specifically admitted herein.

## AFFIRMATIVE AND OTHER DEFENSES

Kia's affirmative defenses to Plaintiffs' Class Action Complaint are set forth below. By setting forth the following allegations and defenses, however, Kia does not assume the burden of proof on matters and issues other than those on which Kia has the burden of proof as a matter of law.

## FIRST AFFIRMATIVE DEFENSE

The Class Action Complaint fails to state any claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Upon information and belief, the sales contracts pursuant to which Plaintiffs and/or some or all members of the putative classes purchased or leased their vehicles contain arbitration clauses that may require some or all of the claims asserted herein to

183

be resolved through arbitration.

## THIRD AFFIRMATIVE DEFENSE

Some or all of the claims made in Plaintiffs' Class Action Complaint, including claims made on behalf of the putative classes, are barred because Plaintiffs and/or members of the putative classes lack Article III or statutory standing.

## FOURTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or members of the putative classes may be barred, in whole or in part, to the extent any injury sustained by Plaintiffs and/or members of the putative classes was proximately and actually caused, in whole or in part, by the acts or omissions on the part of Plaintiffs and/or others for whose conduct Kia is not responsible.

## FIFTH AFFIRMATIVE DEFENSE

Any claims for damages or other monetary recovery by Plaintiffs and/or members of the putative classes must be offset and reduced by the value received from the vehicles purchased or leased.

## SIXTH AFFIRMATIVE DEFENSE

Any claims for incidental or consequential damages are barred by written disclaimers.

## SEVENTH AFFIRMATIVE DEFENSE

If any persons or entities claiming to be members of the putative classes have settled or released their claims, they may be barred from recovery, in whole or in part, by such settlements or releases.

## EIGHTH AFFIRMATIVE DEFENSE

If any persons claiming to be members of the putative classes have resolved similar or the same claims as those alleged in the Class Action Complaint, they may be barred from recovery, in whole or in part, on the ground that they are subject to the defense of accord and satisfaction.

184

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for breach of the implied warranty of merchantability are barred because their vehicles were in fact merchantable and fit for the purposes intended when the vehicles were sold or leased.

## TENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or members of the putative classes are time-barred under the applicable statute of limitations.

## ELEVENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or members of the putative classes are barred, in whole or in part, based on the doctrines of waiver, estoppel, and/or laches.

## TWELFTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or members of the putative classes are barred, in whole or in part, to the extent Plaintiffs and/or members of the putative classes engaged in unlawful, inequitable, or improper conduct.

## THIRTEENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or members of the putative classes may be barred, in whole or in part, based upon the improper use or maintenance of their vehicles or the misuse, abuse, unauthorized, or unreasonable use of their vehicles.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs and/or members of the putative classes whose vehicles have been altered, modified, or changed are barred, in whole or in part, from recovery.

## FIFTEENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or members of the putative classes are barred, in whole or in part, to the extent Plaintiffs and/or members of the putative classes have failed to mitigate damages and/or have caused some or all of the alleged damage of which they now complain.

## SIXTEENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and/or members of the putative classes may be barred, in whole or in part, because Plaintiffs and members of the putative classes cannot meet their burden of showing that any acts, conduct, statement, or omissions on the part of Kia were likely to mislead.

## SEVENTHEENTH AFFIRMATIVE DEFENSE

Plaintiffs' action is not properly maintained as a class action because the requirements under federal law for class certification are not met and because certification of the putative classes would result in a denial of due process to Kia as well as to the putative classes.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The action is not appropriate for class treatment because Plaintiffs' claims necessarily revolve around the individual usage of the vehicles of Plaintiffs and each member of the putative classes.

## NINETEENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and members of the putative classes are barred based on the doctrines of primary jurisdiction and/or preemption.

## TWENTIETH AFFIRMATIVE DEFENSE

The claims of Plaintiffs and members of the putative classes are barred based on lack of privity with Kia.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

The claims of Plaintiffs and members of the putative classes are barred because their vehicles conform to the then-existing current state of art and are not unreasonably dangerous.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

The claims of Plaintiffs and members of the putative classes are barred because their vehicles conform to any then-existing applicable governmental or industry

standards.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

The Class Action Complaint fails to allege a claim for which punitive damages can be recovered.

## RESERVATION AS TO ANY ADDITIONAL AFFIRMATIVE DEFENSES

Kia has insufficient knowledge or information upon which to form a belief as to whether it may have additional affirmative defenses that govern the claims asserted by Plaintiffs and on behalf of persons claimed to be members of the putative classes. Kia therefore reserves the right to raise additional defenses as appropriate.

## PRAYER

WHEREFORE, Kia prays:

1.   That Plaintiffs and members of the putative classes take nothing by reason of this suit;

2.   That judgment be entered in Kia's favor as to all remaining causes of action;

3.   For costs of suit and any attorneys' fees permitted under the applicable laws;

4.   That the proposed certification of any class herein be denied; and

5.   For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Kia hereby demands trial of all issues in this action by jury.

187

Dated: June 18, 2026

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.


By: */s/Amir Nassihi*

Amir Nassihi, SBN 235936
Email: anassihi@shb.com
Joan R. Camagong, SBN 288217
Email: jcamagong@shb.com
Mark A. Feller, SBN 319789
mfeller@shb.com
Philip Crane Raucci, SBN 351941
praucci@shb.com
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 544-1900
Facsimile: (415) 391-0281
*Attorneys for Defendant Kia Motor America, Inc.*

DEFENDANT KIA AMERICA, INC.'S ANSWER TO FAC
CASE NO: 8:24-CV-00731-DMG-DFM